IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-00481-KDB-DCK

| | |
|---|---|
| THE BOEING COMPANY<br><br>             Plaintiff,<br><br>     vs.<br><br>TEN OAKS MANAGEMENT LLC, ANDREW LOVROVICH, DAVID RICHESON, MATTHEW MAGAN, and MICHAEL HAHN<br><br>             Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

Defendants Ten Oaks Management LLC, Andrew Lovrovich, David Richeson, Matthew Magan, and Michael Hahn (collectively, "Defendants") submit this Memorandum in Support of their Motion to Dismiss Plaintiff's Amended Complaint (the "Amended Complaint"), based on Plaintiff's failure to state a claim upon which relief can be granted.

## I.    INTRODUCTION

Boeing's 125-paragraph Amended Complaint alleges that Ten Oaks, a private family investment office, somehow managed to fool Boeing, one of the world's largest and most sophisticated companies, into doing Ten Oaks' bidding. Boeing's narrative grasps at straws in arguing that there must have been a premeditated fraudulent scheme by the Defendants simply because there is no other possible explanation for why the transaction between Boeing and Ten Oaks did not go the way that either party anticipated. In truth, the Amended Complaint's tale of mischief and fraud rests entirely upon legal conclusions couched as facts, unwarranted inferences, vague and conclusory statements, statements of opinion, and other naked factual assertions, not entitled to the presumption of truth. Stripped of these bald allegations, Boeing's claim is essentially that the Defendants – through their representations about *potential* and *future* financial

plans – improperly induced Boeing to consent to the assignment of certain supply contracts from the Astech Engineered Products division (the "ASTECH Division") of GKN Aerospace Chem-Tronics ("GKN") to ASTECH Engineered Products, Inc. ("Astech NewCo"). In essence, Boeing attempts to re-fashion a breach of contract claim against Astech NewCo (its equipment supplier that is not a party to this litigation because it is currently subject to a Chapter 11 bankruptcy proceeding) into a cause of action for fraud against non-parties to the supply contract. *See Lambert v. First Horizon Bank*, 2021 U.S. Dist. LEXIS 142635, *17 (W.D.N.C. June 28, 2021), *adopted in* Lambert v. First Horizon Bank, No. 3:19-cv-581-RJC-DCK, 2021 U.S. Dist. LEXIS 141363, at *3 (W.D.N.C. July 29, 2021) (dismissing claimant's attempt to "manufacture a tort dispute out of what is, at bottom, a breach of contract claim").

Even when viewed in the light most favorable to Boeing, the Amended Complaint fails to meet the plausibility standards established by *Twombly* and *Iqbal*, much less the heightened Rule 9(b) pleading requirements. A common sense, context-specific review of the Amended Complaint shows that it fails to establish Boeing's right to relief against the Defendants above the speculative level and, at best, alleges only the sheer possibility that Defendants did what they are accused of. The *Twombly*, *Iqbal*, and Rule 9(b) requirements are specifically intended to protect litigants, such as Defendants, from complaints such as this one, designed to tarnish reputations with baseless accusations, assert meritless suits brought only to extract a settlement, embark upon expensive fishing expeditions, and deny defendants sufficient information to mount a defense. If Boeing has any claims for breach of the Astech Division contracts, those claims ought to be adjudicated where they belong – in the bankruptcy proceedings for Astech NewCo – rather than against Defendants.

## II. FACTUAL BACKGROUND[1]

### A. Parties.

Plaintiff The Boeing Company ("Boeing") is among the largest aerospace companies in the world. Defendant Ten Oaks is a privately held company, which invests in corporate divestitures. Defendants Hahn, Lovrovich, Magan, and Richeson are all "principal agents of Ten Oaks." ECF 5 ¶¶ 22-25. GKN and Astech NewCo design and manufacture aircraft parts for Boeing and other aerospace customers. Astech NewCo is managed by Ten Oaks and, as of March 2022, holds the assets of the ASTECH Division. ECF 5 ¶¶ 7 n.1; 8.

### B. Boeing Contracts.

GKN initially entered into certain contracts with Boeing in January 2013 to supply aircraft parts to Boeing ("the Contracts"). ECF 5 ¶ 2. The Contracts are for a term of fifteen (15) years, through the year 2028, during which time the Contract prices (i.e., the prices GKN, or its successor, could charge Boeing for parts) are fixed and not subject to renegotiation. ECF 5 ¶¶ 2, 35, 71. As of 2021, eight (8) years into the Contracts, GKN began looking for a buyer who would assume the Contracts, based on the attendant operational and financial strain of performing the Contracts, a significant fact about which Boeing was aware. ECF 5 ¶ 10, 11, 13, 36, 43. In late 2021, GKN found a willing buyer in Astech NewCo and informed Boeing of the intended sale. ECF 5 ¶¶ 36–38. In December 2021, Astech NewCo agreed to purchase the assets of the Astech Division from GKN. ECF 5 ¶ 37. A condition of the sale included the assignment of the Contracts of the Astech Division with its key customers, including Boeing, from GKN to Astech NewCo. *Id.*

---

[1] Defendants recite the allegations and descriptions of the events as propounded by Plaintiff in light of the Rule 12(b)(6) standard, and make specific references to the Amended Complaint's paragraphs.

### C. Defendants' Alleged Misrepresentations to Boeing.

Boeing's fraud claims are principally, if not entirely, based upon the following pre-acquisition representations by "Defendants":

### i. Pre-Acquisition Exchanges Between December 2021 and March 2022.

GKN could not assign the Contracts to Astech NewCo or anyone else without Boeing's consent. ECF 5 ¶ 38. In evaluating Astech NewCo Oaks as a prospective purchaser of and successor to the Contracts, Boeing's Credit Risk Department requested and received information from Ten Oaks on behalf of Astech NewCo. Over several months between December 2021 and March 2022, Boeing exchanged information with an unidentified Ten Oaks representative. ECF 5 ¶¶ 40, 41, 42, 43, 44, 45, 46, 47, 48.

### ii. Pre-Acquisition February 10, 2022 Meeting at Boeing's Offices.

On February 10, 2022, while Boeing was still considering whether to agree to consent to the assignment of the Contracts to Astech NewCo, Defendants Richeson and Lovrovich attended a meeting with Boeing in Everett, Washington. ECF 5 ¶¶ 50, 51. During this meeting, Richeson and Lovrovich shared a slide presentation with Boeing, describing Ten Oaks' manufacturing experience, touting its recent successful transactions, and explaining why Ten Oaks believed that the Astech Division was a desirable acquisition target. ECF 5 ¶ 52.

### D. Consent to Assignment.

On March 3, 2022, Boeing executed the Consent to Assignment of the Contracts from GKN to Astech NewCo ("CTA").[2] ECF 5 ¶ 61. The parties to the CTA are Boeing, GKN, and Astech

---

[2] "While a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (internal quotation marks and citation omitted). The CTA is the focal point of Boeing's alleged damages, and is specifically referenced in the Complaint. ECF 5

NewCo. None of the Defendants are parties or signatories to the CTA, which includes general representations and warranties regarding the accuracy of the financial representations made to Boeing by both GKN and Astech NewCo, which were relied upon by Boeing in approving the assignment. The CTA also provides that it constitutes the entire agreement between the parties thereto concerning the allowed assignment of the Contracts.

### E. Astech NewCo's Contract Price Increases Due to Financial Strain.

Boeing alleges that following the assignment of the Contracts, on May 12, 2022, Astech NewCo sent a "ransom note" to Boeing requesting an increase in prices for certain Boeing parts, which was necessary for Astech Newco to remain economically viable. ECF 5 ¶ 66. After Boeing declined to agree to any price increases, and reiterated to Astech NewCo and Ten Oaks "the incontrovertible fact" that Contract prices were fixed through 2028 (ECF 5 ¶ 71), Astech NewCo filed for Chapter 11 bankruptcy protection on July 15, 202 (ECF 5 ¶ 15). *See also In re ASTECH Engineered Prods., Inc.*, No. 22-10635 (Bankr. D. Del) ECF 1.[3] On August 17, 2022, Astech NewCo filed a motion in the bankruptcy proceeding to reject the Contracts, stating that, "rejection of the Boeing Contracts . . . will greatly benefit the estate by relieving the Debtor from the obligation to continue to sell its products to Boeing at a significant loss . . . [and] facilitat[ing] the Debtor's goals of reorganizing and avoiding liquidation." ECF 5 ¶ 15; *see also In re ASTECH*

---

¶¶ 4, 5, 10, 11, 18, 19, 33, 40, 49, 50, 61, 65, 72, 78, 91, 92, 93, 98, 102, 103, 107, 109, 121. If the Court would prefer to consider the full CTA in its review of this Motion, including the identity of the parties thereto (which do not include Ten Oaks), Defendants would be pleased to provide a copy.

[3] The Court is permitted to take judicial notice of court filings and proceedings. *Butler v. Wells Fargo Bank, N.A.*, No. CIV.A. MJG-12-2705, 2013 U.S. Dist. LEXIS 4424, at *2–3 n.3 (D. Md. Jan. 11, 2013) (taking judicial notice of court filings), *cited with approval in Zloop, Inc. v. E Recycling Sys., LLC*, No. 5:14-CV-87, 2014 U.S. Dist. LEXIS 171154, at *2 n.1 (W.D.N.C. Dec. 9, 2014). Boeing repeatedly references Astech Newco's bankruptcy proceeding in the Amended Complaint (ECF ¶¶ 1, 15, 16, 17, 62, 72, 80, 81, 82, 83, 84, 85, 86, 88, 102).

*Engineered Prods., Inc.*, No. 22-10635 (Bankr. D. Del) ECF 99 ¶ 20.  Under these circumstances, the bankruptcy court approved rejection of the Contracts on September 8, 2022, and Boeing has since filed proofs of claim in the bankruptcy proceeding based on the rejection.

Boeing alleges that the Defendants "caused" Astech NewCo to take the foregoing actions, all of which were the product of a premeditated "conspiracy and fraudulent scheme to induce Boeing to execute the CTA" and then to hold Boeing "hostage" and "interfere with the Contract between Boeing and Astech [NewCo]."  ECF 5 ¶¶ 1–19.

### F.  Boeing's Initial Complaint.

On September 14, 2022, Boeing filed suit against Ten Oaks, Lovrovich, and Richeson alleging that Ten Oaks, by and through Lovrovich and Richeson, had conspired to fraudulently induce Boeing to sign the CTA.  Boeing further alleges that, following the assignment of Contracts to Astech NewCo, Defendants "caused" Astech NewCo to demand more favorable Contract prices and, when those demands were not met, "caused" Astech NewCo to file for bankruptcy protection "in a naked ploy to gain leverage to obtain the same or greater price increases" from Boeing. ECF 5 ¶ ¶ 1, 13, 19.[4]

Boeing's original Complaint included three counts directed against Ten Oaks, Lovrovich, and Richeson for "fraudulent misrepresentation" (Count I), "negligent misrepresentation" (Count II), and tortious interference with Contract (Count III).  On October 7, 2022, Boeing filed an Amended Complaint adding Magan and Hahn as defendants to Count III and added two new counts, one against all five Defendants for Unfair and Deceptive Trade Practices (Count IV) and one against the four individual defendants for Civil Conspiracy (Count V).

---

[4] Boeing alleges that "Defendants structured the acquisition [of Astech] as an asset purchase by an entity affiliated with, owned, managed and/or controlled by Ten Oaks." ECF 5 ¶7 n.1; ¶ 8.

## III.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 672–73, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007). Though the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," the court is not required to accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Under this standard, "a complaint must contain 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 1949 (quoting *Twombly*, 550 U.S. at 570)).

Determining whether a complaint states a plausible claim for relief is "a context-specific task," *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 1950 (alteration in original) (citation omitted)), leading the Court to assess whether the factual allegations of the complaint are sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must establish more than a "sheer possibility" that the defendant has done what they are accused of. *Iqbal*, 556 U.S. at 678. The complaint must also "advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570); *see also Parker Excavating, Inc. v. Highlands at Cullowhee, LLC*, No. 1:20-cv-00165-MR, 2021 U.S. Dist. LEXIS 59137, *5–6 (W.D.N.C. Mar. 29, 2021) (quoting *Walters*, 684 F.3d at 439 (citations and internal quotation marks omitted)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Sons of Confederate Veterans v. City of Lexington*, 722 F.3d 224, 228 (4th Cir. 2013) (citation omitted). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," a claim must be dismissed. *Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs.*, 521 F. App'x 278, 293 (4th Cir. 2013) (citation omitted). The court does not "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

When a complaint sounds in fraud, it must also satisfy the heightened Rule 9(b) pleading standards. Fed. R. Civ. Pro. 9(b); *See also Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188–89 (4th Cir. 2007). Rule 9(b) mandates that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "*[A]t a minimum,*" the complaining party must "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *VRX USA, LLC, v. VRX Ventures, Ltd.*, No. 3:20CV409-GCM, 2020 U.S. Dist. LEXIS 230494, at *7 (W.D.N.C. Dec. 7, 2020) (quoting *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014)); *see also Shipp v. Goldade*, No. 5:19-CV-00085-KDB-DCK, 2020 U.S. Dist. LEXIS 47587, at *8 (W.D.N.C. Mar. 19, 2020) (citation omitted); *U.S. ex. rel. Wilson v. Kellog Brown & Root, Inc.* 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted). Conclusory allegations of fraud are insufficient to meet the requirement of particularity. *Hart v. First Oak Wealth Mgmt., LLC*, No. 21 CVS 15763, 2022 NCBC LEXIS 81, *44–52 (N.C. Super Ct. July 28, 2022).

Rule 9(b)'s heightened pleading standard applies with equal force to claims of negligent misrepresentation. *Levy v. Infilaw Corp.*, No. 3:17-CV-00026-GCM, 2017 U.S. Dist. LEXIS 131106, at *14 (W.D.N.C. Aug. 17, 2017); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999) ("[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)."). The heightened Rule 9(b) pleading standard "serves to protect defendants' reputations from baseless accusations, eliminate meritless suits brought only to extract a settlement, discourage fishing expeditions, and provide defendants with enough information about a plaintiff's allegations to mount a defense." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 546 (4th Cir. 2017) (citing *Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009)).

## IV. ANALYSIS

Boeing's Amended Complaint, including all five Counts, are premised upon Defendants' alleged fraudulent inducement of Boeing to sign the CTA with Astech. According to the Amended Complaint, "Boeing would not have agreed to the CTA if Defendants **had not committed** Ten Oaks to specific plans to address Astech's financial condition and operational challenges, or if Defendants **had informed** Boeing that Ten Oaks would seek massive price increases." ECF 5 ¶ 18 (emphasis added). This lone, conclusory allegation succinctly summarizes Boeing's entire case against the Defendants, falsely portraying Boeing as a naive victim. This is an absurd proposition.

When Boeing signed the CTA, it knew full well that Ten Oaks was a small, "family" enterprise, which invested in corporate divestitures for profit. Boeing also knew that Ten Oaks lacked experience owning or managing an aerospace manufacturing company, though Ten Oaks emphasized to Boeing Richeson's prior experience in automotive manufacturing. ECF 5 ¶ 58. Boeing knew more than Ten Oaks ever could about the Astech Division's financial and operational

problems, having engaged GKN-Astech as a parts supplier for at least eight (8) plus years. Boeing essentially admits that Defendants *never* made any representations, one way or another, about whether it planned to pursue contract price increases. ECF 5 ¶ 12. Conspicuously absent from the Amended Complaint is any allegation that Defendants lied to Boeing by suggesting they would never seek price increases for parts in the future, nor does Boeing contend that it ever sought to ascertain Ten Oaks' intentions during Boeing's due diligence. Yet, Boeing wants this Court to believe a fantastical claim that, but for Defendants' non-statements on its future business plans (which ultimately were not incorporated into the written requirements of the CTA), Boeing would never have agreed to execute the CTA, and that Boeing's reliance on these alleged fraudulent representations was reasonable.

Boeing's actual knowledge of the Astech Division's precarious financial position gives greater context to Boeing's Amended Complaint and helps to explain what is really going on here. It is not only implausible, but simply inconceivable that before executing the CTA. Boeing did not consider the possibility that the Astech Division might be forced to pursue price increases following its acquisition by Astech NewCo. Boeing is frustrated about being constrained by the ongoing Astech bankruptcy proceedings, and the Amended Complaint is a reflection of that frustration. Boeing attempts to unfairly scapegoat Defendants with vague and conclusory statements. The Amended Complaint ultimately fails to state a viable cause of action against Ten Oaks, or the individual Defendants, sufficient to survive the minimum pleading requirements of Rules 12(b)(6) and the heightened obligations of 9(b) of the Federal Rules of Civil Procedure. Instead, the allegations of fraud amount to nothing more than an embellished breach of contract claim. *See Lambert v. First Horizon Bank*, 2021 U.S. Dist. LEXIS 142635, *17 (W.D.N.C. June

28, 2021), *adopted in* Lambert v. First Horizon Bank, No. 3:19-cv-581-RJC-DCK, 2021 U.S. Dist.

LEXIS 141363, at *3 (W.D.N.C. July 29, 2021).

### A. The Fraud Claim Fails Because Defendants Made No Material Misrepresentation of Fact.

To survive a motion to dismiss, a complaint sounding in fraud must allege with

particularity: "(1) [f]alse representation or concealment of a [past or existing] material fact [that

defendant had a duty to disclose], (2) [that is] reasonably calculated to deceive, (3) made with

intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party."

*Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 617 S.E.2d 664, 670 (N.C. Ct. App.

2005) (quoting *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974)); *see also VRX*, 2020 U.S.

Dist. LEXIS 230494, at *7 (quoting *Malone v. Topsail Area Jaycees, Inc.*, 439 S.E.2d 192, 194

(N.C. Ct. App. 1994)).

Certain types of statements do not, as a matter of law, constitute actionable

misrepresentation or concealment of past or existing material facts. These include statements

which are promissory in nature at the time they are made and which *relate to future actions* and

conduct, such as promises of Defendants to provide what the Plaintiff "*would* need…*throughout

the next year.*" *See Glob. Hookah Distribs., Inc. v. Avior, Inc.*, 401 F. Supp. 3d 653, 658 (W.D.N.C.

2019). Promises looking to the future are "on par with false affirmations and opinions . . . and do

not generally constitute legal fraud." *Id.* (quoting *Cash Register Co. v. Townsend*, 50 S.E. 306, 307

(N.C. 1905)). Similarly, statements of opinion, representations regarding a company's capabilities,

absent extraordinary circumstances, cannot be fraudulent, as "[f]raud cannot be predicated on

Defendant's poor calculation of its capabilities." *Glob. Hookah*, 401 F. Supp. 3d at 659 (citation

omitted). Even puffery, which "includes 'exaggerated advertising, blustering, [] boasting, . . . and

general claims of superiority,'" is not considered a material statement of fact, nor are similar

statements of "corporate optimism." *Id.* (quoting *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 302 (4th Cir. 2017)); *see also Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 544–47 (M.D.N.C 2013).

Moreover, Rule 9 (b) requires that the Complaint identify with specificity the "who, what, what, where, when, and how" of each alleged misrepresentation, and does not countenance the collective grouping of defendants when pleading fraud. When fraudulent misrepresentation is asserted against two or more people, the Complaint must specify in each instance which of the persons is responsible. *See e.g., Oberlin Cap., L.P. v. Slavin*, 554 S.E.2d 840, 845 (N.C. Ct. App. 2001) (affirming dismissal of a fraud claim collectively brought against three defendants).

### i. The Alleged Misrepresentations Made by Ten Oaks in Response to the Credit Risk Department Inquiries Were Not Statements as to Any Past or Existing Material Facts.

Ten Oaks' initial representations were made by an unidentified Ten Oaks' representative in response to inquiries from Boeings's Credit Risk Department. Moreover, each of "the Defendants' material representations" relates to Ten Oaks' *future* plans, and are clearly not statements as to any current, subsisting or ascertainable facts – specifically, that Ten Oaks *would*: (a) adequately capitalize Astech Newco; (b) make capital expenditures to upgrade equipment; (c) secure a line of credit; (d) tap family capital as needed; and (e) implement a detailed operations plan. ECF 5 ¶ 6. Because Defendants' statements do not involve statements of past or existing material facts, or any specific timeframes in which to satisfy the alleged promises, Boeing's fraud claims cannot be predicated upon them. *See Glob. Hookah*, 401 F. Supp. 3d at 658–62; *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500–01 (N.C. 1974).

### ii. The Alleged Misrepresentations by Ten Oaks in Response to the Credit Risk Department Inquiries Fail to Comply with Rule 9(b).

The Amended Complaint's description of Ten Oaks' alleged misrepresentations to Boeing fails to allege with particularity the "who, what, when, where, and how" essential to the pleading of a cognizable fraud claim. Conclusory allegations of fraud are insufficient where the plaintiff otherwise "fails to allege specific facts or circumstances regarding the who, what, when, where, and how" of the misrepresentations. *Shipp*, 2020 U.S. Dist. LEXIS 47587, at *8 (W.D.N.C. Mar. 19, 2020). Paragraphs 40-49 of the Amended Complaint reveal that the Amended Complaint fails to allege, among other things: (a) the identity of the person(s) whom Boeing advised about the reasons for what Boeing characterizes as its "evaluation process" (ECF 5 ¶ 40); (b) to whom Boeing solicited the written questions; who on behalf of Ten Oaks responded to the questions, and which responses, if any were materially false or misleading (ECF 5 ¶ 41); (c) how Ten Oaks' pro forma for the Astech Division was materially false and misleading (ECF 5 ¶ 43); and (d) who from Ten Oaks responded to the written questions summarized in Paragraph 47, and how such responses were false and misleading (ECF 5 ¶ 48). Boeing's failure to plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" is fatal to Boeing's claims. See *VRX*, 2020 U.S. Dist. LEXIS 230494, at *7 (quoting *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014)).

### iii. The Alleged Misrepresentations Made by Lovrovich and Richeson at the February 10, 2022 Meeting Were Not Statements as to Subsisting or Ascertainable Facts.

At the February 10, 2022 meeting in Everett, Washington, Lovrovich and Richeson presented information for Ten Oaks orally and/or through a slide deck presentation which covered:

- Ten Oaks' "mission, its vision for Astech, and additional details about its promised improvements to Astech's financial conditions and operations" (ECF 5 ¶ 50);

- Descriptions of Richeson's prior experience in automotive manufacturing as it pertained to his anticipated future role with Astech NewCo (ECF 5 ¶ 51, 58);

- "Ten Oaks' manufacturing experience, touted its recent successes, and offered their "Astech Value Thesis," pursuant to which "Lovrovich and Richeson described their purported view that the Astech Division had a "strong core value prop that is undervalued by the current owner." (ECF 5 ¶ 52, 53);

- Descriptions of relevant prior Ten Oaks' acquisitions (ECF 5 ¶ 53);

- Ten Oaks' Operational Improvement Plan for the Astech Division which included projected equipment upgrades to improve the quality of Astech parts (ECF 5 ¶ 53, 54, 56);

- Ten Oaks' promises to "identify gaps in Astech's management team and…use Ten Oaks in-house executive recruiter partner to fill identified gaps within [the] first 90-180 days." (ECF 5 ¶ 55);

- Ten Oaks' plans to implement a 30-60-90 day operational plan (ECF 5 ¶ 57).

As with the representations made by Ten Oaks to Boeing's Credit Risk Department, all of these representations are either promissory in nature, relating to future actions and conduct, or are merely opinions or puffery as commonly occurs when companies are touting their experience and capabilities. Such statements of opinion, puffery, or future projections are not, as a matter of law, statements of material fact sufficient to support a claim for fraud. *See Glob. Hookah*, 401 F. Supp. 3d at 658–62; *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648, 659 (N.C. 1992); *Aldridge v. Metro. Life Ins. Co.*, No. 18 CVS 1050, 2019 NCBC LEXIS 116, at *75–76 (N.C. Super. Ct. Dec. 31, 2019).

The Amended Complaint also fails to clearly identify which of the Defendants is responsible for the misrepresentations. The Amended Complaint variously attributes the misrepresentations to "Defendants" (five persons) (ECF 5 ¶ 6, 7), "Ten Oaks, Lovrovich and Richeson" (three persons) (ECF 5 ¶ 97), and "Lovrovich and Richeson" (2 persons) (ECF 5 ¶ 14).

Allegations of fraud made collectively against the Defendants without the reasonable specificity required by Rule 9(b) should be dismissed.[5]  *Oberlin Cap.*, 554 S.E.2d at 845.

In short, the Amended Complaint is woefully deficient in providing the particularity required by Rule 9(b).  Notably, the Amended Complaint attempts to draw Defendants Hahn and Magan into the alleged scheme with conclusory assertions that they "masterminded" the scheme. ECF 5 ¶ 64.  Moreover, the timing of the filing of the Amended Complaint, which sought to include the owners of Ten Oaks with perceived financial resources, is certainly suspicious as it was filed shortly after the Bankruptcy Court granted Astech NewCo's motion to reject the Contracts pursuant to its Chapter 11 bankruptcy proceeding.

> **iv.  The Alleged Misrepresentations Made by Lovrovich at the May 25, 2022 Meeting Do Not Support a Cognizable Fraud Claim under Rules 9(b) or 12(b)(6).**

The Amended Complaint also relies without justification upon statements allegedly made on May 25, 2022 by Lovrovich and Richeson during a meeting with Boeing following assignment of the Contracts.  Boeing blamed Ten Oaks for Astech NewCo's "inappropriate pricing demands." ECF 5 ¶ 70. Boeing also accused Ten Oaks of directing Astech NewCo to "send a ransom note" demanding higher prices and threatening to stop production of parts if Boeing did not agree to the "drastic and baseless demand." ECF 5 ¶ 66.  In response to such attacks, Lovrovich assured Boeing that "Ten Oaks *had invested and would continue to invest in Astech*." (ECF 5 ¶ 72); that Ten Oaks had "no plans to sell Astech" (ECF 5 ¶ 73); and that Ten Oaks was "not drawing a fee to manage

---

[5] Plaintiff is not entitled to bypass the specificity in hopes of a fishing expedition.  *See* ECF 5 p. 1 (Introductory Paragraph (setting forth Boeing's belief that "additional evidentiary support for its allegations" will be obtained "in discovery").  Importantly, Plaintiff seems to understand its own lack of detail and inability to set forth specific material misrepresentation as it emphasizes in its own introductory paragraph of the Amended Complaint the "belief" that "additional evidentiary support for its allegations" will be obtained "in discovery."  ECF 5 p. 1 (Introductory Paragraph).

Astech" (ECF 5 ¶ 74).  None of these representations is material, nor does the Amended Complaint contain any credible allegation of reasonable reliance by, or harm to, Boeing related to these representations.  The only "detriment" Boeing alleges in the Amended Complaint is derivative of its consent to the assignment of the Contracts; these representations were made *after* that assignment.

### v. The Amended Complaint Fails to Allege that Defendants Had a Duty to Disclose.

Over and over, the Amended Complaint claims that if only Defendants had told them of their prior plans to seek price increases, Boeing would not have signed the CTA. (See, e.g. ECF 5 ¶ 103).  However, while repeatedly complaining about Defendants' failure to disclose future intention, the Amended Complaint does not (and cannot) adequately allege that Ten Oaks had a duty to disclose.  In the absence of such a duty, silence cannot be grounds for fraud.

When a fraud claim is based upon allegations of concealment or non-disclosure of material facts, the Complaint must allege that the defendant had a duty to disclose material information to the plaintiff, as silence can be fraudulent only when there is a duty to speak.  *Hart*, 2022 NCBC LEXIS 81, at *44–52 (citing *Lawrence v. UMLIC-Five Corp.*, No. 06 CVS 20643, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) (plaintiff alleged a fiduciary relationship that gave rise to defendant's duty to disclose material facts that defendant was aware of, and that plaintiff did not know and could not have reasonably discovered)).  A well-pled complaint must also allege:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence*, 2007 NCBC LEXIS 20, at *9–10 (quoting *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195–96 (M.D.N.C. 1997)).

The Complaint fails to specify with particularity which Defendants were under a duty to disclose and why. There are insufficient allegations to give rise to a duty to volunteer information. Absent such relationship between Defendants and Boeing, the alleged claims of fraud by concealment must fail. *See Dallaire v. Bank of Am., N.A.*, 760 S.E.2d 263, 264 (N.C. 2014) ("An arm's length transaction between parties of equal bargaining power . . . absent exceptional circumstances, will not give rise to a fiduciary duty.").

### B. Boeing's Claim for Negligent Misrepresentation Fails for the Same Reasons as Boeing's Fraud Claims.

Boeing claims, in the alternative, that if there was not a premeditated scheme by Defendants to commit fraud, there had to have been a scheme to negligently misrepresent facts to Boeing. ECF 5 ¶ 13. According to Boeing, it had to be one or the other, and these are the only two possibilities, the latter arising from the allegation that "Ten Oaks' pre-acquisition due diligence was so knowingly deficient and reckless" that Defendants had no reasonable basis to make representations to Boeing regarding proposed steps Defendants might take to "improve [Astech's] financial and operational position." ECF 5 ¶ 13. Boeing's Amended Complaint, on its face, effectively admits that Boeing is speculating about what Defendants did or did not do.

"The tort of negligent misrepresentation occurs when [(1)] a party justifiably relies [(2)] to his detriment [(3)] on information prepared without reasonable care [(4)] by one who owed the relying party a duty of care." *Simms v. Prudential Life Ins. Co. of Am.*, 537 S.E.2d 237, 240 (N.C. Ct. App. 2000) (citation omitted). "With respect to negligent misrepresentation, 'whether liability accrues is highly fact-dependent, with the question of whether a duty is owed a particular plaintiff

being of paramount importance.'" *Bob Timberlake Collection, Inc. v. Edwards,* 626 S.E.2d 315, 322 (N.C. Ct. App. 2006), *cert. denied*, 633 S.E.2d 674 (N.C. 2006) (citing *Marcus Bros. Textiles, Inc. v. Price Waterhouse, L.L.P.*, 513 S.E.2d 320, 325 (N.C. 1999)). "A fiduciary relationship between two parties can create a duty of care because the fiduciary has a duty 'to act in the best interests of the other party.'" *Nexus Techs., Inc. v. Unlimited Power Ltd.*, No. 1:19-cv-00009-MR, 2019 U.S. Dist. LEXIS 173653, at *12 (W.D.N.C. Oct. 7, 2019) (quoting *Dallaire*, 760 S.E.2d at 266). "An arm's length transaction between parties of equal bargaining power . . . absent exceptional circumstances, will not give rise to a fiduciary duty." *Id.* at *13 (quoting *Dallaire*, 760 S.E.2d at 264).

For the same reasons that Boeing's fraud by concealment claim fails, so, too, does the claim for negligent misrepresentation. The Amended Complaint fails to adequately plead that Defendants had a legal duty as Boeing. Boeing has not alleged sufficient facts from which to infer any duty of care between Defendants and Boeing. What is more, the purported misrepresentations amount to, at most, puffery, statements of future intent, and/or a non-statement about whether Astech NewCo or the Astech Division would continue providing the same pricing under the Contracts. These are not actionable misrepresentations and, in any event, Boeing's reliance on these alleged statements and non-statements for the proposition that Defendants were guaranteeing the Astech Division's continued financial viability and pricing, was not reasonable. *See VRX USA, LLC v. VRX Ventures, Ltd.*, 2020 U.S. Dist. LEXIS 230494, *11–12 (W.D.N.C. Dec. 7, 2020) (noting that while reasonableness of reliance is ordinarily jury question, "where the facts are so clear that they support only one conclusion[,] the court may decide reasonableness as a matter of law").

### C. The Amended Complaint Fails to State a Claim for Tortious Interference Where Defendants Were Non-Outsiders to the Supply Contract.

The Amended Complaint incorrectly alleges that Ten Oaks and the individual Defendants tortiously interfered with the Contracts by causing Astech NewCo to halt production and delivery of parts that Astech NewCo was obligated to supply Boeing under the Contracts. ECF 5 ¶ 115. The elements of a tortious interference with contract claim are: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Labs, Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988) (citation omitted). "The interference is 'without justification' if the defendants' motives were 'not reasonably related to the protection of a legitimate business interest' of the defendant." *Privette v. Univ. of N.C.*, 385 S.E.2d 185, 190 (N.C. Ct. App. 1989) (citations omitted). Here, even if Defendants undertook all of the conduct as alleged, they were doing so in their capacity as non-outsiders to Astech NewCo, and acting in the company's best interests.

Officers, directors, and other fiduciary agents of a company are considered "non-outsiders" to the company's contracts and have a qualified privilege to interfere with said contracts. *It's Prime Only, Inc. v. Darden*, No. COA01-1246, 2002 N.C. App. LEXIS 2144, at *11–12 (N.C. Ct. App. Aug. 20, 2002); *Embree Constr. Grp., Inc. v. Racfor, Inc.*, 411 S.E.2d 916, 924–25 (N.C. 1992). "The acts of a corporate officer in inducing his company to sever contractual relations with a third party are presumed to have been done in the interest of the corporation." *Embree*, 411 S.E.2d at 924 (quoting *Wilson v. McClenny*, 136 S.E.2d 569, 578 (N.C. 1964)). A non-outsider may "only be treated as an outsider" for purposes of a tortious interference claim "when his

interference with a contract 'has no relation whatever to the source of the non-outsider status.'" *It's Prime Only*, 2002 N.C. App. LEXIS 2144, at *12 (citation omitted).

Here, Boeing asserts that Defendants are one in the same, with Astech NewCo exercising ownership and control over the entity. *See*, e.g., ECF 5 ¶ 8. Further, when discussing how the Defendants structured the acquisition, Boeing alleges that: "However structured and thereafter organized, Ten Oaks has since managed and/or controlled Astech [NewCo]." ECF 5 ¶ 7. In fact, the Amended Complaint is replete with references to the Defendants' alleged control and manipulation of Astech NewCo undercutting Boeing's efforts to suggest that the Defendants are a third party (non-outsider) unlawfully interfering with the contract. ECF 5 ¶¶ 1, 9, 15, 19, 66, 67, 80, 104, 115. In light of Boeing's own conclusions about the Defendants' status and control over Astech NewCo, Boeing cannot overcome the presumption that as insiders, Defendants are presumed to have acted in Astech NewCo's best interests, and cannot therefore be subject to claims for interfering with the Contracts.

Moreover, the basis for the conduct about which Boeing complains (e.g., the "ransom note") is plain from Astech's motion to reject the Contracts in the bankruptcy proceeding: to relieve Astech NewCo "from the obligation to continue to sell its products to Boeing at a significant loss." *In re ASTECH Engineered Prods., Inc.*, No. 22-10635 (Bankr. D. Del) ECF 99 ¶ 20. There is nothing unlawful or malicious about a financially distressed company trying to negotiate better pricing, indeed a bankruptcy court approved Astech NewCo's rejection of the Contracts. *See* ECF 5 ¶ 81, *In re ASTECH Engineered Prods., Inc.*, No. 22-10635 (Bankr. D. Del) ECF 139.

### D. The Amended Complaint Fails to State a Claim for Unfair and Deceptive Trade Practices.

To prevail on its UDTP claim, Boeing would have to "show that (1) [Defendants] committed an unfair or deceptive trade practice, (2) the act or practice in question was in or affecting commerce[,] and (3) the act or practice proximately caused injury to the plaintiff." *Indus. Timber, LLC v. Jackson Furniture Indus.*, No. 3:22-CV-00229-KDB-DCK, 2022 U.S. Dist. LEXIS 182975, at *5–6 (W.D.N.C. Oct. 6, 2022) (quoting *Elsayed v. Family Fare LLC*, 2020 U.S. Dist. LEXIS 142546, at *47 (M.D.N.C. Aug. 10, 2020)). Boeing's claim fails to clear even the first element of a UDTP claim because it is, at its core, a grievance about a mere breach of contract, unaccompanied by the necessary aggravating circumstances to elevate it to UDTP status. To the extent Boeing contends the claim should survive based upon Defendants' purported fraud, this, too, is unavailing, for the reasons stated above, confirming that Boeing has failed to satisfy the heightened pleading standard.

### i.  The Pricing Increase Constitutes, at Most, a Mere Breach of Contract.

Plaintiff's reticence to remedy its alleged injury (for the possibility of paying increased prices for parts) via a claim against its fellow contracting party, Astech NewCo, is plain. The attempt to repackage a breach of contract claim into something more is ultimately ineffective, particularly as to the UDTP claim, because the underlying "wrong" – an alleged ultimatum to increase pricing – is, at most, a breach of contract.

To discourage parties from including UDTP counts as "boilerplate claim[s] in most every complaint based on a commercial or consumer transaction in North Carolina," *see Allied Distributors, Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993), North Carolina courts have repeatedly held that "breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain" a UDTP action, *see Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155

F.3d 331, 347 (4th Cir. 1998) (quoting *Branch Banking & Trust Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992)).  Instead, a claimant must show "substantial aggravating circumstances" attending the breach. *Id.*

While it is not necessary to show fraud, bad faith, deliberate or knowing deception, or actual deception, to sufficiently allege aggravating circumstances, the Plaintiff "must, nevertheless, show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." *Glob. Hookah*, 401 F. Supp. 3d at 662 (quoting *Overstreet v. Brookland, Inc.*, 279 S.E.2d 1, 7 (N.C. Ct. App. 1981)).  By contrast, allegations that essentially amount to performance or nonperformance of obligations under a contract are insufficient to state a UDTP claim on this basis. *Mkt. Choice, Inc. v. New Eng. Coffee Co.*, No. 5:08-CV-90, 2009 U.S. Dist. LEXIS 73627, at \*26–34 (W.D.N.C. Aug. 17, 2009).

Here, Boeing's gripe boils down to what it contends constitutes Astech NewCo's breach of the Contracts in requesting or demanding a pricing increase for the untenable Contracts, or, an otherwise speculative and conclusory scheme to defraud without any of the required particularity. The central issue concerns the performance or failure to perform the Contracts and the potential breach of modifying the previously agreed upon price of component parts.  It is therefore not sufficiently unfair or deceptive to give rise to a claim under Section 75-1.1 of the North Carolina General Statutes, and subject to dismissal with prejudice.

### ii. The UDTP Claim Is Not Otherwise Supported by Sufficient Allegations of Misrepresentation.

The vague and conclusory allegations of fraudulent inducement into the CTA do not save the UDTP claim.  Where, as here, allegations are insufficient to support a claim of fraudulent inducement, they cannot, alone, be the basis for a UDTP claim. *Glob. Hookah*, 2020 U.S. Dist. LEXIS 133985 (W.D.N.C. July 29, 2020), at \*18–20 (noting, among other things, that an attempt

to raise pricing prior to expiration of service agreement did not amount to unfair or deceptive conduct). Boeing has alleged no cognizable or actionable misrepresentations upon which it can premise a UDTP claim. As such, the claim should be dismissed with prejudice.

### E. The Amended Complaint Fails to State a Viable Claim for Civil Conspiracy.

To adequately state a claim for civil conspiracy, a plaintiff must allege "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette*, 385 S.E.2d at 193 (citation omitted). On a simple review of the Amended Complaint, Boeing cannot meet the first or second element of this claim.

### i. The Civil Conspiracy Claim Is Based on Insufficient Allegations of Underlying Fraud.

In North Carolina, civil conspiracy is not a separate civil action, but must be based on an underlying tortious act. *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 712 S.E.2d 328, 333 (N.C. Ct. App. 2011). Here, Boeing's conspiracy claim is premised entirely on its allegations that Ten Oaks, Lovrovich, and Richeson somehow fraudulently induced Boeing to consent to GKN's assignment of the Contracts to Ten Oaks. ECF 5 ¶ 123 (describing alleged conspiracy to "fraudulently induce" Boeing's consent). As such, Rule 9(b)'s particularity requirements apply with equal force to the civil conspiracy claim. *See Terry v. SunTrust Banks, Inc.*, 493 F. App'x 345, 358 (4th Cir. 2012). For the same reasons that the fraud claim is deficient for failure to allege cognizable misrepresentations or to include the required particularity, so too is the claim for civil conspiracy.

### ii. The Alleged "Conspiracy" Is a Legal Impossibility.

In any event, Boeing's allegations of a civil conspiracy between and among agents of Ten Oaks are self-defeating. "The law is well-settled . . . that a conspiracy between a corporation and

its agents, acting within the scope of their employment, is a legal impossibility." *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986).

Here, there is no question, even on the face of the Amended Complaint, that each accused Defendant is an agent of Ten Oaks. *See*, e.g., ECF 5 ¶¶ 22–25 (alleging Magan, Hahn, Lovrovich, and Richeson are "principal agents" of Ten Oaks). Indeed, Ten Oaks is alleged to have had an equal hand in the supposed misrepresentations that it, Lovrovich, and Richeson made to Boeing. ECF 5 ¶¶ 97–100 (alleging deceptive conduct from Ten Oaks, Lovrovich, and Richeson jointly); ¶ 49 (contending that Lovrovich and Richeson were directed to make the subject representations to Boeing as Ten Oaks' key personnel); ¶ 71 (noting that Lovrovich and Richeson met with and made representations to Boeing "on behalf of Ten Oaks"). Any purported benefit that Magan, Hahn, Lovrovich, or Richeson might gain from these representations is entirely intertwined with and dependent upon Ten Oaks' advantage as Astech NewCo's manager and representative of Astech NewCo's ultimate owners.

The purported scheme to induce Boeing's consent to assignment of the Contracts is tantamount to accusing Ten Oaks, a single entity, of conspiring with itself. In other words, the Amended Complaint does not even allege the first element of civil conspiracy: "an agreement between *two or more persons*." *Worley Claims Servs., LLC v. Jefferies*, 429 F. Supp. 3d 146, 166 (W.D.N.C. 2019) (emphasis added) (citations omitted). As such, the claim for civil conspiracy must be dismissed with prejudice.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice all of Plaintiff's claims within the Amended Complaint.

Respectfully submitted, this 6th day of December, 2022.

/s/ Patrick E. Kelly
Patrick E. Kelly, NC State Bar No. 16703
pkelly@jahlaw.com
Michael J. Hoefling, NC State Bar No. 38246
mhoefling@jahlaw.com
Kathleen D.B. Burchette, NC State Bar No. 45891
kburchette@jahlaw.com
JOHNSTON, ALLISON & HORD, P.A.
1065 East Morehead Street
Charlotte, North Carolina 28204
Telephone:     704/332-1181
Facsimile:     704/376-1628
*Attorneys for Defendants*