| | |
|---|---|
| THE BOEING COMPANY<br><br>Plaintiff,<br><br>vs.<br><br>TEN OAKS MANAGEMENT LLC, ANDREW LOVROVICH, DAVID RICHESON, MATTHEW MAGAN, and MICHAEL HAHN<br><br>Defendants. | **REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

Defendants Ten Oaks Management LLC, Andrew Lovrovich, David Richeson, Matthew Magan, and Michael Hahn (collectively, "Defendants") submit this Reply Memorandum in Further Support of their Motion to Dismiss Plaintiff's Amended Complaint (the "Amended Complaint").

## I. SUMMARY

Boeing's[1] response brief rests on generalizations and conclusory denials that misstate the allegations of the Amended Complaint and do not, as required, directly address the deficiencies in the Amended Complaint. Though Boeing summarily contends that Defendants never intended to fulfill their pre-assignment commitments, this conclusory assertion is insufficient to give rise to fraud. Moreover, Defendants are non-outsiders to the Contracts, privileged to interfere for a legitimate purpose and, independent of their non-outsider status, the Amended Complaint admits and references legitimate business motives for Defendants' interference. Finally, the civil conspiracy claim amounts to an assertion that Ten Oaks conspired with itself, and is disallowed

---

[1] Capitalized terms not defined herein have the same meaning as in the opening brief (Doc. 30).

under the intracorporate immunity doctrine. As to Boeing's other arguments, Defendants defer to the analysis in their opening brief, which has not been successfully rebutted.

## II. ANALYSIS

### A. The Amended Complaint Fails To Adequately Plead That Defendants Knew At The Time The Promises Were Made That They Were False.

Attempting to avoid the well-established rule that "North Carolina courts are reluctant to hold defendants liable for promises of future performance," *Wilhelm v. Smithfield Packing Co.*, 1999 U.S. Dist. LEXIS 9733, *11 (E.D.N.C. 1999); *Craig v. Texaco, Inc.*, 218 F. Supp. 789, 790 (E.D.N.C. 1963), aff'd 326 F.2d 971 (4th Cir. 1964) (fraud cannot be based on an allegation of a promise of future intent), Boeing contends that Defendants' promises nevertheless amount to fraud because at the time they were made, Defendants did not intend to fulfill them. The Amended Complaint does not support this conclusion.

The sole exception to the general rule barring fraud predicated upon unfulfilled future representations is where the Complaint sufficiently alleges facts indicating the promisor never intended to fulfill its promise. In other words, a promise can only serve as a basis for fraud if "it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." *Leftwich v. Gaines*, 521 S.E.2d 717, 723 (N.C. Ct. App. 1999). The allegations in the Amended Complaint must therefore plausibly show that Defendants never intended to implement the future plans related to the operation and capitalization of Astech Newco.

There are no special circumstances or allegations warranting this inference in the Amended Complaint, as required under the law Boeing cited. Faced with an Amended Complaint devoid of plausible allegations demonstrating Defendants never intended to make good on the promises it communicated to Boeing, Boeing instead repackages conclusory statements as factual allegations: "Ten Oaks intended all along to acquire Astech, make no investments or improvements, and use

Astech's status as a sole-source supplier to force Boeing to accept pricing concessions under threat of withholding the delivery of products that are vital to Boeing's ability to supply commercial and military aircraft." Doc 36 p. 3; *see also, e.g.*, ¶ 67 ("Ten Oaks never intended to obtain a credit facility"); ¶ 73 ("Ten Oaks intended all along to hold Astech for only a short period, perhaps as short as nine to twelve months, before either selling it to a new buyer or liquidating the company").). Boeing also concludes that because the pro forma predicted an opening balance of $5 million, and Astech Newco folded so soon after closing, that it is reasonable to infer . . . that the financials were misstated." Doc. 36 p. 11. The Amended Complaint itself contradicts this inference, alleging nearly $7 million in cash at closing, a discrepancy which, at most, would be to Boeing's advantage. Doc. 5 ¶ 37. These conclusory assertions fail to push a fraud claim "across the line from conceivable to plausible," and are insufficient under Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 680, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007)).

Boeing's "allegations" do not provide any factual backing for its assertions as to what Ten Oaks "intended all along" and amount to nothing more than self-serving speculation and, in essence, confirm the established principle that fraud cannot result merely from a party's intentional breach. Boeing asks the Court to ignore this deficiency, asserting instead that a "party's intent can be inferred from its later actions" and thus, Defendants failure to implement the plans promised suffices to plead fraudulent intent at the time the promises were made, a circular argument at best. Doc 36 p. 6. Boeing overstates the law. In the cases cited by Boeing in which a promissory representation has served as the basis for fraud, the plaintiff's claim was premised on more than the defendant's failure to fulfill a promise; in each, *the plaintiff alleged additional facts demonstrating that the defendant operated in bad faith at the time of the misrepresentation.* For instance, in *Leftwich v. Gaines*, the Complaint not only included allegations that the defendant,

who was the Town's Chief Building Officer, made false promissory representations to the plaintiff regarding a property for sale, but also that the defendant was "romantically associated with [the ultimate purchaser of the property], [ ] lived rent-free in a home owned by [the ultimate purchaser of the property]" and that a mere two days after plaintiff disclosed her offer to defendant, "[the ultimate purchaser of the property] purchased the [ ] property for $1,000 more than plaintiffs bid." 521 S.E.2d at 723. The Court found those additional allegations together supported a finding that the defendant's incorrect representations concerning the property were made with the "intent to deceive, and motivated by a plan to obtain a strategically important corner property in order to secure benefits for himself and [his girlfriend]." *Id.* Similarly, the plaintiff in *Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc*, avoided a 12(b)(6) dismissal after sufficiently alleging a plausible motive for defendant to make false promises during merger negotiations given, amongst other things, the defendant walked away from the merger and immediately "opened a competing concierge health care program using [proprietary and confidential] information they had obtained from [the plaintiff]." 662 F. Supp. 2d 427 (W.D.N.C. 2009). Likewise, in *Hudgins v. Wagoner*, the Court found the plaintiff based its claim on more than just a failure to perform by alleging that the defendant promised to inform plaintiff before "do[ing] anything else on the property" while the defendant actively "tried to buy out plaintiff, and then took actions concerning the Property without first informing plaintiff." 694 S.E.2d 436, 445 (N.C. Ct. App. 2009).

Boeing's Amended Complaint, however, does not sufficiently or plausibly allege that Defendants made promises regarding intentions with respect to Astech Newco while *simultaneously* intending not to fulfill these promises. Indeed, Boeing has not shown that Defendants possessed an alternative, nefarious motive or incentive to defraud at the time the promises were made apart from the bald allegation that Ten Oaks wanted Boeing to consent to the

assignment. Boeing relies solely on post-assignment behavior to establish pre-assignment intentions. Without "something more," Boeing has not provided factual allegations from which the Court could determine that Defendants never intended to fulfill its promises to Boeing.

Boeing's characterization of *Global Hookah* similarly misses the mark. The presence of an additional contract claim in *Global Hookah* does not invalidate the principles the court embraced in rejecting an insufficient fraud claim arising from contract negotiations. This matter centers on performance of the Contracts and related alleged representations thereto. Boeing's ineffective attempt to distinguish *Global Hookah* ignores the fact that it has asserted a claim for breach of the Contracts in the Astech Newco bankruptcy proceeding, where such claim belongs. Further, application of *Global Hookah* would certainly not "disturb decades of North Carolina law." On the contrary, *Global Hookah* safeguards the well-recognized concept that mere breaches of promises are not actionable fraud in North Carolina.

### i. The Post-Assignment Conduct of Defendants Does Not Indicate Defendants' Promises Were False When Made.

Boeing also relies on Defendants' conduct post-assignment and Esterhay's *interpretation* of this conduct, as confirmation that "Defendants knew that their representations were false when they were made." Doc. 36 p. 9. Boeing acknowledges that this "proof" of falsity occurred "[a]fter Boeing consented to Ten Oaks' acquisition of Astech." *Id.* Boeing resorts to claiming that the representations were knowingly false when made because, ultimately, Defendants did not actually follow through. This allegation is insufficient, as a matter of law, to demonstrate the representations made pre-assignment were made with no intent to comply. *McQuade v. Xerox Corp.*, 2011 U.S. Dist. LEXIS 9655, *23 (E.D.N.C. Feb. 1, 2011) (dismissing fraud claim when "plaintiff's complaint simply state[d] that [the defendant] agreed to rehire plaintiff in exchange for her accepting a reduction in force package" and "that [the defendant] never carried through on this

promise."); *see also Britt v. Britt*, 320 N.C. 573, 579, 359 S.E.2d 467, 471 (1987) (finding no claim where only evidence that there was no intent to carry through on promise was fact that promise was not fulfilled).

### ii.     Defendants Did Not Owe Boeing a Duty to Affirmatively Disclose an Intent to Seek Price Increases in the Future.

Defendants were under no duty – particularly when never asked – to disclose their post-closing plans for Astech Newco to Boeing, with whom Defendants had no fiduciary or contractual relationship. Generally, parties engaged in arm's-length negotiations do not owe one another a duty to disclose. *Packrite, LLC v. Graphic Packaging Int'l, LLC*, No. 1:17CV1019, 2020 U.S. Dist. LEXIS 225130, at *10 (M.D.N.C. Dec. 2, 2020). Boeing contends a duty exists because "material facts [were] accessible to [Defendants] only, and [they knew] them not to be within the reach of the diligent attention, observation and judgment of [Boeing]." *Everts v. Parkinson*, 555 S.E.2d 667, 674 (N.C. Ct. App. 2001) (internal citations and quotation marks omitted).

To establish a duty to speak under these circumstances, Boeing must show the defect was not discoverable "in the exercise of [its] diligent attention or observation." *Id.* (internal citations and quotation marks omitted). There is no credible allegation that Defendants had formed an intent to pursue price increases prior to the closing of the acquisition, that any such intent to pursue price increases was undiscoverable or, relatedly, that Boeing's reliance on the omission of pricing representations reasonably supported the presumption that Ten Oaks was committed to causing Astech Newco to keep prices static. *See Id.* (noting reasonable reliance requirement in fraud is "virtually identical to what is already required to establish a duty to disclose").[2]

---

[2] The question of whether Boeing's reliance on the absence of any pricing representation was reasonable is, therefore, pertinent in determining whether a duty to disclose exists in the first place.

The Amended Complaint includes a laundry list of questions that Boeing posed to Ten Oaks prior to the closing of the Astech acquisition. *See* Doc. 5 ¶¶ 39–42, 45–47, 50–59. Tellingly, however, the Amended Complaint does not allege that Boeing asked Defendants a single question regarding future prices. The fact that Boeing intentionally chose not to discuss future pricing at any time during the four-month period when it was considering whether to consent to the proposed transaction is fatal to their argument that Defendants had an affirmative duty to discuss their future plans on this issue.

Boeing also does not allege it asked how Ten Oaks could invest and keep parts prices down. Given its status as a long-term customer of the Astech business, Boeing was in as good a position to deduce the efficacy of the future operational measures Ten Oaks forecast.[3] Boeing's demonstrated sophistication is incongruous with its current position that it was dissuaded from contractually ensuring Ten Oaks' and the other Defendants' commitment to the terms of the Contracts prior to agreeing to the CTA. None of the Defendants is a party to the CTA or its warranties and representations, and Boeing has not (and cannot) allege that it required any Defendant to guaranty Astech Newco's obligations under the Contracts.

The absence of any direct contractual requirement between Boeing and Ten Oaks is particularly significant and supports that no duty to disclose existed. *See Big Red, LLC v. Davines*, 31 Fed. App'x 216, 217–18, 222 (4th Cir. 2002) (holding unenforceable exclusive distributorship

---

[3] For the same reason, Defendants did not owe Boeing a duty of care in discussing Astech's future financial and operational viability for purposes of negligent misrepresentation. Boeing received accurate information about Astech's current financial position, and reflected an understanding of Astech's challenges in its own due diligence. Doc. 5 ¶ 18; Doc. 36 p. 14. Boeing was in at least an equal position as Defendants to deduce whether the potential revitalization plans were feasible. *Rountree v. Chowan Cty.*, 796 S.E.2d 827, 832 (N.C. Ct. App. 2017) (holding negotiation between employer and prospective employee did not create legal duty for employer to provide accurate information, where the employee had ready access to such information).

agreement did not give rise to defendant's duty to disclose outstanding negotiations with other prospective distributors); *B&F Slosman v. Sonopress, Inc.*, 557 S.E.2d 176, 86–87 (N.C. Ct. App. 2001) (holding no duty to disclose that party "had no intention of agreeing to a five year lease term" where no written agreement existed); *Computer Decisions, Inc. v. Rouse Office Mgmt.*, 477 S.E.2d 262 (N.C. Ct. App. 1996) (holding no duty to disclose intentions regarding proposed lease where no enforceable agreement as to lease existed); *RREF BB Acquisitions, LLC v. MAS Props., L.L.C.*, 2015 NCBC LEXIS 61, *34, 2015 NCBC 58, 2015 WL 3646992 (N.C. Super. Ct. June 9, 2015) (ruling "Defendants [could not have] reasonably assumed BB&T would not sell the loans" merely based on months of negotiations).

Defendants' purported pre-CTA representations (and non-representations) during arms-length negotiations, never resulted in a legally enforceable agreement and did not give rise to a duty for Defendants to speak about future matters about which they were not certain or aware.

Boeing also contends that Defendants were under a duty to disclose their supposed intention to increase prices because they had generally discussed certain plans for Astech's future financial and operational success. Doc 36 p. 19. Notably, Boeing acknowledges that these general discussions of Defendants' "plans" were prompted by Boeing's owns questions about how to "address Astech's financial and operational challenges," which are not alleged to have included *any* query regarding maintaining the pricing structure under the Contracts. Doc. 36 p. 19.

According to the Amended Complaint, Ten Oaks responded, not regarding pricing, only to Astech Newco's anticipated capitalization, repairs, upgrades, and personnel management. Doc. 5 ¶¶6, 11, 54–56. Ten Oaks also provided historical information regarding how it had managed previous acquisitions. Doc 5 ¶ 53. These prospective representations focus on capitalization and operations, not the particular matter of pricing for Astech Newco. *See Packrite, LLC v. Graphic*

*Packaging Int'l, LLC*, No. 1:17CV1019, 2020 U.S. Dist. LEXIS 225130, at \*19–20 (M.D.N.C. Dec. 2, 2020) (ruling general representations and assurances, without reference to conversation or written communication concerning subject matter of omission, did not support duty to disclose).

More, Boeing's questions and Defendants' responses demonstrate that nothing about Astech's financial outlook was sufficiently fixed to make an assumption about pricing. Boeing's queries concerning "Astech's financial and operational challenges," belie its awareness that Astech's ability to meet contractual obligations was in jeopardy. Doc 36 p. 19. Ten Oaks' responses, as alleged by Boeing, included that it had yet to develop for Astech Newco a 2022 budget or even a strategic plan at the time of the representations. Doc. 5 ¶ 57.  These "smoking gun" representations in no way support imposition of an obligation on the Defendants to disclose every single aspect of their future plans for Astech Newco.

### B. No Claim for Tortious Interference Lies Because Defendants are Non-Outsiders and Their Actions Were Justified.

Boeing urges that Ten Oaks, Hahn, Magan, and Lovrovich are "undeniably outsiders" to the Contracts between Boeing and Astech Newco,[4] but the Amended Complaint concedes, at all relevant times, Ten Oaks has "owned, managed, and/or controlled Astech" (Doc. 5 ¶ 7 n.1) and that Defendants collectively asserted "ownership and control over Astech" following the acquisition (Doc 5 ¶ 8). As the owners and managers of Astech Newco, Defendants would plainly be non-outsiders to Astech Newco's contracts. *See Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 351 (4th Cir. 1998) ("[o]fficers, directors, shareholders, and other corporate fiduciaries" hold qualified privilege to interfere as non-outsiders).

---

[4] Boeing apparently concedes that Richeson is a non-outsider to the Contracts. *Compare* Doc. 36 pp. 17 (omitting Richeson from list of Defendants who "are undeniably outsiders") 18 (noting *Prime Only* defendants was 25% shareholder in entity and therefore was properly considered non-outsider) *with* Doc. 5 ¶ 73 (alleging Richeson's 5% ownership interest in Astech Newco).

A non-outsider's qualified privilege to interfere is only lost when his actions are "in his own best interests *and adverse to that of his firm.*" *Mason v. Health Mgmt. Assocs., LLC*, 421 F. Supp. 3d 237, 246 (W.D.N.C. 2019) (emphasis added) (quoting *Albright v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:17-cv-4610, 2017 U.S. Dist. LEXIS 199763, 2017 WL 6028362 (W.D.N.C. Dec. 5, 2017) (internal quotation marks omitted)). Despite Boeing's protestations, the Amended Complaint does not sufficiently explain how any of the Defendants received a benefit, distinct from or adverse to Astech Newco's interests, sufficient to forfeit the privilege.

Rather, the Amended Complaint points to legitimate business reasons for Defendants' alleged interference, all the while making conclusory statements alleging Defendants acted without justification. However, "general allegations of malice are insufficient as a matter of pleading." *Pinewood Homes, Inc. v. Harris*, 646 S.E.2d 826, 833 (2007). For the claim to survive, the underlying allegations "must admit of no motive for interference other than malice." *Id.* at 832–33. The Amended Complaint admits of motives other than malice. First, the Amended Complaint references ignorance as a motive: "Ten Oaks pled ignorance—that it had consummated the Astech transaction without understanding the economics of the Contracts." Doc 5 ¶ 10. Second, the Amended Complaint specifically references the bankruptcy motion to reject the Contracts, which states the justifiable motive: "to relieve Astech from the obligation to continue to sell its products at a significant loss." Doc 5 ¶ 81; Motion to Reject Lease or Executory Contract(s) with the Boeing Company, *In re ASTECH Engineered Prods., Inc.*, No. 22-10635 (Bankr. D. Del) Doc. 99 ¶ 20.

Independent of the outsider question, interference with a contract is not tortious when it is undertaken "in the legitimate exercise of the interfering person's rights." *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 784 S.E.2d 457, 463 (N.C. 2016) (internal quotation omitted). Where the interference is lawfully permitted, it is not actionable. *See, e.g.*,

*Exela Pharma Scis., LLC v. Sandoz, Inc.*, 486 F. Supp. 3d 1001, 1022 (W.D.N.C. 2020) (noting tortious interference claim was preempted because "the cornerstone of the Plaintiff's claim is this assertion that it is somehow 'illegal' for the Defendant to do precisely what the FDA gave the Defendant permission to do").

Here, the alleged "interference," – to file for Chapter 11 bankruptcy protection and subsequently move to reject the Contracts given financial incompatibility – is legally proper, reasonable, and expressly authorized by the Bankruptcy Court. Doc 5 ¶ 15 (alleging "a court order permitting Astech [Newco], at Ten Oaks' direction, to renege on and breach the long-term Contracts").

### C.  The Intracorporate Immunity Doctrine Invalidates Any Civil Conspiracy.

Boeing relies on cases from other jurisdictions and a Fourth Circuit case from 1985 for the proposition that North Carolina does not subscribe to the intracorporate immunity doctrine. Notably, a more recent Fourth Circuit decision describes the doctrine as "well-settled," and, despite Boeing's suggestion to the contrary, the doctrine has been relied upon to dismiss civil conspiracy actions pursuant to Rule 12(b)(6) in several recent cases. *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986); *Cent. Nat'l Gottesman Inc. v. Nakos Paper Prods.*, No. 3:18-cv-640-RJC-DSC, 2019 U.S. Dist. LEXIS 183528, at *20–21 (W.D.N.C. Aug. 28, 2019), *adopted* 2019 U.S. Dist. LEXIS 183143, at *16 (W.D.N.C. Oct. 23, 2019); *Robinson v. P&G Mfg. Co.*, No. 1:18CV133, 2019 U.S. Dist. LEXIS 32638, at *20 (M.D.N.C. Mar. 1, 2019); *Bray v. Town of Wake Forest*, No. 5:14-CV-276-FL, 2015 U.S. Dist. LEXIS 44731, at *32–33 (E.D.N.C. Apr. 3, 2015).

Alternatively, Boeing asserts that, even if the Court applies the "well-settled" doctrine, Magan and Hahn have independent personal stakes from Ten Oaks in inducing Boeing's assent to the CTA: "protecting themselves from liability." *See* Doc. 36 pp. 23–24. Simply put, the purpose

of establishing a limited liability company is, of course, to insulate the members from unlimited personal liability for the company's obligations. *See Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 385 (4th Cir. 2018). If the intentional protection from personal liability – the cornerstone of formation of any company – were sufficient to create an "independent personal stake," every owner or manager of a company would have an independent stake, and there would be no intracorporate immunity doctrine in the first place. *See, e.g.*, *Ehmann v. Medflow, Inc.*, 2022 NCBC 55, 72–73, 2022 NCBC LEXIS 114, *22–23, 2022 WL 4462356 (N.C. Super. Ct. Sep. 12, 2022) (rejecting contention that principals of employer had independent personal stake in breaching plaintiff's employment agreement because they were personally liable, under North Carolina law, for payment of plaintiff's wages). Magan and Hahn's "independent personal stake" proffered is inapt, and no such stake is cited for Richeson or Lovrovich.

### III. CONCLUSION

Defendants respectfully request that the Court dismiss with prejudice all of Plaintiff's claims within the Amended Complaint.

Respectfully submitted, this 6th day of January, 2023.

/s/ Patrick E. Kelly
Patrick E. Kelly, NC State Bar No. 16703
pkelly@jahlaw.com
Michael J. Hoefling, NC State Bar No. 38246
mhoefling@jahlaw.com
Kathleen D.B. Burchette, NC State Bar No. 45891
kburchette@jahlaw.com
JOHNSTON, ALLISON & HORD, P.A.
1065 East Morehead Street
Charlotte, North Carolina 28204
Telephone:     704/332-1181
Facsimile:     704/376-1628
*Attorneys for Defendants*