**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00481-KDB-DCK**

| | |
|---|---|
| **THE BOEING COMPANY,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**TEN OAKS MANAGEMENT, LLC; ANDREW LOVROVICH; DAVID RICHESON; MATTHEW MAGAN; AND MICHAEL HAHN,**<br><br>    **Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 29). The Court has carefully considered this motion, the parties' briefs and exhibits, and other relevant pleadings of record. For the reasons discussed below, the Court will **DENY** the Defendants' motion.

## I.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable

to the plaintiff in weighing the legal sufficiency of the complaint." *Id.* Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTUAL BACKGROUND

The Boeing Company is an American multinational corporation that designs, manufactures and sells airplanes and other products and services in the aerospace industry. Ten Oaks Management, LLC ("Ten Oaks") is an investment group founded by Defendants Matthew Magan and Michael Hahn. *Id.* at ¶ 1. This action arises out of a transaction in which Ten Oaks purchased Astech, a company that supplies critical parts for Boeing's 767 and 747 aircraft. *Id.*[1] The two Ten Oaks partners involved in this acquisition were Defendants Andrew Lovrovich and David Richeson. *Id.*

Boeing's business relationship with Astech's parent company, GKN Aerospace ("GKN"), dates back to 2013. *Id.* at ¶ 2. Boeing and GKN entered into supply agreements which set the price Boeing would pay for Astech parts through 2028. *Id.* In 2021, GKN began the process of selling Astech to Ten Oaks. *Id.* at ¶ 3. However, the agreements between Boeing and GKN required Boeing to consent to any assignment of the agreements to Ten Oaks through a Consent to Assignment (CTA). Boeing held this right so that Boeing could evaluate any new owner and maintain continued access to the parts required for its aircraft. *Id.* at ¶¶ 4-5.

---

[1] Consistent with the 12(b)(6) standard, the facts have been drawn from the Amended Complaint and taken as true.

First, Boeing conducted written due diligence. *Id.* at ¶ 40. Boeing requested a series of written explanations from Ten Oaks involving the corporate structure, acquisition strategy, management of cash, operation changes, and sources of funding. *Id.* at ¶ 41. Boeing also requested that Ten Oaks provide it with pro forma forecasted financial statements for Astech. *Id.* at ¶ 42. Ten Oaks furnished the pro forma financial statements to Boeing, which stated that Astech would open with a cash balance of $5 million. *Id.* at ¶ 43. Ten Oaks further provided written 30-, 60-, and 90-day post-acquisition plans for the company. *Id.* Also at this time, Ten Oaks notified Boeing in writing that they would seek a line of credit from one of their preferred lending partners. *Id.* at ¶ 44.

Boeing followed up Ten Oaks' response with further questions about how much the line of credit would be, whether there would be additional lines of funding, and Ten Oaks' willingness to inject cash into Astech if needed. *Id.* at ¶ 47. Ten Oaks responded to this second inquiry stating that after the acquisition they would secure a line of credit of approximately $18 million and provide Astech with access to their family office equity capital. *Id.* at ¶ 48. Also, Ten Oaks confirmed that they were willing to inject additional cash into Astech if necessary. *Id.* at ¶ 48.

After Boeing conducted its written diligence, it held an in-person meeting with Ten Oaks in February 2022. *Id.* at ¶ 50. At the meeting, Richeson and Lovrovich gave a presentation on their view of Astech's "value proposition" and allegedly provided specific commitments regarding Astech's operations moving forward. *Id.* at ¶¶ 51-52. These commitments included capex improvement steps and strategic investments in key equipment upgrades that would be used to improve Astech's quality of production. The equipment upgrades discussed at the meeting were an upgrade to a panel fabrication machine control system, a strand annealer upgrade and replacement, and a senzimir maintenance overhaul and control system upgrade. *Id.* at ¶ 56. Ten

3

Oaks also discussed its 30-, 60-, and 90- day post-acquisition strategy with Boeing. *Id.* at ¶ 53. This included their plans to minimize customer disruption, offer key employee retention packages, and make additional personnel adjustments. *Id.* at ¶ 57. At each step of the diligence process, both written and in-person, Magan and Hahn were involved directly with the acquisition strategy, including the oversight of communications made to Boeing and the approval of information presented at the meeting. *Id.* at ¶¶ 49, 52, 60.

Allegedly based on these written and oral representations, Boeing provided the CTA for the supply contracts, thereby agreeing to Ten Oaks' acquisition of Astech. The terms of the sale were not disclosed to Boeing in the course of the diligence conducted related to the CTA. *Id.* at ¶ 63. Shortly after March 3, 2022, GKN sold Astech's stock to Ten Oaks for one dollar in a "pay-to-take" transaction. *Id.* at ¶ 62. Along with the other assets and liabilities, Ten Oaks acquired approximately $7 million in cash in the deal. *Id.* at ¶ 62. Post-closing, Hahn and Magan held Ten Oaks' cash in their personal bank accounts as part of their efforts to reduce their personal risk. *Id.* at ¶ 64.

On May 12, 2022, only approximately two months following the acquisition, Ten Oaks instructed Astech to request that Boeing agree to pay more than three times the contractually agreed upon price for the Astech supplied parts. *Id.* at ¶ 66. Ten Oaks further directed Astech to threaten to cease production if Boeing did not agree to the price increase. *Id.* at ¶ 66. At the time of the requested price increase, Ten Oaks had not obtained a line of credit, injected cash into Astech, or made upgrades to equipment. *Id.* at ¶ 67. With regard to the equipment upgrades, Ten Oaks did conduct an appraisal of the equipment but never used the appraisal to obtain an asset-backed loan. *Id.* at ¶ 67.

On May 25, 2022, Boeing met with Ten Oaks to discuss the demand for an increased price. *Id.* at ¶ 71. At this meeting, Lovrovich again confirmed Ten Oaks' plan to improve Astech's capitalization and make operational improvements. *Id.* at ¶ 71. However, Ten Oaks never carried out any of the commitments made during Boeing's due diligence and Astech never became financially stable. *Id.* at ¶ 89.

In short order, Ten Oaks forced Astech to declare bankruptcy on July 15, 2022. *Id.* at ¶¶ 77, 80. Magan and Hahn were personally involved in directing the demand for a price increase and the decision to declare bankruptcy. *Id.* at ¶ 88.

Boeing filed this action on September 14, 2022. Doc. No. 1. Defendants have now moved to dismiss all claims against them, arguing that the complaint fails to state a claim under Fed. R. Civ. Proc. 12(b)(6). Doc. No. 29. The motion is fully briefed and ripe for the Court's decision.

## III.    DISCUSSION

In the Amended Complaint, Boeing alleged five counts, including fraudulent misrepresentation; negligent misrepresentation; tortious interference with contract; unfair and deceptive trade practices in violation of the North Carlina Unfair and Deceptive Trade Practices Act ("NC UDTPA"), N.C. Gen. Stat. § 75-1.1, et seq.; and civil conspiracy. Doc. No. 5, at pp. 25-30. The Court will address each count in turn.

### A. Fraudulent Misrepresentation

To allege fraud under North Carolina law, "the plaintiff must establish that the defendant (1) made a false representation of material fact, (2) knew it was false (or made with reckless disregard of its truth or falsity), and (3) intended that the plaintiff rely upon it. In addition, (4) the plaintiff must be injured by reasonably relying on the false representation." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999) (citing *Ragsdale v. Kennedy*, 286 N.C.

130, 209 S.E.2d 494, 500 (N.C. 1974)). Additionally, Rule 9(b) of the Federal Rules of Civil Procedure, requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Fourth Circuit has held that the "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making misrepresentations and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The purpose of this higher pleading standard is to "provide notice to a defendant of its alleged misconduct, ... prevent [ ] frivolous suits, ... eliminat[e] fraud actions in which all the facts are learned after discovery, and ... protect[ ] defendants from harm to their goodwill and reputation." *United States ex rel. Nathan v. Takeda Pharms. N. Ap., Inc.*, 707 F. 3d 451, 456 (4th Cir. 2013). Thus, to satisfy Rule 9(b), Plaintiff must "set forth the 'who, what, when, where, and how of the alleged fraud' before access to the discovery process should be granted." *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F. 3d 370, 379 (4th Cir. 2008).

Defendants argue that the statements pled by Boeing are not statements that constitute a misrepresentation of material fact that Defendants knew to be false, and that Boeing's allegations do not meet the heightened pleading requirements of Rule 9(b). Doc. No. 30, at p.10. There is no contention that Boeing has not properly alleged that Boeing relied on the statements by Defendants in considering whether to consent to the Astech acquisition and that Boeing was injured by the statements.

### i. Intentional Material Misrepresentation

The elements of a "false representation of material fact" and that the falsity be known combine to require an intentional misrepresentation of material fact to prove fraud. *See Food lion* 194 F.3d at 512. Defendants seek to dismiss Boeing's fraudulent misrepresentation claim because the statements made were promissory in nature, opinions or mere puffery.[2] Doc. No. 30, at p.11. Specifically, they argue that promissory statements which relate to future actions and conduct, and statements of opinion that represent a company's capabilities, including puffery, cannot, as a matter of law, be the basis for a false representation in support of a fraud claim. Doc. No. 30, at p.12 (citing *Glob. Hookah Distribs., Inc. v. Avior, Inc.*, 401 F. Supp. 3d 653, 658-62 (W.D.N.C. 2019).

"The general rule is that a plaintiff cannot predicate an action for fraud upon statements which are promissory in nature at the time they are made and which relate to future actions and conduct." *Glob. Hookah*, 401 F. Supp. 3d at 658 (citing *Forstmann v. Culp*, 648 F. Supp. 1379, 1386 (M.D.N.C. 1986)). From this general rule, it follows that "fraud cannot be predicated upon the mere nonperformance of a promise or contractual obligation." *Forstmann* 648 F. Supp. at 1386 (citing *Williams v. Williams*, 220 N.C. 806, 18 S.E.2d 364 (1942)). Because a promise of a future plan cannot be guaranteed true or false at the time of its making any failure to perform a promise is nothing more than a breach of contract. *Id*. However, there may be liability for fraud where the promisor, at the time of the promise of future intent, does not intend to comply with the promise.

---

[2] Defendants have also asserted that there was no duty to disclose in advance the requested price increase so their silence cannot be considered to be fraud. Doc. No. 30, at pp.16-17. The court need not address this issue at this time. In the event that Defendants did not have a duty to disclose the price increase to Boeing, as argued by Defendants, the fraud action will still not fail, at this stage, because it is adequately supported by the allegations of Defendants' affirmative misrepresentations, as discussed above.

7

*Id.*; *Leftwich v. Gaines*, 134 N.C. App. 502, 508-09, 521 S.E.2d 717, 723 (N.C. Ct. App. 1999); *see Forstmann* 648 F. Supp. at 1386. Also, a present intention contrary to a promise of future intent may be proved by circumstantial evidence. *Leftwich* 134 N.C. App. at 509, 521 S.E.2d at 723 (citing *Lewis v. Blackman*, 116 N.C. App. 414, 419, 448 S.E.2d. 133, 136 (1994)).

Defendants' challenged statements undoubtedly relate to the future. Defendants stated that they would obtain a line of credit for Astech, inject capital into Astech, make specific upgrades to machinery, take specific steps to improve operations, and execute a 30-, 60-, and 90-day post acquisition plan. If Boeing had alleged nothing further than these statements, Boeing's claims might be held to be nothing more than a breach of contract claim.

However, Boeing alleges that Defendants had a present intention to not follow through on these promises when they were made. Plaintiff points to, as evidence of intention to not follow through, the brief period of time between the sale of Astech (shortly after March 3, 2022) and the request for a price increase (May 12, 2022), the soon following declaration of bankruptcy on July 15, 2022, and the failure to acquire an asset-backed loan. Given the extensive nature of the statements made by Defendants to Boeing in ensuring Boeing's consent to the sale of Astech, it is plausible to infer that any change to the plans would require equally extensive diligence and decision making. This quick succession of events thus suggests that the statements could be found to be a knowing lie when they were made.

Furthermore, Defendants conducted an appraisal of the current Astech equipment. The conducting of an appraisal of the equipment is consistent with Defendants' commitment to upgrade equipment and provide a line of credit; however, the failure to use the appraisal to acquire an asset-backed loan is not. That said, an appraisal would also be consistent with the intent to liquidate a company's assets and declare bankruptcy because it provides Defendants with an estimate of value

to limit the creditors with a stake in Astech's assets. Again, the short time frame between the statements made to Boeing prior to the sale and the appraisal, create a plausible inference that Defendants' intent was to liquidate the company at the time they made the statements that they would improve company operations and further capitalize Astech. Defendants' alleged intent contrary to the promises of future conduct thus can support a finding of a misrepresentation of material fact to state an action for fraud.

Defendants also argue that the meeting involving Lovrovich and Richeson and the presentation of Ten Oaks' mission and planned improvements was nothing more than statements of opinion and puffery. Doc. No. 30, at p.14. However, the Court finds that the statements made by Defendants in the course of Boeing's due diligence are of a specific and concrete factual nature sufficient to support a finding of misrepresentation of material fact.

Statements of mere puffery cannot constitute the type of material representations of fact necessary to support an action in fraud. *Glob. Hookah*, 401 F. Supp. 3d at 659. Puffery includes statements of corporate optimism. *Id.* (citing *Plymouth Cty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 544 (M.D.N.C. 2013)). Statements of corporate optimism can, however, become false material statements of fact when the statements in question are "specific factual allegations [that] are not simply sales pitches but rather can be proven true or false." *Dunn v. Borta*, 369 F.3d 421, 431 (4th Cir. 2004). In *Dunn*, the court held that the alleged misrepresentations, which included the number of units sold, product design plans, negotiations with major companies, future product plans, and the negotiation of a production deal, were of a specific factual nature to warrant a finding of a material statement of fact. *Id*.

Here, Boeing conducted two phases of due diligence before consenting to the sale of Astech to Ten Oaks: written diligence and additional diligence by way of a meeting with Ten Oaks. At

the meeting, Lovrovich and Richeson spent time lauding their achievements and highlighting specific aspects of their proposed Astech operation. The transition from achievements to operational details reflects the transition from corporate optimism to material statements of fact. The highlighted specific operational details of capex improvement steps, equipment upgrades, and personnel decisions are analogous to the specific factual allegations in *Dunn*. In fact, these operational details went further than those highlighted in *Dunn*. Defendants provided technical details involving an upgrade to a panel fabrication machine control system, a strand annealer upgrade, and a senzimir maintenance overhaul and control system upgrade. The statements by Defendants therefore plausibly moved past the line of corporate optimism into concrete, material statements of fact.

In sum, when drawing all reasonable inferences from the facts as Boeing has alleged them to be, Defendants' actions plausibly establish an intention to not follow through on their statements made to Boeing and in turn an intentional material misrepresentation.

### ii. Rule 9(b) Pleading Requirements

Defendants also argue that the Amended Complaint fails to meet the level of particularity required for the "who, what, when, where, and how" necessary to meet the Rule 9(b) standard. Doc. No. 30, at p.13. Specifically, Defendants maintain that the Amended Complaint does not identify the person that Boeing claims made the misrepresentations. *Id.* at pp.13, 15. Boeing responds that they have pled the fraud claim with reference to the conduct of each Defendant and specific facts to meet the heightened requirement of Rule 9(b). Doc. No. 36, at p.12. The Court agrees.

Boeing has made allegations of fraud related to both their written diligence and their meeting with Ten Oaks. Boeing alleges misrepresentations by: (1) email on February 9, 2022,

involving the amount of the line of credit and the possibility of additional cash if needed; and (2) statements made by Richeson and Lovrovich on February 10, 2022, involving the upgrades to equipment and short-term plan post-acquisition. Boeing has thus plausibly alleged the time, place, and contents of these false representations.

The allegations of the identities of the people making the misrepresentations are possibly less clear, but still sufficient. Boeing specifically names Richeson and Lovrovich as the individuals making the misrepresentations in the meeting. While not specifically naming the individual responding in the course of the written diligence, it can reasonably be inferred that the individual sending the email can be identified on the email itself. Additionally, Boeing identifies Magan and Hahn as integral in the acquisition of Astech and ultimately responsible for the misrepresentations by Richeson, Lovrovich, and the individual who sent the email.

Accordingly, when viewing the facts in the light most favorable to Boeing and drawing all reasonable inferences, Boeing has alleged specific factual misrepresentations with the particularity required to sustain a claim for fraudulent misrepresentation. The Court will therefore deny Defendants' motion to dismiss Boeing's fraud claim.

**B. Negligent Misrepresentation**

To establish a negligent misrepresentation claim a plaintiff must prove that they "justifiably relie[d] to [their] detriment on information prepared without reasonable care by [a person who] owed the relying party a duty of care." *Value Health Sols. Inc. v. Pharm. Research Assocs., Inc.*, 2019 WL 6049988, at *8 (N.C. Super. Ct. Sept. 6, 2019). Defendants argue that there has been no showing of justifiable reliance, their statements are of puffery or future intent, and they owe Plaintiff no duty of care. As already discussed, the statements made by Defendants were material misrepresentations of fact and not statements of mere puffery or non-actionable future intent. The

11

sufficiency of the negligent misrepresentation claim therefore turns on Boeing's justifiable reliance on the statements and the duty owed by Defendants to Boeing. The Court finds that the Plaintiff has adequately pled both elements.

"Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate." *Cobb v. Pennsylvania Life Ins. Co.*, 215 N.C. App. 268, 277, 715 S.E.2d 541, 549 (2011) (citing *State Props., L.L.C. v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002)). Plaintiff conducted both written and in-person due diligence relating to the statements made by Defendants. Also, the Court cannot find based on the Amended Complaint that Boeing had some alternate way to discover Defendants' plans. Indeed, Boeing alleges that it was unable to uncover the plans following an extensive due diligence period. The Court thus finds that Boeing has plausibly pled that it reasonably relied on Defendants' statements.

> In support of a claim of negligent misrepresentation, a breach of duty has been defined as:
>
> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, [and thus] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Rountree v. Chowan Cnty.*, 252 N.C. App. 155, 160, 796 S.E.2d 827, 831 (2017) (citations omitted). Defendants had a pecuniary interest in the acquisition of Astech and provided information to Boeing during Boeing's due diligence period to garner Boeing's necessary consent to the transaction. Defendants allegedly breached their duty owed to Boeing in the course of supplying false information relating to the CTA, including the statements on additional sources of funding, post-acquisition initiatives, and operational improvements. Therefore, the Court finds

12

that, when viewing the facts in the light most favorable to Boeing, Boeing has sufficiently pled a

claim of negligent misrepresentation.

## C. Tortious Interference with Contract

> To establish a claim for tortious interference with contract, a plaintiff must show:
>
> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

*Embree Const. Grp. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (quotation

omitted). Boeing has plainly alleged that a contract existed between Boeing and Astech,

Defendants knew of this contract, Defendants instructed Astech to breach the contract, and damage

occurred to Boeing. The crux of Defendants' tortious interference argument is that they cannot be

liable because they were justified as a matter of law in instructing Astech to breach the contract.

"Generally . . . interference with contract is justified if it is motivated by a legitimate

business purpose." *Id*. In assessment of a legitimate business purpose, "North Carolina makes a

distinction between defendants who are 'outsiders' and 'non-outsiders' to the contract." *Combs v.*

*City Elec. Supply Co.*, 203 N.C. App. 75, 84, 690 S.E.2d 719,725 (2010). An outsider is "one who

was not a party to the terminated contract and who had no legitimate business interest of his own

in the subject matter thereof." *Smith v. Ford Motor Co.*, 289 N.C. 71, 87, 221 S.E.2d 282, 292

(1976). "Conversely, . . . a non-outsider is one who, though not a party to the terminated contract,

had a legitimate business interest of his own in the subject matter." *Id*. As non-outsiders maintain

a legitimate business interest in the matter, they "often enjoy qualified immunity from liability for

inducing their corporation or other entity to breach its contract." *Bloch v. The Paul Revere Life*

*Ins. Co.*, 143 N.C. App. 228, 240 547 S.E.2d 51, 60 (2001) (citing *Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992)).

At this stage of the litigation, the Court need not determine whether Defendants are an outsider or non-outsider because Boeing has adequately established a claim for tortious interference, regardless of the classification. If Defendants are determined to be outsiders, then they have no legitimate business interest and therefore lack a justification. *See Combs*, 203 N.C. App. at 84, 690 S.E.2d at 725. If Defendants are instead classified as non-outsiders, then their qualified immunity "is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with.'" *Bloch*, 143 N.C. App. at 240, 547 S.E.2d at 60. *Id.* (citations omitted). A non-outsider has not acted in good faith when they have acted maliciously. *Robinson, Bradshaw & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 318, 498 S.E.2d 841, 851 (1998) (citing *Varner v. Bryan*, 113 N.C. App. 697, 701-02, 440 S.E.2d 295, 298 (1994)). In turn, to establish a lack of good faith, a plaintiff must establish that defendant has acted with legal malice. *Id.* "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.* (citations omitted).

Boeing has adequately pled that Defendants acted with legal malice through the fraudulent misrepresentation claim described above. Defendants' inducement of Astech to breach its contract with Boeing, when taking as true the facts as Boeing has alleged them to be, is directly tied to Defendants' alleged fraudulent scheme so it is sufficient to void Defendants qualified immunity as a non-outsider.

In sum, the Court finds that the facts alleged by Boeing in the Amended Complaint are sufficient to allow for a finding of tortious interference.

## D. Unfair and Deceptive Trade Practices

The NC UDTPA "makes unlawful unfair or deceptive acts or practices in or affecting commerce that proximately injures a plaintiff." *Duke Energy Carolina, LLC v. NTE Carolinas II, LLC*, 2022 WL 2293908, at *18 (W.D.N.C. June 24, 2022). For Plaintiff to prevail on its UDTPA claim it must show that "(1) the defendant committed an unfair or deceptive act or practice; (2) the act or practice in question was in or affecting commerce; and (3) the act or practice proximately caused injury to the plaintiff." *Elsayed v. Family Fare LLC*, 2020 WL 4586788 at *14 (M.D.N.C. Aug. 10, 2020). Here, Defendants do not dispute that their actions were allegedly in or affecting commerce or caused injury to Boeing; however, they do contend that Plaintiff's claim under the NC UDTPA fails because such a claim cannot be supported by a mere breach of contract, without necessary aggravating circumstances.

"North Carolina courts have repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UTPA,] N.C.G.S. § 75-1.1'" *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (citations omitted). "North Carolina law requires a showing of 'substantial aggravating circumstances' to support a claim under the UTPA.'" *Id.* (citing *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 418 S.E.2d 694, 700 (1992)). However, a sufficient allegation of fraud constitutes a substantial aggravating circumstance in support of a UDTPA claim. *Jones v. Harrelsson & Smith Contractors, LLC*, 194 N.C. App. 203, 217, 670 S.E.2d 242, 252 (2008), *aff'd*, 363 N.C. 371, 677 S.E.2d 453 (2009) (citations omitted). Here, Boeing has sufficiently pled a claim for fraudulent misrepresentation; therefore the Court finds that Boeing has alleged a viable claim under the NC UDTPA.

15

**E. Civil Conspiracy**

The elements of civil conspiracy are: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 712 S.E.2d 328, 333 (2011).[3] Defendants dispute that a conspiracy amongst themselves is satisfactory to establish an agreement between two or more individuals. Boeing contends that it has established a conspiracy between two distinct individuals.[4] Doc. No. 36 at 23. The Court agrees.

The intra-corporate immunity rule provides that "at least two persons must be present to form a conspiracy, [and therefore] a corporation cannot conspire with itself, just as an individual cannot conspire with himself." *Seguro-Suarez by & through Connette v. Key Risk Ins. Co.*, 261 N.C. App. 200, 218, 819 S.E.2d 741, 754 (2018) (citations omitted). An assertion that a corporation is conspiring with its partners is equivalent to accusing a corporation of conspiring with itself and cannot sustain a claim for civil conspiracy. *Id.* However, "an exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective."

---

[3] At its core "civil conspiracy under North Carolina law is really an action for damages caused by acts in furtherance of the conspiracy and not the conspiracy itself." *Mason v. Health Mgmt. Assocs., LLC*, 421 F. Supp. 3d 237, 248 (W.D.N.C. 2019). While not explicitly argued by Plaintiff, "it is well recognized that courts will . . . 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud." *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). The Court need not address the merits of this issue here, but notes that a finding in favor of piercing the corporate veil may make the contention of distinct parties with respect to civil conspiracy less important.

[4] Boeing also asks the Court to find that intra-corporate immunity does not even apply in this situation, arguing that courts typically do not apply the immunity outside of antitrust and federal civil rights statutes, and it is an affirmative defense that cannot be decided on a motion to dismiss. The Court finds these arguments unpersuasive as the doctrine has been applied generally in North Carolina in these circumstances. *See generally Tate v. Sallie Mae, Inc.*, 2011 WL 3651813 (W.D.N.C. Aug. 19, 2011); *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166 (4th Cir. 2002).

16

*Godfredson v. JBC Legal Grp., P.C.*, 387 F. Supp. 2d 543, 550 (E.D.N.C. 2005) (quoting *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). This independent personal stake may be demonstrated by "a financial stake in the outcome of the alleged conspiracy, separate from and independent of the financial stake in the corporation." *Id*; *see Aboud. ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (holding that the personal stake exception applied to a business owner that had siphoned money out of their own business and personally profited at the business's expense in the process of an elaborate bankruptcy scheme).

Boeing has alleged that Defendants Hahn and Magan used Ten Oaks as a liability shield and not a real company. Specifically, it is alleged that Hahn and Magan kept Ten Oaks' cash in their personal bank accounts, as opposed to Ten Oaks' corporate accounts. While discovery may prove otherwise, the Court finds that the alleged financial structure of Defendants business dealings is enough, at this stage, to plausibly establish the independent personal stake exception and in turn a claim for civil conspiracy.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 29) is **DENIED;** and

2. This case shall proceed to trial on the merits in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.


Signed: June 28, 2023

Kenneth D. Bell
United States District Judge