IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-481-KDB-DCK

| | |
|---|---|
| THE BOEING COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TEN OAKS MANAGEMENT, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on the parties' "Joint Motion For Entry Of Protocol Regarding Disclosure of Electronically Stored Information" (Document No. 60) filed January 9, 2024. Having carefully considered the motion and the record, the undersigned will grant the motion and enter the parties' proposed Order as follows.

## AGREED PROTOCOL REGARDING DISCLOSURE OF ELECTRONICALLY STORED INFORMATION

This Protocol Regarding Disclosure of Electronically Stored Information ("Protocol") governs the disclosure of ESI in this Litigation.

1. This Protocol will help streamline ESI and Document discovery to best carry out the requirements set forth in the Local Rules of Civil Procedure for the United States District Court for the Western District of North Carolina and the Federal Rules of Civil Procedure.

2. The Parties shall take all reasonable steps to comply with the protocols set forth herein. The Parties acknowledge their duty to work together cooperatively throughout the discovery process.

3. Except as specifically limited herein, this Protocol governs the production of discoverable hard-copy documents, electronic documents, and ESI by the Parties during this Action. However, the Parties acknowledge that certain discovery, including the production of documents has already been undertaken by the Parties prior to the negotiation and execution of the Protocol. In the event of transfer to other courts, this Protocol will remain in effect in all respects, until adopted by the transferee court or replaced by a successor Protocol.

4. This Protocol shall not enlarge the proper scope of discovery in this Action, nor imply that discovery produced under the terms of this Protocol is properly discoverable, relevant, or admissible in this or in any other litigation. Additionally, this Protocol does not expand the preservation obligations of the Parties.

5. The Parties agree to abide by the terms of this Protocol in good faith and they agree to promptly alert all other Parties concerning any technical problems associated with complying with this Protocol. To the extent compliance with this Protocol imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue.

6. Consistent with their obligations under the Local Rules of Civil Procedure for the United States District Court for the Western District of North Carolina and the Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

I. **GENERAL PROVISIONS**

7. **Modification**. This Protocol may be modified by agreement of the Parties. If the Parties cannot agree regarding any such modifications, the Parties shall submit their competing proposals and a summary of their dispute to the Court.

8. **Proportionality**. Nothing contained herein is intended to limit a party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

9. **Cost-Shifting**. The Parties agree to bear their own ESI-related discovery costs for any list of custodians and search parameters upon which the Parties initially agree. After the initial extraction of materials is complete, the Parties may request that additional custodians or terms be searched and the Parties will confer as to who bears the costs for any additional searches, taking into consideration, among other things, whether the Party has already performed searches and/or review of ESI. If the Parties cannot agree, either party may request that the Court determine that cost-shifting is warranted due to a party's unwarranted ESI production requests or other failure to comply with the letter and spirit of this Protocol. A party's meaningful compliance with this Protocol and efforts to promote efficiency and reduce costs will be considered in any cost-shifting determination.

10. **Reasonable Efforts**. The Parties will make reasonable efforts to prepare responsive and non-privileged data for production in accordance with the agreed-upon specifications set forth below. These specifications apply to scanned, hard copy documents and/or ESI that are to be produced in this litigation.

11. **Data Not Reasonably Accessible**. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to back up tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

12. **Other Excluded ESI**.  Absent a showing of good cause by the requesting party, the categories of ESI identified in **Schedule A** attached hereto need not be preserved, collected, reviewed, or produced.

13. **Mobile and Handheld Device Documents and Data**.  If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the provisions of this Protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on the mobile or handheld device or otherwise produce the data in a reasonable format.

14. **Other Filtering or Culling Technologies**.  Prior to use by any party, the Parties must meet and confer to disclose and discuss any proposed use of technologies to reduce the number of documents to be reviewed or produced (*i.e.*, TAR, file type culling, etc.).  Use of these technologies to reduce the reviewable collection or production requires the consent of the other party and will be subject to a separate mutually agreeable protocol for the use of such technologies to be negotiated by the Parties.

15. **Privileged Materials**.  A producing party shall create a privilege log of all documents fully withheld from production or redacted on the basis of a privilege or protection, unless otherwise agreed or excepted by this Protocol.  Privilege logs shall be provided in Excel format and identify, to the extent such information is available and reasonably accessible to obtain from the metadata, the following for each responsive document withheld or redacted:

    a.    the name of the document author;

    b.    the names of the document recipients (including all cc and bcc recipients);

      c.      the date the document was created, sent, or received;

      d.      the custodian of the document;

      e.      the type of document (email, spreadsheet, PowerPoint, etc.);

      f.      a brief description of the nature and subject matter of the document, to be populated by email subject, document title, or document filename to the extent available;

      g.      the identity of the lawyer(s) involved in the claim of privilege;

      h.      an indication of whether the document or ESI has been redacted and produced or withheld in its entirety;

      i.      the Bates Number (if applicable) or a unique identification number for each document;

      j.      whether a non-email ESI file was a stand-alone file or an email attachment; and

      k.      the Bates Numbers of all documents within the same family.

16. The privilege log shall indicate for each document the privilege asserted (e.g., attorney client, work product) and sufficient information on the basis for the assertion of the privilege to enable other parties to assess the claim, regardless of whether such information is available from metadata.

17. Should a receiving party be unable to ascertain whether or not a document contained on the log is privileged or have reason to believe a particular entry on the log is responsive and does not reflect privileged information, the receiving party may identify the specific documents at issue in writing to the producing party and request a meet and confer, and the Parties shall meet and confer about such deficiencies. The producing party shall provide

additional information reasonably necessary for the receiving party to determine if the document has been properly withheld or redacted.

18. The Parties are not required to include in privilege logs communications generated after the filing of the complaint exclusively between a producing party (either a defendant or plaintiff) and its outside or in-house counsel, or experts in this litigation, or work product created for or in anticipation of this litigation.

19. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

20. Pursuant to Federal Rule of Evidence 502(d), production of a document or information subject to a claim of attorney-client privilege, work product doctrine, joint defense or common interest privilege, or other applicable privilege or protection, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this litigation or in any other federal or state proceeding or private arbitration proceeding. For example, the mere disclosure of privileged material in this litigation as part of a mass production is not itself a waiver of such privilege or protection in this litigation or in any other federal or state proceeding or private arbitration proceeding, although a receiving party reserves the right to challenge the claim of privilege. The Parties intend this Protocol to provide the maximum protection against waiver of privilege available under Rule 502(d) and to override the analysis set forth under Rule 502(b), subsections (1) through (3).

21. **<u>Redactions</u>**. Documents that contain both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document and the reason therefore (*e.g.*, *"Redacted – Privileged" or equivalent*). Subject to Paragraphs 15 through 20, documents or portions thereof

withheld on privilege grounds will be identified in a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5). Additionally, portions of documents redacted on privilege grounds need not be identified in a privilege log as long as sufficient information remains on the face of the document to provide the opposing party with the type of information that would otherwise be included in a privilege log entry. For redacted documents the Producing Party will provide only the following metadata: BegBates; EndBates; BegAttach; EndAttach; Confidentiality; and Custodian.

22. **English Language**. To the extent any data exists in more than one language, the data shall be produced in English, if available. If no English version of a document is available, the producing party does not have an obligation to produce an English translation of a document.

23. **Production Media.** The producing party may produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media including: CD-ROM; DVD; or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted prior to production and the producing party will provide a decryption key to the receiving party in a communication separate from the production itself.

## II. PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

24. **File Format**. Documents will be produced in single-page TIFF/JPEG image format plus compiled .pdf format. For files not produced in their native format, if an original document contains color, the producing party shall produce color image(s) for each such document when color is necessary to make meaningful use of a document. Load files shall be provided to indicate the location and unitization of the TIFF/JPEG files and/or .pdf files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Spreadsheets (e.g., .xls, .xlt, .csv), PowerPoints (e.g., .ppt, .pptx, .pptm), and media files (e.g., .wav, .mp3., .avi., .mov) will be

produced in their native format. To the extent practicable, comments and tracked changes in Microsoft Office documents (Word, Excel and PowerPoint) shall be preserved and produced, regardless of whether the document is produced in TIFF/JPEG format, .pdf, or native format. If any other particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

25. **Text-Searchability**. Each party has an obligation to make its production text searchable unless doing so would be impractical or for other good cause. If a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party. For each document that has been converted to TIFF/JPEG format and made text-searchable via Optical Character Recognition technology ("OCR") the full text of each electronic document shall be extracted and produced in a text file. The extracted text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) or other agreeable format, and each text file should bear the name of the beginning page of each document. To the extent practicable, text from native files should be extracted directly from the native file, except that, where redaction is necessary for a document to be produced in native format, the text file corresponding to such document may be extracted from the OCR of the redacted image file.

26. **Bates Numbers and Confidentiality Designations**. Each document image file shall be named with a unique, sequential number ("Bates Number"). Confidentiality designations shall be placed on each page in the production, in accordance with a Protective Order entered by the Court or otherwise conspicuously designated by the Parties. For a document produced in its

native format, the Bates Number and confidentiality designation shall be included in the file name of the document, and a slip sheet with a unique Bates Number shall be produced indicating that the file has been produced in native format. Such documents should also be produced in accordance with the Protective Order.

27. **De-duplication**. The producing party shall de-duplicate across the entire population of records (i.e. global de-duplication) such that only one copy of any responsive, non-privileged document is produced, provided that the de-duplication process is performed by an e-discovery vendor or otherwise in a manner consistent with standard practices in the industry. De-duplication shall be performed only at the document family level such that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa. When a party applies document de-duplication, that party shall include in its production "Other Custodian" metadata or some other field, to the extent practicable, indicating each custodian who appears from the available ESI to have maintained a copy of the produced document in his or her files (where such copy was removed from production through the de-duplication process), as well as, to the extent practicable, "All File Paths" metadata or the like indicating for each custodian maintaining a copy of the document, the file path from which the document was collected, if the file path is reasonably available.

28. **Email Threading**. Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the party's electronic document collection. A most-inclusive email is one that contains unique content and all of the lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting. Accordingly, each party

may produce only inclusive email threads from each and every email branch, provided that all email attachments are produced as well.

29. **De-NISTing**. ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

30. **Zero-byte Files**. The Parties shall filter out files identified as zero bytes in size and any logo files.

31. **Hard-Copy Documents**. Unless requests call for the production of hard copy documents that are difficult to convert, or for legibility or clarity purposes, are better rendered in hard copy format, subject to the Parties' duty to meet and confer about any disputes, the Parties shall convert hard copy documents to an electronic format for production. The production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using OCR and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension). To the extent available, the following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CONFIDENTIALITY, and (f) CUSTODIAN.

32. **Metadata Fields**. For all ESI or scanned hard-copy documents produced, the Parties shall produce the metadata fields listed in **Schedule B**, to the extent available. However,

the Parties are not obligated to include metadata for any document that does not contain such metadata in the in the ordinary course of business or are automatically created in the processing of the documents.

33. **Parent-Child Relationships**.  Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business must be reasonably preserved by the Parties.  For example, if a party is producing an email that has attachments, to the extent practicable, the attachments shall be processed in order behind the email.  Parent/child relationships shall be maintained using the BEGATTACH and ENDATTACH metadata fields.

34. **Proprietary Files**.  To the extent a response to discovery requires production of ESI accessible only through proprietary or licensed software, including but not limited to accounting records, testing or development records, or a quotation database, the Parties shall confer and agree on a report containing information or the retrieval of relevant specific documents relevant to the request.  The Parties should continue to preserve the information associated with such databases unless the failure to preserve has been disclosed and agreed upon between the Parties.  Similarly, to the extent that decryption or access passwords are necessary to unlock any data in its native format, including but not limited to email passwords and file decryption passwords, the Parties shall meet and confer to develop appropriate steps to allow access to the data without compromising confidentiality, security, or proprietary interests.  The Parties shall meet and confer to finalize the appropriate production format for proprietary files.

35. **Databases, Structured, Aggregated, or Application Data**.  The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application.

The Parties will cooperate in the exchange of information concerning such databases and data sources to facilitate discussions on productions and production format.

36. **Lost, Destroyed, or Irretrievable ESI**. If a party learns that a unique source of responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI and whether any backup or copy of such original responsive ESI exists.

### III. PROCESSING OF THIRD-PARTY DOCUMENTS

37. **Subpoena**. A party that issues a non-party subpoena ("Issuing Party") may include a copy of this Protocol and any agreed Protective Order with the subpoena and state that the Parties to the litigation urge that third parties produce documents in accordance with the specifications set forth herein. However, nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena. If the subpoenaed party produces documents only to the Issuing Party or produces in a format not in accordance with the specifications of this Protocol, the Issuing Party must provide exact copies to the other Parties in a format from which they can reasonably access the documents within ten (10) business days of receipt.

38. **Third-Party Production Not Bates-Stamped**. If the non-party production is not Bates-stamped, the Issuing Party, to the extent practicable, will endorse the non-party production with unique prefixes and Bates numbers and provide them to the opposing party within ten (10) business days of receipt.

### IV. REQUIRED SEARCHES

39.     During the discovery period of this Action, the Parties shall negotiate in good faith to identify and agree on appropriate custodians, search terms and timeframe(s) likely to yield a reasonable number of relevant, responsive, non-privileged communications proportional to the needs of the case.  During such negotiations and as necessary, the Parties shall exchange hit counts for proposed search terms and, using this information, work to promote efficiency and avoid undue burden.  The Parties shall confer on a process to test the efficacy of the search terms and mutually agree on an appropriate number of search terms applying to each side.  The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

40.     However, the Parties recognize that, despite their best efforts to agree on narrowly-tailored search terms, it may be difficult to determine in advance how many documents will be "hit" by a particular set of search terms until after the email searches are performed. In the event that the producing party discovers that a search term or terms would result in a number of documents for review that would present an excessive or undue burden, the Parties are to meet and confer in good faith to determine whether additional modifications to those search terms (e.g., the addition of narrowing search criteria such as "and" and "but not") can be made.  For the avoidance

of doubt, where the narrowing criteria include disjunctive combinations, such disjunctive terms shall not constitute separate search terms.

41. Nothing in this Protocol prevents the Parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

**SO ORDERED**.

Signed: January 11, 2024

David C. Keesler
United States Magistrate Judge

# SCHEDULE A

1. Deleted, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as lastopened dates.

5. Data maintained in a party's normal or allowed backup processes, including but not limited to back up tapes, disks, SAN, and other forms of media."

6. Voice messages saved on a mobile device, voice messaging server, or otherwise.

10. Social media accounts, applications or sites.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

## SCHEDULE B: METADATA FIELDS

Load file names, field names, folder names may be different than what has been specified below so long as substantially the same information is provided, and a cross reference sheet of the names are provided and available upon request.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN/SOURCE | Includes the Individual (Custodian) or Non-Custodial Source from whom/which the documents originated |
| ALL CUSTODIAN (or GLOBALSOURCE) | A semi-colon delimited list of all Custodians and Non-Custodial Sources in possession of a document (i.e., all Individual(s)/sources from whom/which documents were de-duplicated out (De-Duped Custodian)) |
| SUBJECT | Subject from properties of document |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent (in EST; format: HH:MM:SS) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| EMAIL SUBJECT | From email subject line |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| MD5HASH | MD5 hash value of the file |
| FILEPATH | Original file path showing where the document was stored. For email this should be the email folder path (e.g., johndoe.pst\Inbox\). For lose files, this should be the path to the file (e.g., Johndoe\Desktop\My Documents\) |
| ALLFILEPATH | Path to duplicate maintained by other Custodians/Sources |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| TIMEMOD | Time an electronic document was last modified (in EST; format: HH:MM:SS) (Edoc or attachment) |

| | |
|---|---|
| DATECREATED | Date an electronic document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| TIMECREATED | Time an electronic document was created (in EST; format: HH:MM:SS) (Edoc or attachment) |
| FILETYPE | The document file type (e.g., MS Word, Excel, PDF) |
| DOCTEXT | File extension for email or Edoc (e.g., .doc) |
| TEXTLINK | Searchable Text File Link |
| NATIVELINK | Native File Link (Native Files only) |
| CONFIDENTIALITY | The confidentiality designation (if any) pursuant to the Protective Order |
| REDACTED | For documents containing redactions (format: Y/N) |