# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| THE BOEING COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TEN OAKS MANAGEMENT, LLC, et al.<br><br>Defendants<br>_____<br><br>TEN OAKS MANAGEMENT, LLC, and DAVID RICHESON,<br><br>Counter-Claimants<br><br>AEP LEGACY HOLDINGS, LLC,<br><br>Third-Party Plaintiff<br><br>v.<br><br>THE BOEING COMPANY,<br><br>Counter-Defendant, and<br><br>BARBARA ZETTERBERG, CORY GIONET, and RODNEY ARMSTRONG,<br><br>Third-Party Defendants. | **Civil Action No. 22 CV 481-KDB-DCK**<br><br>**MEMORANDUM OF LAW<br>IN SUPPORT OF<br>MOTION TO DISMISS<br>THE COUNTERCLAIM AND<br>THIRD-PARTY COMPLAINT** |

# TABLE OF CONTENTS

**Page**

Preliminary Statement................................................................................................ 1

Factual Background .................................................................................................... 5

Legal Standards.......................................................................................................... 8

Argument ................................................................................................................... 8

I.      Counterclaimants Do Not Have Standing To Assert The Counterclaims......................... 8

II.     The Counterclaims Do Not Plead Fraudulent Misrepresentations. ................................ 11

       A.      The Affirmative Misrepresentation Claims Do Not Plead Materiality, Falsity, Scienter, Or Reasonable Reliance. ........................................................ 11

              1.      The Counterclaims Do Not Plead An Actionable False Statement Of Material Fact. ........................................................................................ 12

              2.      The Counterclaims Do Not Plead Falsity or Scienter............................. 13

              3.      The Counterclaims Do Not Plead Reliance. ............................................ 17

       B.      The Omission Claims Do Not Plead A Duty To Disclose Or Reasonable Reliance, And Are Not Pleaded With Particularity. ............................................ 18

              1.      The Counterclaims Do Not Plead A Duty To Disclose. .......................... 19

              2.      The Counterclaims Do Not Plead Reasonable Reliance.......................... 21

              3.      The Omission Claims Are Not Pleaded With Particularity. .................... 22

III.    The Counterclaims Do Not Plead Negligent Misrepresentations. .................................. 23

IV.     The Counterclaims Do Not Plead Unfair And Deceptive Trade Practices....................... 24

Conclusion ................................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbington SPE, LLC v. US Bank, Nat'l Ass'n*,
352 F. Supp. 3d 508 (E.D.N.C. 2016)......................................................................................24

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
917 F.3d 206 (4th Cir. 2019) ...................................................................................................8

*Arku v. Wells Fargo Bank, N.A.*,
621 F. Supp. 3d 602 (W.D.N.C. Aug. 15, 2022) .....................................................................8

*Ashcroft v. Iqbal*,
557 U.S. 662 (2009).................................................................................................................8

*In re Astech Engineered Products, Inc.*,
No. 22-10635 (Bankr. D. Del.) ...........................................................................5, 8, 9, 10, 15

*Atkinson v. Omtron USA, LLC*,
2012 WL 12887700 (M.D.N.C. May 30, 2012) .............................................................13, 25

*Bank of Am. v. Lykes*,
2010 WL 2640454 (W.D.N.C. May 20, 2010) ......................................................................23

*Big Red, LLC v. Davines*,
31 F. App'x 216 (4th Cir. 2002) ............................................................................................21

*Boeing Co. v. Ten Oaks Mgmt., LLC*,
2023 WL 4241679 (W.D.N.C. June 28, 2023) ......................................11, 12, 13, 14, 16, 17

*Breeden v. Richmond Cmty. Coll.*,
171 F.R.D. 189 (M.D.N.C. 1997) ...............................................................................19, 20, 22

*Brookfield Asset Mgmt., Inc. v. Rosson*,
261 A.3d 1251 (Del. 2021) ......................................................................................................9

*Carty v. Westport Homes of N.C., Inc.*,
472 F. App'x 255 (4th Cir. 2012) ..........................................................................................18

*Comput. Decisions, Inc. v. Rouse Off. Mgmt. of N.C., Inc.*,
477 S.E.2d 262 (N.C. Ct. App. 1996)....................................................................................21

*Cross v. Ciox Health*,
438 F. Supp. 3d 572 (E.D.N.C. 2020).....................................................................................24

*Devlin v. Wells Fargo Bank, N.A.*,
  2014 WL 1155415 (W.D.N.C. Mar. 21, 2014)................................................................25

*Eli Research, Inc. v. United Comm'cns Grp., LLC*,
  312 F. Supp. 2d 748 (M.D.N.C. 2004) ........................................................................23

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
  194 F.3d 505 (4th Cir. 1999) ...............................................................................11, 17

*Gen. Tech. Applications, Inc. v. Exro Ltda*,
  388 F.3d 114 (4th Cir. 2004) .................................................................................9, 10

*Glob. Hookah Distribs., Inc. v. Avior, Inc.*,
  401 F. Supp. 3d 653 (W.D.N.C. 2019) ...........................................................12, 13, 14

*Higgins v. Synergy Coverage Sols., LLC*,
  2020 WL 256486 (N.C. Super. Ct. Jan. 15, 2020).......................................................17

*Hudson-Cole Dev. Corp. v. Beemer*,
  511 S.E.2d 309 (N.C. Ct. App. 1999) .........................................................................22

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  906 A.2d 808 (Del. Ch. 2005)...............................................................................9, 10

*Jenkins v. AKZO Noble Coatings, Inc.*,
  35 F. App'x 79 (4th Cir. 2002) ..................................................................................14

*Jordan v. Earthgrains Cos., Inc.*,
  155 N.C. App. 762 (2003) .........................................................................................24

*Jui-Yang Hong v. Extreme Networks, Inc.*,
  2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .............................................................13

*Krispy Kreme Doughnut Corp. v. Advantage Grp. Enter., Inc.*,
  2008 WL 5216227 (M.D.N.C. Dec. 11, 2008) .......................................................14, 15

*Liris S.A. v. Morris & Assocs., Inc.*,
  496 F. Supp. 3d 931 (E.D.N.C. 2020).........................................................................25

*Macregen, Inc. v. Burnette*,
  2021 WL 2682050 (M.D.N.C. June 30, 2021) .............................................................14

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
  710 F.3d 551 (4th Cir. 2013) ......................................................................................8

*Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*,
  2023 WL 6931787 (W.D.N.C. Oct. 19, 2023)........................................................17, 24

*N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.*,
  740 F. Supp. 2d 694 (M.D.N.C. 2010) ..................................................................................14

*Nadendla v. WakeMed*,
  24 F.4th 299 (4th Cir. 2022) .................................................................................................10

*Packrite, LLC v. Graphic Packaging Int'l LLC*,
  2020 WL 7060395 (M.D.N.C. Dec. 2, 2020) ...................................................................11, 21

*Parker Excavating, Inc. v. Highlands at Collowhee, LLC*,
  2021 WL 1176771 (W.D.N.C. Mar. 29, 2021).......................................................................20

*Parker v. Case Farms, LLC*,
  2020 WL 5377301 (W.D.N.C. July 29, 2020).......................................................................15

*Quidore v. Alliance Plastics, LLC*,
  2020 WL 7082566 (N.C. Super. Ct. Dec. 3, 2020)................................................................21

*Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*,
  989 F. Supp. 2d 471 (E.D.N.C. 2013)..............................................................................20, 21

*Raycap Asset Holdings LTD v. Gora LLC*,
  2023 WL 5493595 (W.D.N.C. Aug. 24, 2023).......................................................................17

*Rountree v. Chowan Cnty.*,
  796 S.E.2d 827 (N.C. Ct. App. 2017) ..............................................................................22, 24

*Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*,
  976 F.2d 58 (1st Cir. 1992)...................................................................................................13

*Six v. Generations Fed. Credit Union*,
  891 F.3d 508 (4th Cir. 2018) ..................................................................................................2

*Solum v. CertainTeed Corp.*,
  2015 WL 6505195 (E.D.N.C. Oct. 27, 2015) .......................................................................18

*Spivey v. Smith*,
  2023 WL 6060885 (N.C. Super. Ct. Sept. 18, 2023).................................................12, 13, 20

*Sullivan v. Mebane Packaging Grp., Inc.*,
  581 S.E.2d 452 (N.C. Ct. App. 2003)....................................................................................21

*Tooley v. Donaldson, Lufkin & Jennette, Inc.*,
  845 A.2d 1031 (Del. 2004) ......................................................................................................9

*U.S. Med Supplies, LLC v. Rakaa Med. Co. Ltd.*,
  2023 WL 5424762 (E.D.N.C. July 24, 2023) ........................................................................22

*Walker v. Fleetwood Homes of N.C., Inc.*,
　653 S.E.2d 393 (N.C. 2007)........................................................................................................24

*Williams v. United Cmty. Bank*,
　218 N.C. App. 361 (2012) ..........................................................................................................18

*Worley Claims Servs., LLC v. Jefferies*,
　429 F. Supp. 3d 146 (W.D.N.C. 2019) ........................................................................................9

**Statutes**

N.C.G.S. § 75–1.1 ........................................................................................................................24

**Other Authorities**

Fed. R. Civ. P. 8 ......................................................................................................................8, 11

Fed. R. Civ. P. 9(b) .........................................................................................3, 8, 11, 22, 24

v

Plaintiff and Counter-Defendant The Boeing Company ("Boeing") and the Boeing employees that have been named as Third-Party Defendants, Barbara Zetterberg, Cory Gionet, and Rodney Armstrong  (collectively, "the Boeing Parties"), respectfully submit this memorandum of law in support of their motion to dismiss (the "Motion") the Counterclaim and Third-Party Complaint (the "Counterclaims") brought by Defendants Ten Oaks Management, LLC ("Ten Oaks") and David Richeson ("Richeson"), and Third-Party Plaintiff AEP Legacy Holdings ("AEP Holdings," and together with Ten Oaks and Richeson, "Counterclaimants").

## **<u>Preliminary Statement</u>**[1]

The Counterclaims are a transparent attempt to harass Boeing (and three of its employees) and to manufacture leverage after Boeing prevailed on Ten Oaks' motion to dismiss Boeing's well-pleaded complaint. The Counterclaims assert that—*after* Counterclaimants had conducted months of due diligence into "the Astech Business," and *after* the Astech Buyer (a separate legal entity owned by Counterclaimant AEP Holdings) had already entered into a written agreement to purchase the Astech Business—the Boeing Parties made, and Counterclaimants relied on, a handful of alleged misstatements during a single meeting. And the Counterclaims simultaneously allege both that the Boeing Parties made those misstatements to keep a supplier operating, and that Boeing then immediately tried to shutter the same supplier. These implausible Counterclaims have no basis in law or fact, and should be dismissed in their entirety.

Counterclaimant Ten Oaks, an investment group based in North Carolina, acquired from GKN Aerospace Chem-Tronics Inc. ("GKN") an aerospace supplier ("Astech") through holding company AEP Holdings and its subsidiary, non-party ("Astech Buyer"). Astech supplied parts to

---

[1] Unless otherwise noted, all citations to paragraph numbers (¶) refer to the Counterclaims. For all quotations, emphasis is in the original and citations and quotation marks are omitted.

1

Boeing, among other companies. Boeing had a contractual right to consent to any assignment of its supply agreement with Astech. Boeing initiated this litigation because Defendants committed fraud to obtain Boeing's consent to the assignment of the Astech supply contract from GKN to Astech Buyer. Eighteen months after this case began, Counterclaimants now purport to have suddenly "learned" that *they* were allegedly defrauded. Counterclaimants' convoluted and implausible story can be summarized as follows.

Beginning in August 2021, Counterclaimants allegedly conducted months of due diligence on Astech. ¶ 46. In December 2021, Counterclaimants caused Astech Buyer—a separate legal entity—to execute an asset purchase agreement (the "APA"), pursuant to which Astech Buyer agreed to acquire Astech from GKN.[2] ¶ 15, n.1; *see also* Answer To Second Amended Complaint, ECF No. 66 ("Answer") ¶ 37. Boeing is not a party to the APA. Indeed, the Counterclaims do not allege that Boeing had any contact with Counterclaimants before Astech Buyer and GKN executed the APA. Then, two months *after* Astech Buyer had agreed to buy Astech, Boeing allegedly made a few generic statements to Counterclaimants, offering to "work with," "contribute to," or "commit to" Astech in the future. Boeing's vague promises supposedly induced Counterclaimants to proceed with the transaction Astech Buyer had *already* contractually agreed to under the APA. The Counterclaims theorize that Boeing made those alleged promises because it wanted to ensure a continued supply of airplane parts pursuant to its contract with Astech. Then—in direct contradiction of that supposed motive—immediately after consenting to the assignment, Boeing

---

[2] The alleged misrepresentations here purportedly caused the Astech Buyer to acquire Astech pursuant to the APA. As a result, the Court may properly consider the APA on this motion to dismiss, and the Boeing Parties would be pleased to file a copy if it would aid the Court's review. *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) ("It is well established that a court may consider documents ... attached to the motion to dismiss, so long as they are integral to the complaint and authentic").

2

allegedly switched gears and forced Astech Buyer into bankruptcy, threatening the very supply that Boeing had allegedly been trying to protect.

The Court should reject this facially implausible story and dismiss the Counterclaims in their entirety for multiple independent reasons. *First*, Counterclaimants lack standing. Counterclaimants assert derivative claims that belong to Astech Buyer, not them. If any entity overpaid for Astech and suffered a corresponding investment loss, it was Astech Buyer—not the Counterclaimants, who are merely Astech Buyer stockholders.

*Second*, the alleged affirmative misrepresentations—for example, that Boeing would "work with" Counterclaimants—are far too vague and indefinite to state a misrepresentation claim as a matter of law.

*Third*, the Counterclaims do not plead falsity or scienter with the particularity required under Rule 9(b). For promissory fraud claims, a plaintiff must allege that the promisor did not intend to comply with the promise when it was made. Here, the Counterclaims nowhere allege specific facts sufficient to support an inference that the Boeing Parties did not intend to follow through on their purported, vague commitments when they were made. In fact, Counterclaimants' allegation that Boeing sought to preserve its Astech supply more plausibly suggests that the Boeing Parties *did* intend to reasonably "work with" Astech Buyer to ensure Astech's continued operation.

*Fourth*, the Counterclaims not only fail to plausibly plead reliance, the allegations affirmatively foreclose it. In December 2021, Astech Buyer contractually agreed to acquire Astech under the APA. ¶ 15, n.1; Answer ¶ 37. The alleged misrepresentations came more than two months later, in February 2022. ¶ 47. As a matter of law and fact, Counterclaimants could not have relied on supposed promises in February 2022, because Astech Buyer had already executed the APA. To the extent Counterclaimants argue they relied on the supposed promises when they later

3

closed the acquisition, and that the acquisition would not have closed but for those promises, that theory is also baseless. The Counterclaims nowhere allege that Astech Buyer would have been excused from performance under the APA (*i.e.*, that Astech Buyer could have walked away from the acquisition) had the Boeing Parties not made the alleged promises. Further, even if Astech Buyer had an option to back out of the deal—which the Counterclaims do not allege—the Counterclaims point to no decision *Counterclaimants* could have reasonably made based on the alleged misrepresentations. Astech Buyer, not Counterclaimants, acquired Astech.

*Fifth*, Counterclaimants' omission theories fail for the same reasons, and for an additional, independent reason: the Counterclaims do not allege that the Boeing Parties had a duty to disclose the allegedly omitted information to Counterclaimants. The Counterclaims do not and cannot allege that the parties' alleged discussions created a fiduciary relationship or any other special relationship giving rise to a duty to disclose. Indeed, Counterclaimants and Boeing were not even counterparties in a negotiation or a contract. Their only relationship was in the context of commercial discussions by which Boeing was obtaining information *from* Counterclaimants so that Boeing could decide whether to consent to the Astech contract assignment (an assignment to the Astech Buyer, not Counterclaimants). The law did not impose on the Boeing Parties a duty to volunteer information to Counterclaimants in this context. Further, the omission claims are not pled with the requisite particularity.

*Finally*, the Counterclaims also fail to allege *reasonable* reliance on the alleged omissions. The Counterclaims do not plead any reason that Counterclaimants could not have obtained the allegedly omitted information from GKN, which forecloses reasonable reliance. GKN—Astech Buyer's actual counterparty—controlled the information in question, not Boeing.

The Court should dismiss the Counterclaims with prejudice.

**Factual Background**

Boeing is a long-time Astech customer. Astech supplies exhaust kits and parts for Boeing's 747 and 767-Tanker. ¶ 9. Boeing and GKN entered a contract for the sale of the kits and parts to Boeing effective January 1, 2013 through December 31, 2028, with pricing set in advance for each year (the "Supply Contract"). ¶ 30. According to Counterclaimants, the Supply Contract turned out to be favorable for Boeing and caused GKN large losses. ¶¶ 10, 31-36. Both Boeing and GKN were aware of the advantages to Boeing and disadvantages to GKN. ¶ 38. Counterclaimants admit that they, too, "were aware of the distressed financial performance of the Astech Business." ¶ 13. Indeed, Counterclaimants wanted to acquire Astech because of "their expertise acquiring corporate divestitures and working with distressed companies." ¶ 45. The Counterclaims allege "upon information and belief" that GKN "repeatedly" asked Boeing to agree to prices in excess of the established contract prices for the kits and parts. ¶¶ 11, 40-42. When Boeing declined, GKN allegedly threatened to shut down Astech. *Id*. In 2021, Boeing allegedly prepared for a possible Astech shutdown, including engaging in discussions with alternate suppliers. ¶¶ 11, 40-41, 43-44.

In August 2021, Ten Oaks began conducting due diligence on Astech after learning that aerospace conglomerate GKN was interested in selling the business. ¶¶ 21, 45-46. According to the Counterclaims, the diligence spanned more than eight months, into March 2022. ¶ 46. On December 2, 2021, GKN and Astech Buyer (an AEP Holdings subsidiary) executed the Asset Purchase Agreement ("APA"). Answer ¶ 37.[3] Under the APA, Astech Buyer "agreed to purchase certain assets and assume certain liabilities of the Astech Business from [non-party] GKN." *Id.* (hereinafter, the "Acquisition"). Boeing is not a party to the APA. While the Counterclaims allege

---

[3] Astech Buyer explained that it acquired Astech in the proposed plan of liquidation filed in bankruptcy court. "Amended Subchapter V Plan" § 2.2, *In re Astech Engineered Products, Inc.*, No. 22-10635, ECF No. 513 (Bankr. D. Del. Aug. 4, 2023) (*Astech Buyer Bankruptcy*").

5

that the APA was subject to certain conditions (¶ 15 n.1),  Counterclaimants do not allege that any of the conditions to Astech Buyer's contractual obligation to the Acquisition were not satisfied.

On February 10, 2022, Boeing, Ten Oaks and GKN representatives met as Boeing was considering whether to execute the consent to assign ("CTA") the Supply Contract from GKN to Astech Buyer (the "February Meeting").[4] ¶ 47. While the CTA was a condition to closing the Acquisition—thus motivating Astech Buyer to convince Boeing that it would benefit from the Acquisition—the APA did not condition the Acquisition on the Astech Buyer securing any commitments, financial or otherwise, from Boeing. The February Meeting is the only date on which the Counterclaims describe any communications between Counterclaimants and Boeing. Significantly, the Counterclaimants do not and cannot allege that they communicated with Boeing about Astech until *after* the APA had been executed, or that Boeing was even aware of the Acquisition until *after* the APA had been executed.

At the February Meeting, Boeing representatives Zetterberg and Armstrong allegedly made false or misleading promises about Boeing somehow "working with" Counterclaimants on unspecified "financial support" and making unspecified "contribut[ions] to the costs" of unspecified capital investments. ¶ 47(a)-(b). Aside from these alleged affirmative statements, "Boeing"—through unspecified representatives—allegedly "affirmed its commitment" to Astech, ¶ 47(c), and allegedly omitted that: GKN had earlier threatened to close the Astech plant (¶ 47(d)), Boeing had repeatedly rejected GKN's requested price increases (¶ 47(e)), and Boeing was in discussions with alternative suppliers due to Astech's potential closure (¶ 47(f)). Finally, Gionet allegedly omitted that Astech's equipment was in disrepair and difficult to replace. ¶ 47(g).

---

[4] The alleged misrepresentations arose in the course of Counterclaimants' efforts to induce Boeing to execute the CTA. The Court may properly consider the CTA on this Motion, and the Boeing Parties would be pleased to file a copy if it would aid the Court's review.  *See* note 2, *supra*.

The Counterclaims assert that, after several months of due diligence into Astech's business and despite Astech Buyer's preexisting contractual agreement to acquire Astech, Counterclaimants relied on the above purported misrepresentations and omissions at the February Meeting in taking various "affirmative steps" to cause Astech Buyer to acquire Astech, hire personnel, and "expend[] significant resources in due diligence and … transaction costs in researching, pursuing, and executing" the Acquisition. ¶ 51. At some unspecified time "shortly" after the Acquisition closed on March 11, 2022, Counterclaimants allegedly "learned" that Astech was much more troubled than they knew before closing, ¶¶ 52-53, even though they claim they conducted eight months of due diligence and admit that they were "aware of the distressed financial performance of [Astech]." ¶¶ 13, 46. Counterclaimants also allegedly learned that the Boeing Parties' statements at the February Meeting were "false," and that they had allegedly omitted material facts. ¶ 54.

Richeson and Lovrovich then met with Boeing and asked it "to make reasonable modifications to the Supply Contract and/or provide other financial support." ¶ 55. As Counterclaimants' story goes, Boeing—now that it had persuaded Astech Buyer to acquire Astech to ensure Boeing's production supply—refused these requests "and forced the Astech Business into bankruptcy." ¶¶ 55-57. Counterclaimants do not allege that they asked Boeing for any specific form of "financial support." Instead, they simply assert that, when Boeing did not provide "financial support," Astech had "no choice but to file for bankruptcy." ¶ 56.

In September 2022, Astech rejected the Supply Contract in its bankruptcy proceeding.[5] On September 14, 2022, Boeing filed this action. ECF No. 1. On June 28, 2023, the Court denied in its entirety Defendants' motion to dismiss Boeing's First Amended Complaint. ECF No. 42. On

---

[5] *Astech Buyer Bankruptcy*, Motion of the Debtor For Authority to Reject Executory Contracts, ECF No. 99 (Aug. 17, 2022) and Order Approving Motion To Reject Executory Contracts, ECF No. 139 (Sept. 8, 2022).

7

February 16, 2024, Defendants and Counterclaimants filed their Answer to Second Amended Complaint, Affirmative Defenses, Counterclaim, and Third-Party Complaint. ECF No. 66.

<u>**Legal Standards**</u>

"To meet the Rule 8 standard and survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *ACA Fin. Guar. Corp. v. City of Buena Vista,* 917 F.3d 206, 212 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal,* 557 U.S. 662, 678 (2009)). Under Rule 9(b), a claim for fraud—and, in North Carolina, a claim for negligent misrepresentation—"must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Arku v. Wells Fargo Bank, N.A.,* 621 F. Supp. 3d 602, 609 (W.D.N.C. Aug. 15, 2022). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.,* 710 F.3d 551, 559 (4th Cir. 2013).

<u>**Argument**</u>

**I.**      <u>**Counterclaimants Do Not Have Standing To Assert The Counterclaims.**</u>

The Counterclaims fail for the simple reason that Counterclaimants lack standing to assert them. The claims alleged belong to Astech Buyer, not Counterclaimants. Accordingly, Counterclaimants lack standing to assert Counts I through III, and this Court lacks subject matter jurisdiction over the Counterclaims. *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118-119 (4th Cir. 2004) (defendant was without standing to pursue derivative counterclaims).

A party's claims are derivative when the company suffered the alleged harm and the company would receive the benefit of any remedy. *Brookfield Asset Mgmt., Inc. v. Rosson*, 261

8

A.3d 1251, 1263 (Del. 2021).[6] To plead a direct claim, a stockholder must be able to show it can prevail "without showing an injury to the corporation." *Id*. at 1266 (quoting *Tooley v. Donaldson, Lufkin & Jennette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)).

Here, Counterclaimants predicate all of their claims on the assertion that they were induced by the Boeing Parties' purported misrepresentations, omissions, and deceptive acts "to purchase the Astech Business and to assume the Boeing Supply Contract." ¶¶ 73, 83. But Counterclaimants did not acquire Astech and assume the Boeing Supply Contract; Astech Buyer did. ¶ 15 n.1; Answer ¶ 2. Any alleged injury was therefore to Astech Buyer. To the extent Counterclaimants allege that they suffered an injury, they did so solely as Astech Buyer investors and as a result of Astech Buyer's alleged injury. Delaware law squarely forecloses investors from directly pursuing derivative claims like these. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006).

The *J.P. Morgan* court confronted similar allegations. There, J.P. Morgan Chase's stockholders alleged the bank overpaid to acquire Bank One, harming the stockholders by diluting the value of their shares. *Id*. at 818. The court held that the stockholders' claim was derivative, because the company suffered the impact of the alleged overpayment. *Id.* Any harm to shareholders came only as a consequence of the harm to the company. *Id.* So too, here. The Counterclaimants are all Astech Buyer investors.[7] Any alleged injury to them is a result of the alleged harm to Astech

---

[6] The law of the state in which the entity at issue is organized governs. *See, e.g.*, *Exro*, 388 F.3d at 118 (applying Virginia law to derivative claims where LLC was organized in Virginia); *see also Worley Claims Servs., LLC v. Jefferies*, 429 F. Supp. 3d 146, 159 (W.D.N.C. 2019) (under internal affairs doctrine, North Carolina courts apply "the law of the state of incorporation" to interpret issues of corporate law). Here, Delaware law governs. *See Astech Buyer Bankruptcy*, ECF No. 513 ("Amended Subchapter V Plan") (Astech Buyer is a Delaware corporation).

[7] Astech Holdings wholly owns Astech Buyer (Amended Subchapter V Plan, § 2.4, *Astech Buyer Bankruptcy*, ECF No. 513), and Ten Oaks and Richeson are members of Astech Holdings. ¶ 23.

9

Buyer, and the resulting diminution in the value of their investments in Astech Buyer. Thus, the Counterclaims are derivative in nature.

*Exro* is also instructive. In that case, the Fourth Circuit considered whether a defendant could directly assert counterclaims to enforce rights under a patent license owned by a Virginia LLC in which the defendant was a shareholder. 388 F.3d at 118-120. The court held that the defendant lacked standing to assert the counterclaims because it sought to enforce the LLC's rights, not its own. *Id*. Counterclaimants lack standing for the same reason: the Counterclaims belong to the company whose rights are being asserted (Astech Buyer).

The Counterclaims' conclusory allegations that Counterclaimants incurred due diligence and other transaction costs does not affect the analysis. ¶¶ 20, 65. Counterclaimants do not, and cannot, allege that any due diligence costs incurred before February 10, 2022 were caused by any statement the Boeing Parties allegedly made. Further, Counterclaimants do not allege any specific costs they incurred after February 10, 2022 in reliance on any statement by the Boeing Parties. Nor do Counterclaimants allege that they actually contributed any money to Astech or explain how they, as opposed to Astech Buyer, could have reasonably incurred Astech-related costs. Again, Astech Buyer, not Counterclaimants, acquired Astech. The Court thus may disregard Counterclaimants' conclusory allegations of harm. *Nadendla v. WakeMed*, 24 F.4th 299, 305-306 (4th Cir. 2022) (affirming dismissal of claim based on conclusory allegations of, among other things, causation and damages).

Counterclaimants lack standing to assert claims based on alleged injuries to a separate corporate entity: Astech Buyer. The Court should dismiss the Counterclaims in their entirety on this basis alone.

10

**II.** **The Counterclaims Do Not Plead Fraudulent Misrepresentations.**

Because Counterclaimants lack standing, the Court need not reach the Counterclaims' additional infirmities. But even if Counterclaimants had standing, the Counterclaims should still be dismissed because each Count fails to state a claim. As to the fraud claim (Count I), Counterclaimants "must establish that [each of the Boeing Parties] (1) made a false representation of material fact, (2) knew it was false (or made with reckless disregard of its truth or falsity), and (3) intended that the [Counterclaimants] rely upon it. In addition, (4) [Counterclaimants] must be injured by reasonably relying on the false representation." *Boeing Co. v. Ten Oaks Mgmt., LLC*, 2023 WL 4241679, at \*3 (W.D.N.C. June 28, 2023) (quoting *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999)). The fraud claim may be based on "concealment or nondisclosure," but "must additionally allege that [each of the Boeing Parties] had a duty to disclose material information to [Counterclaimants,] as silence is fraudulent only when there is a duty to speak." *Packrite, LLC v. Graphic Packaging Int'l LLC*, 2020 WL 7060395, at \*3, \*4-6 (M.D.N.C. Dec. 2, 2020). The Counterclaims fail to plead most of these elements with the basic plausibility required by Rule 8, let alone with the particularity required by Rule 9(b).

**A.** **The Affirmative Misrepresentation Claims Do Not Plead Materiality, Falsity, Scienter, Or Reasonable Reliance.**

The Counterclaims challenge three alleged statements as affirmative misrepresentations. ¶ 47(a)-(c). Those statements were allegedly made at the February Meeting—one each by Zetterberg, Armstrong, and "Boeing." *Id.* Two of the alleged statements refer conditionally to actions that Boeing "would" take in the future after the Acquisition:

- "Zetterberg falsely told Richeson and Lovrovich that if Defendants were to acquire the Astech Business and assume the Supply Contract, and then later determined that the Astech Business was not profitable, Boeing would work with Defendants to provide Astech with necessary financial support to avoid bankruptcy, including financial assistance and/or assistance in finding a buyer for Astech." ¶ 47(a).

11

- "In that same meeting, Armstrong, knowing such a representation was not true, told Richeson and Lovrovich that if Defendants were to buy the Astech Business and assume the Supply Contract, Boeing would contribute to the costs of Astech Business's capital investments in its equipment." ¶ 47(b).

The third statement, to the extent it has any substantive content, is also forward-looking:

- "Boeing affirmed its commitment to Astech and emphasized the importance of Astech products to its KC-46 Pegasus tanker program, despite the fact that Boeing was actively attempting to re-source these products from [Astech] to a new supplier at this time." ¶47(c).

### 1. The Counterclaims Do Not Plead An Actionable False Statement Of Material Fact.

Each of the alleged misrepresentations is far too vague and indefinite to support a fraud claim. To be actionable, allegedly material statements must include "specific factual allegations" that "can be proven true or false." *Ten Oaks*, 2023 WL 4241679 at *5. By contrast, statements that "can be interpreted as predicting or promising some outcome" are generally immaterial. *Glob. Hookah Distribs., Inc. v. Avior, Inc.*, 401 F. Supp. 3d 653, 658 (W.D.N.C. 2019). Under these standards, the alleged misrepresentations are not actionable as a matter of law.

In *Spivey v. Smith*, for example, the North Carolina Superior Court confronted allegations that a defendant had given "assurances" that he "would treat [plaintiff and her trucking company] fairly and the business [controlled by defendant in which plaintiff had an ownership stake] would continue with her and [her trucking company] receiving the funds which they were due," and repeated assurances that she "would be provided with all material facts of the operation of the business." 2023 WL 6060885, at *1, *8 (N.C. Super. Ct. Sept. 18, 2023). The court concluded that the plaintiff's allegations constituted a "vague assurance … not a definite, specific misrepresentation of a material fact." *Id*. at *8. Similarly, courts in this district have held statements immaterial that "merely gesture to some undefined future … [action] and make no specific guarantee or disprovable fact," such as that a defendant "could provide everything [Plaintiff would] need" for various business purposes. *Glob. Hookah*, 401 F. Supp. 3d at 658, 660. And

12

statements about "the nature and the extent of Defendant's planned operations" have been found too vague to constitute material misrepresentations. *Atkinson v. Omtron USA, LLC*, 2012 WL 12887700, at *3 (M.D.N.C. May 30, 2012).

The three alleged affirmative statements are too indefinite to constitute a material misrepresentation as a matter of law. The alleged promise to "work with Counterclaimants" to provide support and to "contribute to" unspecified capital investments are classic examples of "vague assurance[s]" that are "not … definite, specific misrepresentation[s] of a material fact." *Spivey*, 2023 WL 6060885, at *8. They are not actionable for the same reasons as the statement of "planned operations" in *Atkinson* and the "assurance" of receiving "funds … due" in *Spivey*: they offer only indefinite, future-directed assurances without any concrete definition of specific financial obligations Boeing agreed it would assume. The third alleged misrepresentation—that Boeing "affirmed its commitment" to Astech—is, on its face, neither a statement of fact nor a promise. At most, it is a statement of opinion about the future, and as such is not actionable because it likewise cannot be shown true or false. *See Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 60, 65 (1st Cir. 1992) (manufacturer's alleged statement that it "would remain just as committed to the motorcycle industry as it had been in the past" was a non-actionable opinion about future events); *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *14 (N.D. Cal. Apr. 27, 2017) (collecting cases holding that "'commitment' is a 'vague, generalized assertion of corporate optimism,' that courts have found to be inactionable").

### 2. The Counterclaims Do Not Plead Falsity or Scienter.

"The general rule is that a [party] cannot predicate an action for fraud upon statements which are promissory in nature at the time they are made and which relate to future actions and conduct." *Ten Oaks*, 2023 WL 4241679, at *4 (quoting *Glob. Hookah*, 401 F. Supp. 3d at 658).

13

As this Court has explained, "a promise of a future plan cannot be guaranteed true or false at the time of its making," and a fraud claim based on a promise must therefore plead that "the promisor, at the time of the promise of future intent, does not intend to comply with the promise." *Id.*; *accord Jenkins v. AKZO Noble Coatings, Inc.*, 35 F. App'x 79, 86 (4th Cir. 2002) (N.C. law). The Counterclaims must further allege such contemporaneous intent with particularity. *See Macregen, Inc. v. Burnette*, 2021 WL 2682050, at *10 (M.D.N.C. June 30, 2021) ("[W]here a fraud claim stems from an alleged failure to fulfill an agreement, the complaint must contain specific factual matter to permit the plausible inference that the defendant did not intend to honor the agreement at the time it was made."); *N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.*, 740 F. Supp. 2d 694, 705 (M.D.N.C. 2010) ("While intent may be alleged generally, the circumstances constituting intent to deceive must be alleged with particularity."). That requires specific allegations of the "speaker's contemporaneous statements…contradicting his manifested intent or objective facts showing that his intent could not have been truthful when made." *Krispy Kreme Doughnut Corp. v. Advantage Grp. Enter., Inc.*, 2008 WL 5216227, at *4 (M.D.N.C. Dec. 11, 2008).

Here, the Counterclaims plead no specific facts contradicting the alleged promises, and no objective facts or circumstantial evidence from which the Court can infer that the Boeing Parties knew the promises were false when made. Indeed, the Counterclaims' allegations support the opposite inference. The Counterclaims allege that Boeing wanted Astech Buyer to acquire Astech because Boeing wanted to ensure that Astech would not shut down and would instead continue to supply exhaust kits.[8] ¶¶ 1, 47(g), 48. At the same time, Counterclaimants also allege that Boeing

---

[8] Counterclaimants have newly discovered this alleged motive. Tellingly, during Astech Buyer's bankruptcy proceedings, Astech Buyer never once alleged the fraud Counterclaimants alleged in their Counterclaims, including during hours of deposition testimony and in declarations. *See, e.g.*, Declaration of David Richeson In Support Of Chapter 11 Petition And Initial Motions, *Astech Buyer Bankruptcy*, ECF No. 20 (July 20, 2022) (making no reference to any alleged fraud). And

14

never intended to honor its promises and instead, once the Acquisition closed in March 2022, immediately began working to "actively undercut the Astech Business" and to "forc[e] the Astech Business into bankruptcy." ¶¶ 55-57. Those allegations are irreconcilable: it makes no sense for Boeing to make false promises to keep a supplier in business only to then force that supplier into bankruptcy. The Counterclaims thus come nowhere close to pleading intent with the required particularity. *Krispy Kreme*, 2008 WL 5216227, at *4 (noting that conjecture about mere potential to benefit, in the absence of any allegation that the defendant realized a financial benefit, is inadequate to plead intent not to perform a promise).[9]

The Counterclaims' allegation that Boeing refused requests "to make reasonable modifications to the Supply Contract and/or provide other financial support" is also inadequate to plead falsity or scienter. ¶¶ 55-56. The Counterclaims do not allege that any of the Boeing Parties ever represented Boeing would agree to contract modifications. And the vague allegation about "other financial support" underscores the fundamental problem with the alleged misstatements: Counterclaimants ask this Court to accept, for example, that Boeing's alleged promise to "work with" Counterclaimants in some *unspecified* way to provide *unspecified* "financial support" was knowingly false unless Boeing later agreed to whatever *specific* demands Counterclaimants might make in the future. The law imposes no such obligation.

---

although Astech Buyer filed adversary claims against Boeing—under a number of baseless theories—those claims nowhere allege that Boeing fraudulently induced Astech Buyer to acquire Astech. *Id.*, Complaint ECF No. 255 (Jan. 6, 2023).

[9] The Counterclaims' conclusory allegations that Boeing "never intended to provide the Astech Business with any support" and "never intended to contribute" to capital investment in Astech are insufficient. ¶¶ 54, 57. Such statements constitute legal conclusions "that are not required to be accepted as true for the purpose of a motion to dismiss." *Parker v. Case Farms, LLC*, 2020 WL 5377301, at *5 (W.D.N.C. July 29, 2020), *adopted by* 2020 WL 5377297 (W.D.N.C. Sept. 8, 2020) (holding that such statements as "[Defendants] knew that their representations to Plaintiff that he would continue to receive chickens as long as he grew good birds were false ..." do not provide sufficient factual matter to support an inference of a promise's falsity at the time made).

The stark contrast between the Counterclaims' non-specific allegations and Boeing's concrete allegations in the operative Second Amended Complaint in this case illustrates the point. As this Court recognized, Boeing alleged, for example, that Defendants made specific promises to "obtain a line of credit for Astech, inject capital into Astech, make specific upgrades to machinery, take specific steps to improve operations, and execute a 30-, 60-, and 90-day post acquisition plan." *Ten Oaks*, 2023 WL 4241679, at \*4. Boeing further alleged specific facts regarding the "brief period of time between the sale of Astech (shortly after March 3, 2022) and the request for a price increase (May 12, 2022)" followed by Astech's bankruptcy and the failure to obtain a line of credit. *Id*. As this Court observed, these specific allegations supported the reasonable inference that Defendants' statements were "knowing lie[s] when they were made." *Id*. Boeing also cited specific admissions by Defendants that they never intended to take the actions they promised. *See, e.g*., ECF No. 64 ¶¶ 72, 86. Boeing further alleged concrete misstatements of historical fact, which bolster the inference that Defendants' future-looking commitments were false when made. *See, e.g.*, *id.* ¶ 6 (Defendants misrepresented that Astech Buyer will purchase Astech "with cash and a short-term seller note" and that there would be $2.5 million in "equity financing," when in fact GKN paid Astech Buyer to take Astech and there was no "equity financing").

The Counterclaims, on the other hand, allege nothing concrete. They instead allege only three vague, unspecified "promises" of future conduct. The Counterclaims also do not allege that Counterclaimants asked Boeing for the only form of "financial support" even arguably specifically alleged—"contributing to the required capital investments to be made by the Astech Business" (¶ 13(a))—let alone that Boeing refused. Alleged failures to "work with" Counterclaimants do not plead any particularized facts from which the Court can reasonably infer an intent to defraud at the time the alleged statements were made. *See Ten Oaks*, 2023 WL 4241679, at \*4.

16

3. *The Counterclaims Do Not Plead Reliance.*

"North Carolina law requires that [parties] plead actual reliance on an alleged misrepresentation to show proximate cause." *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, 2023 WL 6931787, at *7 (W.D.N.C. Oct. 19, 2023). Further, such reliance must be reasonable. *Food Lion*, 194 F.3d at 513. Reliance on "vague assurances" without conducting an independent investigation into the circumstances is not reasonable. *Higgins v. Synergy Coverage Sols., LLC*, 2020 WL 256486, at *12 (N.C. Super. Ct. Jan. 15, 2020). The Counterclaims do not adequately plead reliance for two independent reasons.

First, Counterclaimants have a timing problem. Astech Buyer executed the APA in December 2021. Answer ¶ 37. The alleged misrepresentations were not made until more than two months later, in February 2022. ¶ 47. The alleged misrepresentations thus cannot have induced Astech Buyer to enter into the APA. *See Raycap Asset Holdings LTD v. Gora LLC*, 2023 WL 5493595, at *5 (W.D.N.C. Aug. 24, 2023) (where purported misstatements occurred *after* plaintiffs had already taken certain funding actions, plaintiffs failed to "demonstrate that the alleged misrepresentations were relied on to their detriment" in taking those actions). To the extent the Counterclaims contend the alleged misrepresentations induced Astech Buyer to close the Acquisition after it signed the APA, that theory is both unfounded and counterfactual. Once Astech Buyer executed the APA in December 2021, Astech Buyer was contractually bound to acquire Astech, subject to certain conditions (all of which were met), and the Counterclaims do not allege otherwise. The Counterclaims do not allege that Astech Buyer's performance under the APA would have been excused but for the Boeing Parties' alleged misrepresentations. For example, the Counterclaims do not and cannot allege that Boeing's commitment to "work with" Counterclaimants or contribute to capital investments were closing conditions. "There can be no

17

recovery in fraud for a deception by which a person is induced to do something which he is already bound to do." *Carty v. Westport Homes of N.C., Inc.*, 472 F. App'x 255, 259 (4th Cir. 2012) ; *see also Williams v. United Cmty. Bank*, 218 N.C. App. 361, 368-69 (2012) (land purchasers could not have relied on false appraisals because they agreed to purchase the lots *before* they learned the results of the appraisals). Further, to the extent anyone could reasonably rely on the alleged misrepresentations, it was Astech Buyer. Astech Buyer, not Counterclaimants, acquired Astech under the APA and assumed the Supply Contract. It follows that any purported reliance on the alleged misrepresentations related to the Acquisition was Astech Buyer's, not Counterclaimants'.

Second, reliance on alleged representations as vague as those alleged in the Counterclaims is unreasonable as a matter of law. *Solum v. CertainTeed Corp.*, 2015 WL 6505195, at \*7 (E.D.N.C. Oct. 27, 2015) (dismissing North Carolina UDTPA claim based on alleged misrepresentations for lack of reasonable reliance, and finding that vague statements, such as that a course is "rigorous" or that a company "had 'examined credentials' of individuals listed on its website" contain "no meaningful substance upon which a reasonable person could rely"). As Section A.1. explains, the alleged misrepresentations are too vague and indefinite to be actionable. Counterclaimants thus cannot have reasonably relied upon them.

**B.    The Omission Claims Do Not Plead A Duty To Disclose Or Reasonable Reliance, And Are Not Pleaded With Particularity.**

In addition to the three purported affirmative misrepresentations, the Counterclaims allege that the Boeing Parties intentionally omitted four purported facts during the February Meeting:

- "Boeing and its representatives never told Defendants, in the February 10 meeting or any other time, and intentionally withheld from Defendants, the fact that GKN had threatened to close [Astech] if Boeing would not agree to price increases"; ¶ 47(d); *see also* ¶ 14(a);

- "Boeing and its representatives never told Defendants, and intentionally withheld from them, the fact that Boeing had repeatedly rejected GKN's requested for price increases for the Astech Business"; ¶ 47(e) *see also* ¶ 14(b);

18

- "Boeing and its representatives never told Defendants, in the February 10 meeting or any other time, and intentionally withheld from Defendants, the fact that Boeing had prepared for, and was currently preparing for, the contingency of a closure of the Astech Business by investigating alternative suppliers or redesigning the Astech products"; ¶ 47(f) *see also* ¶ 14(c); and

- "Gionet never told Defendants, in the February 10 meeting or any other time, and intentionally withheld from Defendants, the fact that the Astech Business's highly specialized equipment was in a state of general disrepair, was difficult to repair, and was nearly impossible to replace"; ¶ 47(g).

None of these supposed omissions is sufficient to plead a fraud claim. Under North Carolina law, the fraudulent concealment elements mirror the fraudulent misrepresentation elements, with the addition of a requirement that the alleged wrongdoer had a duty to disclose the allegedly omitted information. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997). Pleading a duty to disclose is exceedingly difficult, which has led both state and federal courts in North Carolina to enumerate a more specific set of pleading requirements for a fraudulent concealment claim. A plaintiff must allege with particularity:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

*Parker Excavating, Inc. v. Highlands at Collowhee, LLC*, 2021 WL 1176771, at *5 (W.D.N.C. Mar. 29, 2021) (quoting *Breeden*, 171 F.R.D. at 195); *Spivey*, 2023 WL 6060885, at *8-*9 (noting *Breeden*'s adoption by the N.C. Superior Court).

### 1. The Counterclaims Do Not Plead A Duty To Disclose.

A fundamental flaw in the Counterclaims' omission theories is that they do not plead that any of the Boeing Parties had a duty to disclose the allegedly omitted information to Counterclaimants. Such a duty may arise from a "relationship of trust and confidence between the

19

parties," such as when the parties have a fiduciary or other special relationship. *Parker Excavating*, 2021 WL 1176771, at *5. The Counterclaims do not, and cannot, allege any such relationship between the Boeing Parties and Counterclaimants. Indeed, the law is clear that even "[c]ontracting parties in a commercial transaction" are not in a relationship giving rise to a duty to disclose. *Id.*; *see also Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 475-477 (E.D.N.C. 2013) (dismissing fraud and UDTPA counterclaims based on alleged omission by commercial counterparty in concealing its discussions and eventual contract with another supplier). Here, the relationship between the Boeing Parties and Counterclaimants was not even a "contracting parties relationship," as they were not in privity.[10] If contracting parties are not in a relationship giving rise to a duty to disclose as a matter of law, then parties *not* in privity cannot somehow obligate themselves to such a duty by discussing the potential assignment of a contract. At bottom, the Counterclaims do not plead any facts from which the Court can conclude that the parties had the kind of relationship on which the law imposes a duty to disclose.

Separately, as to the alleged omission that Boeing had investigated other suppliers, commercial parties do not have a duty to disclose negotiations with other counterparties as a matter of law. *Packrite,* 2020 WL 7060395, at *4-*5 (collecting cases). Even if the Boeing Parties had been in contract negotiations with Counterclaimants, they would have had no legal obligation to tell Counterclaimants their contingency plans. *Rahamankhan*, 989 F. Supp. 2d at 477 ("a party to a commercial transaction has no duty to tell the other party that it is negotiating with a third party"); *Comput. Decisions, Inc. v. Rouse Off. Mgmt. of N.C., Inc.*, 477 S.E.2d 262, 264-66 (N.C. Ct. App. 1996) (lessor had no duty to disclose to lessee that it was negotiating with another party for the

---

[10] While Boeing executed the CTA as part of the transaction, the CTA was signed by Astech Buyer, not Counterclaimants. Answer ¶ 2.

20

same premises); *cf. Big Red, LLC v. Davines*, 31 F. App'x 216, 222 (4th Cir. 2002) ("[defendant] had no duty to disclose to [plaintiff] its intentions regarding the outstanding negotiations between them or that it had chosen to entertain negotiations with another prospective distributor").

### 2. The Counterclaims Do Not Plead Reasonable Reliance.

"Reasonable reliance cannot be established as a matter of North Carolina law 'where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate.'" *Quidore v. Alliance Plastics, LLC*, 2020 WL 7082566, at \*6 (N.C. Super. Ct. Dec. 3, 2020) (quoting *Sullivan v. Mebane Packaging Grp., Inc.*, 581 S.E.2d 452, 458 (N.C. Ct. App. 2003)). Likewise, even where a plaintiff asserts in conclusory fashion that it could not have discovered the allegedly omitted information with reasonable diligence, a complaint must plead facts showing *the reasons* it could not have investigated. *Id.*, at \*7 (agreeing that "dismissal [of counterclaims] is proper because [defendant] did not allege any reason why—at any time during the three-plus months it took to negotiate [plaintiff's] employment with [defendant]—it could not have, with reasonable diligence, confirmed the truth or falsity of [plaintiff's] alleged fraudulent representations" in his resume); *Hudson-Cole Dev. Corp. v. Beemer*, 511 S.E.2d 309, 313 (N.C. Ct. App. 1999) (on reasonable reliance grounds, trial court properly dismissed third-party misrepresentation claim predicated on intentional concealment of false representation in agreement when third-party plaintiff could have accessed accurate public filing in county register).

Here, the Counterclaimants plead no facts to show that reasonable due diligence with their counterparty—GKN—would not have permitted Counterclaimants to discover the alleged truth. The Counterclaims do not (and could not plausibly) allege that Counterclaimants could not have discovered from GKN that it had threatened to shut down the Astech plant, that Boeing had rejected GKN's alleged earlier attempts to increase prices, or that Astech's equipment was in need

21

of repair and difficult to repair. *Cf. Rountree v. Chowan Cnty.*, 796 S.E.2d 827, 832 (N.C. Ct. App. 2017) (duty arose where the complaining party "had no ability to perform any independent investigation"). Counterclaimants cannot plead reasonable reliance with bare allegations that they chose to instead inexplicably rely on Boeing to disclose information that GKN possessed.

### 3. The Omission Claims Are Not Pleaded With Particularity.

Among the requirements for pleading a fraudulent omission with particularity set out by *Breeden*, Counterclaimants have failed to allege not only (1) a duty to disclose and (6) reasonable reliance, but also "(4) the identity of those under a duty who failed to make such disclosures" *and* "(5) what those defendant(s) gained by withholding information." 171 F.R.D. at 195. Even if some courts hold Rule 9(b) requirements "relaxed" when allegations are predicated on concealment, it is still necessary to identify the persons at issue and what they allegedly gained. *U.S. Med Supplies, LLC v. Rakaa Med. Co. Ltd.*, 2023 WL 5424762, at *3 (E.D.N.C. July 24, 2023) (fraud claim failed because there were no "allegations of the identity of the person(s) making the representations or concealments and what they obtained thereby").

Apart from a single conclusory assertion that Boeing maintained a low contract price "for many months longer than it would have"—something to which Boeing was already contractually entitled, and an allegation contradicted by Astech Buyer's prompt descent into bankruptcy, where it rejected Boeing's Supply Contract—the Counterclaims do not identify any benefit that Boeing allegedly obtained. ¶ 20. Moreover, as noted above, a scheme to defraud Counterclaimants into buying Astech, only to drive Astech into bankruptcy, makes no economic sense. *See Bank of Am. v. Lykes*, 2010 WL 2640454, at *5, *8 (W.D.N.C. May 20, 2010) (finding a fraud theory implausible where "a bank would engage in a scheme that, if successful, risked loss of $4.6 million dollars of [its subsidiary] funds in order to increase short-term revenue derived from a default

22

interest rate a few percentage points higher than the contract interest rate, all to hedge the stock price of a parent corporation"), *memorandum and recommendation adopted*, 2010 WL 2640411 (W.D.N.C. June 30, 2010). The Counterclaims do not even attempt to allege a benefit to the individual Boeing employees who Counterclaimants added as counter-defendants in this action. There is no allegation that Zetterberg, Armstrong, or Gionet would have benefitted by inducing the Astech acquisition and then immediately interrupting the source of supply.[11]

### III.  The Counterclaims Do Not Plead Negligent Misrepresentations.

In the alternative to their fraud claim (Count I), Counterclaimants seek recovery for the same purported misstatements on a negligent misrepresentation theory (Count II). They claim the Boeing Parties owed them, and breached, a duty of care.[12] ¶¶ 75, 78. Count II is predicated on the same allegations as Count I and suffers from the same deficiencies. It should likewise be dismissed.

Counterclaimants cannot allege that the Boeing Parties owed them a duty of care because such a duty arises only in the same circumstances as a duty to disclose, which are lacking here. *Rountree*, 796 S.E.2d at 831-832. Nor could Counterclaimants have justifiably relied on the purported misstatements because the statements were not false and Counterclaimants could not have reasonably relied on them, for the reasons explained above in Sections A.2, A.3 and B.2. Like the fraud claims, and on the same grounds, the negligent misrepresentation claims should therefore be dismissed. *See Abbington SPE, LLC v. US Bank, Nat'l Ass'n*, 352 F. Supp. 3d 508, 517-19 (E.D.N.C. 2016) (dismissing fraud and negligent misrepresentation claims predicated on same

---

[11] The Counterclaims' total lack of cogent reliance allegations, especially for the individually named defendants, is further evidence that these claims were filed for an improper purpose.

[12] "The tort of negligent misrepresentation occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care." *Eli Research, Inc. v. United Comm'cns Grp., LLC*, 312 F. Supp. 2d 748, 760 (M.D.N.C. 2004) (quoting *Jordan v. Earthgrains Cos., Inc.*, 155 N.C. App. 762, 766 (2003)).

allegations for the same reasons, including failure to plead reliance and falsity).

### IV. The Counterclaims Do Not Plead Unfair And Deceptive Trade Practices.

To plead a violation of N.C.G.S. § 75–1.1 (Count III), Counterclaimants must allege: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to" Counterclaimants. *Cross v. Ciox Health*, 438 F. Supp. 3d 572, 583 (E.D.N.C. 2020) (quoting *Walker v. Fleetwood Homes of N. Carolina, Inc.*, 362 N.C. 63, 71-72, 653 S.E.2d 393 (N.C. 2007)). Counterclaimants' UDTPA claim is based on their fraud allegations, and explicitly identifies the alleged "unfair and deceptive trade practices" as involving fraudulent inducement, misrepresentations, and omissions. ¶ 82. The claim thus sounds in fraud and is subject to the same heightened pleading requirements as the other claims. *Mountaineer Motors*, 2023 WL 6931787, at *7 ("Where a UDTPA claim is based upon alleged misrepresentations or fraudulent statements … plaintiff must meet the heightened standard of Rule 9(b) …").

As Counterclaimants' UDPTA claim relies solely on their fraud allegations, and is subject to the same pleading standard, it should be dismissed for the same reasons. *Liris S.A. v. Morris & Assocs., Inc.*, 496 F. Supp. 3d 931, 941 (E.D.N.C. 2020) ("Where … fraud claims fail as a matter of law, and where … UDTPA is based upon the same alleged fraudulent misrepresentation and concealment, … UDTPA also fails as a matter of law."); *Devlin v. Wells Fargo Bank, N.A.*, 2014 WL 1155415, at *10 (W.D.N.C. Mar. 21, 2014) (same), *aff'd*, 585 F. App'x 171 (4th Cir. 2014); *Atkinson*, 2012 WL 12887700, at *4 ("Because the fraud claim was found inadequate, it cannot serve as the basis of a Chapter 75-1.1 claim.").

### Conclusion

For the foregoing reasons, the Boeing Parties respectfully request that the Court dismiss with prejudice the Counterclaims in their entirety.

24

Dated: March 8, 2024

Respectfully Submitted,

*/s/ Joseph A. Mahoney*
Joseph A. Mahoney
N.C. State Bar No. 55318
MAYER BROWN LLP
300 South Tryon Street, Suite 1800
Charlotte, NC 28202
(704) 444-3654
jamahoney@mayerbrown.com

J. Gregory Deis (*pro hac vice*)
Ethan Hastert *(pro hac vice)*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
gdeis@mayerbrown.com
ehastert@mayerbrown.com

Glenn K. Vanzura (*pro hac vice*)
MAYER BROWN LLP
333 South Grand Avenue, 47th Floor
Los Angeles, CA 90071
(213) 229-9500
gvanzura@mayerbrown.com

Andrew Spadafora (*pro hac vice*)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3043
aspadafora@mayerbrown.com

# <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on March 8, 2024, a copy of the foregoing

was served on all parties of record in this case by CM/ECF to the following:

Patrick E. Kelly                                    Michael K. Forde
Michael J. Hoefling                              Brian P. O'Meara
Katie Burchette                                   Forde & O'Meara LLP
J. Nathanial Pierce                              191 North Wacker Drive, 31st Floor
JOHNSTON, ALLISON & HORD, P.A.    Chicago, Illinois 60606
1065 East Morehead Street                  (312) 641-1441
Charlotte, NC 28204                           mforde@fordellp.com
(704) 332-1181                                   bomeara@fordellp.com
pkelly@jahlaw.com
mhoefling@jahlaw.com
kburchette@jahlaw.com
npierce@jahlaw.com

                                                    */s/ Joseph A. Mahoney*
                                                    Joseph A. Mahoney