IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00481-KDB-DCK

| | |
|---|---|
| THE BOEING COMPANY,<br><br>          Plaintiff,<br><br>          v.<br><br>TEN OAKS MANAGEMENT, LLC, et al.<br><br>          Defendants,<br><br>TEN OAKS MANAGEMENT, LLC, and DAVID RICHESON,<br><br>          Counterclaimants,<br><br>AEP LEGACY HOLDINGS, LLC,<br><br>          Third-Party Plaintiff,<br><br>          v.<br><br>THE BOEING COMPANY,<br><br>          Counter-Defendant, and<br><br>BARBARA ZETTERBERG, CORY GIONET, and RODNEY ARMSTRONG,<br><br>          Third-Party Defendants. | **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT** |

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Factual Background ...................................................................................................... 2

Standard of Review ...................................................................................................... 4

Argument ...................................................................................................................... 5

I.      Counterclaimants Have Standing To Pursue Their Counterclaims .................................... 5

II.     Counterclaimants Plead Affirmative Misrepresentation......................................... 9

       A.     Counterclaimants Plead Actionable Misrepresentations ...................................... 11

       B.     Counterclaimants adequately plead falsity and scienter....................................... 13

       C.     Counterclaimants adequately plead reliance .......................................... 14

III.    Counterclaimants adequately plead their claim for fraudulent omission .......................... 16

       A.     Counterclaimants plead a duty to disclose ............................................ 17

       B.     Counterclaimants plead reasonable reliance........................................... 20

       C.     Counterclaimants plead their omission claims with the required particularity ..... 21

IV.    Counterclaimants adequately plead negligent misrepresentation..................................... 23

V.     Counterclaimants adequately plead unfair and deceptive trade practices ........................ 24

Conclusion .................................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
    917 F.3d 206 (4th Cir. 2019)....................................................................................4

*Alpvex, Inc. v. John Swan Ltd.*,
    No. 1:17-CV-388, 2019 U.S. Dist. LEXIS 205063 (N.D.N.Y. Nov. 26, 2019).................. 7

*Anderson v. Foundation for Advancement*,
    155 F.3d 500 (4th Cir. 1998) ........................................................................... 9

*Ashcroft v. Iqbal*,
    557 U.S. 662 (2009) ....................................................................................... 4

*ATT Sys. Co. v. Tylman*,
    No. 03 C 50326, 2004 U.S. Dist. LEXIS 20857 (N.D. Ill. Oct. 14, 2004)........................ 7

*Boeing Co. v. Ten Oaks Mgmt., LLC*,
    2023 U.S. Dist. LEXIS 111796 (W.D.N.C. June 28, 2023)............................................... 9

*Breeden v. Richmond Community College*,
    171 F.R.D. 189 (M.D.N.C. 1997) ....................................................................... 16

*Brookfield Asset Mgmt., Inc. v. Rosson*,
    261 A.3d 1251 (Del. 2021) ................................................................................ 8

*Collins v. Langmuir-Logan*,
    2020 Cal. Super. LEXIS 14733 (Cal. Super. Ct. 2020) ...................................................... 13

*Corder v. Antero Res. Corp.*,
    57 F.4th 384 (4th Cir. 2023) ............................................................................... 16

*Eli Research Inc. v. United Communs. Group, LLC*,
    312 F. Supp. 2d 748 (M.D.N.C. 2004) ................................................................. 19

*Everts v. Parkinson*,
    147 N.C. App. 315, 555 S.E.2d 667 (2001)....................................................................... 19

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
    194 F.3d 505 (4th Cir. 1999)........................................................................... 10

*Founders Fed. Credit Union v. Mitchell*,
    2021 U.S. Dist. LEXIS 187365 (W.D.N.C. Sept. 29, 2021) ........................................... 5

Doc No. 4873-6416-9645

*General Technology Applications, Inc. v. Exro Ltda,*
388 F.3d 114 (4th Cir. 2004) ................................................................................... 8

*Gentile v. Rossette,*
906 A.2d 91 (Del. 2006) ............................................................................................ 8

*Harrison v. Westinghouse Savannah River Co.,*
176 F.3d 776 (4th Cir. 1999) .................................................................................... 11

*Head v. Gould Killian CPA Grp., P.A.,*
371 N.C. 2, 812 S.E.2d 831 (2018) ......................................................................... 14

*Hudson-Cole Dev. Corp. v. Beemer,*
132 N.C. App. 341, 511 S.E.2d 309 (N.C. Ct. App. 1999)..................................... 14

*In re Astech Engineered Products, Inc.,*
Ch. 11 Case No. 22-10635 (BLS) (Bankr. D. Del. 2022)....................................... 4

*In re J.P. Morgan Chase & Co. Shareholder Litigation,*
906 A.2d 808 (Del. Ch. 2005) .................................................................................. 6

*Krebs v. Charlotte Sch. of Law, LLC*
2017 U.S. Dist. LEXIS 143060 (W.D.N.C. September 5, 2017) ............................. 24

*MacFadden v. Louf,*
182 N.C. 745, 643 S.E.2d 432 (N.C. Ct. App. 2007) ............................................. 15

*Noble Bottling, LLC v. Sherman,*
2023 U.S. Dist. LEXIS 120835 (W.D.N.C. July 13, 2023)..................................... 5

*Omaha v. Markowitz,*
434 F. Supp. 3d 303 (E.D. Pa. 2020) ....................................................................... 13

*Parker Excavating, Inc. v. Highlands at Cullowhee, LLC,*
2021 U.S. Dist. LEXIS 59137 (W.D.N.C. March 29, 2021) ................................... 18

*Phelps-Dickson Builders, L.L.C. v. Amerimann Partners,*
172 N.C. App. 417, 617 S.E.2d 664 (N.C. Ct. App. 2005)..................................... 19

*Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.,*
989 F. Supp. 2d 471 (E.D.N.C. 2013) ..................................................................... 17

*Seven Talents, LLC v. Neugebauer (In re With Purpose, Inc.),*
654 B.R. 715 (Bankr. N.D. Tex. 2023) .................................................................... 7

Doc No. 4873-6416-9645

*Starr Foundation v. American International Group, Inc.*,
    76 A.D.3d 25, 901 N.Y.S.2d 246 (N.Y. App. Div. 2010) ................................................... 7

*Sutter v. Gen. Petroleum Corp.*,
    170 P.2d 898 (Cal. 1946) .................................................................................................. 8

*Synovus Bank v. Coleman*,
    887 F. Supp. 2d 659 (W.D.N.C. 2012) ............................................................................ 18

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ............................................................................................... 6

*Topshelf Mgmt. v. Campbell-Ewald Co.*,
    117 F.Supp.3d 722 (M.D.N.C. 2015) ............................................................................... 5

*Warren v. Psa Airlines, Inc.*,
    2023 U.S. Dist. LEXIS 164068 (W.D.N.C. July 28, 2023) ............................................... 5

*Wright v. North Carolina*,
    787 F.3d 256 (4th Cir. 2015) ........................................................................................... 9

*Youyi Chen v. 215 Chrystie Venture, LLC*,
    2023 NY Slip Op 50716(U), ¶ 4, 79 Misc. 3d 1224(A), 191 N.Y.S.3d 614 (Sup. Ct.) ...... 8

## Statutes

N.C. Gen. Stat. § 75-1.1 ......................................................................................................24

## Rules of Court

Fed. R. Civ. P. 8 ...................................................................................................................5

Fed. R. Civ. P. 9(b)..............................................................................................................5

Fed. R. Civ. P. 12(b)(6).......................................................................................................5

Doc No. 4873-6416-9645

Defendants-Counterclaimants Ten Oaks Management, LLC ("Ten Oaks Management") and David Richeson ("Richeson"), and Third-Party Plaintiff AEP Legacy Holdings, LLC ("AEP") (collectively, "Counterclaimants") submit this Memorandum in Opposition to the Motion to Dismiss Counterclaim and Third-Party Complaint filed by Plaintiff The Boeing Company ("Boeing" or "Plaintiff"), and Third-Party Defendants Barbara Zetterberg ("Zetterberg"), Cory Gionet ("Gionet"), and Rodney Armstrong ("Armstrong") (collectively "Third-Party Defendants"). Boeing and the Third-Party Defendants are collectively referred to herein as the "Boeing Parties."

## INTRODUCTION

In the Counterclaims and Third-Party Complaint (collectively, "Counterclaims"), Counterclaimants detail how Boeing and three of its employees, Zetterberg, Gionet, and Armstrong, conned Counterclaimants into purchasing the assets (the "Astech Business") of GKN Aerospace Chem-Tronics, Inc. d/b/a Astech Engineered Products ("GKN Astech"). The Counterclaimants allege specific instances in which they made material misrepresentations to, and intentionally concealed material facts from, Counterclaimants. They made these misrepresentations and concealed the facts to induce Counterclaimants to close on the purchase of the Astech Business, thus allowing Boeing to continue reaping the benefits of a lopsided contract ("Boeing Supply Contract") that had driven GKN Astech to the brink of shutting down altogether.

In its effort to reel in Counterclaimants, Boeing falsely promised a mutually successful, long-term relationship with the Astech Buyer, a then-shell company wholly owned by AEP and managed by Ten Oaks Management. For example, Boeing committed to providing Astech Buyer with financial support, including contributions to capital investments in equipment. Boeing committed to assisting Astech Buyer financially, and even in finding a buyer, in the event

1

Counterclaimants were forced to consider bankruptcy. Additionally, Boeing intentionally concealed from Counterclaimants its extensive knowledge of GKN Astech's threats to shut down, and Boeing's ongoing efforts to replace GKN Astech as a supplier.

When Ten Oaks Management, Lovrovich, and Richeson met with Boeing in May of 2022 to ask for the financial assistance Boeing had promised, Boeing refused. When Ten Oaks Management and Richeson invited Boeing, along with other GKN Astech customers, to an in-person meeting in Detroit, Michigan, no Boeing employee attended. Instead, Boeing embarked on a campaign to gain leverage in its dispute with Counterclaimants by any means necessary. This included Boeing's surreptitious takeover of Astech's leased production facility while Counterclaimants attempted to negotiate their own lease extension. As part of this scheme, Boeing sent its employees to the premises under false pretenses, with explicit instructions to conceal their affiliation with Boeing and misrepresent their identity to anyone who may inquire. These actions are entirely consistent with Counterclaimants' allegations as to Boeing's fraudulent intent.

## FACTUAL BACKGROUND

GKN first approached Ten Oaks Management in late 2021 about selling the Astech Business. ¶ 45.[1] Given their experience acquiring corporate divestitures and working with distressed companies, Counterclaimants were interested in the opportunity. *Id*. Counterclaimants then undertook due diligence to investigate the Astech Business. ¶ 46. In December 2021, AEP and GKN entered into an Asset Purchase Agreement ("APA") for the purchase of the Astech Business. ¶15, fn. 1. Closing of the purchase was to occur at a later date, if all conditions for closing had been satisfied. *Id*. Additionally, negotiations between Ten Oaks Management and GKN were

---

[1] Unless otherwise specified, all citations to paragraphs herein shall be citations to the Counterclaims.

2

ongoing, with alterations to material terms, including the purchase price, occurring through the date of closing on March 11, 2022. *Id.*; *See also* Doc. No. 64, at ¶ 55.

One condition to closing under the APA, among others, was Boeing's consent to the assignment of the Boeing Supply Contract ("CTA"). *Id.* To that end, Boeing and Counterclaimants each conducted due diligence related to the CTA. This due diligence included correspondence between Counterclaimants, their agents, and Boeing and culminated in an in-person meeting at Boeing's offices in Everett, Washington on February 10, 2022. ¶ 47. The attendees at that meeting were Zetterberg, Gionet, and Armstrong on behalf of Boeing, Lori Day on behalf of GKN, and David Richeson and Andrew Lovrovich on behalf of Ten Oaks Management and AEP. *Id.* It was during this meeting that the Boeing Parties made the false statements and concealed the material facts described in the Counterclaims. *Id.*

After closing on the purchase on March 11, 2022, the Astech Buyer's new management learned that the business was much more troubled than it understood pre-closing. These troubles included, but were not limited to: (a) there was significantly less borrowing capacity from the company's assets than expected; (b) there were fewer efficiencies of scale than expected; (c) the labor market for skilled employees was tight; (d) there was less opportunity for customer acquisition in the short term; and (e) the machinery in the plant was in a general state of disrepair, highly specialized, and not easily repaired or replaced. ¶ 53. Upon learning these concerning financial circumstances and dynamics of the Astech Business, and after pursuing efforts to turn around the Astech Business, Richeson and Lovrovich met with Boeing and asked for reasonable modifications to the Boeing Supply Contract and/or for other financial support. ¶ 55. Despite its previous promises to Counterclaimants, Boeing refused. *Id.* In so doing, Boeing effectively forced the Astech Business into bankruptcy. *Id.*

Doc No. 4873-6416-9645

Finally, Counterclaimants must point out something that is *not* in the Counterclaims. This is because the Boeing Parties claim at various times that the Counterclaims are "implausible" and "convoluted." Doc. No. 73, at pp. 1-3. This is because, they say, it would make no sense for Boeing to defraud Counterclaimants in order to keep the Astech Business open, only to then "tr[y] to shutter the same supplier." Doc. No. 73, at p. 1, 15, 22.

This is a classic strawman argument; *nowhere* do Counterclaimants allege that Boeing wanted to "shutter" the Astech business. Rather, Counterclaimants allege that the Boeing Parties' fraud forced Astech into bankruptcy. ¶¶ 55-57. The Counterclaim does not allege that bankruptcy was Boeing's specific intent. More fundamentally, a Chapter 11 bankruptcy such as Astech Buyer's which is intended to provide a method of reorganizing a company while it continues to operate as a going concern – is a far cry from "shuttering" the plant. Indeed, Boeing might well have seen a benefit in an Astech bankruptcy – specifically, an opportunity to purchase cheaply the Astech assets out of bankruptcy. In fact, while it is not alleged in the Counterclaim, the Court can take judicial notice of the Astech bankruptcy proceeding in which Boeing and two other Astech customers "put forth . . . a contemplated plan transaction by which [they] would acquire Debtor's [the Astech] business." *In re Astech Engineered Products, Inc*., Ch. 11 Case No. 22-10635 (BLS), Docket No. 210 (Bankr. D. Del. 2022). This attempted purchase would explain Boeing's surreptitious and successful attempt to gain control of the GKN Astech lease as alleged in the Counterclaim. ¶¶ 60-63. Boeing's misleading claims of "implausibility" do not withstand scrutiny.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*,

4

557 U.S. 662, 678 (2009)). The same standard applies towards compliance with the general pleading requirements of Rule 8. *Id*. Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief" but "does not require detailed factual allegations." *Id*. In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Warren v. Psa Airlines, Inc.*, 2023 U.S. Dist. LEXIS 164068, at \*7 (W.D.N.C. July 28, 2023) (internal citation omitted). Courts apply the same standard to counterclaims as they do to complaints. *See Founders Fed. Credit Union v. Mitchell*, 2021 U.S. Dist. LEXIS 187365, at \*2-3 (W.D.N.C. Sept. 29, 2021).

Rule 9(b) and North Carolina law provide that claims for fraud and negligent misrepresentation "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *See Topshelf Mgmt. v. Campbell-Ewald Co.*, 117 F.Supp.3d 722, 727-28 (M.D.N.C. 2015). To satisfy Rule 9(b)'s particularity requirement, a plaintiff must describe "the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Noble Bottling, LLC v. Sherman*, 2023 U.S. Dist. LEXIS 120835, at \*12 (W.D.N.C. July 13, 2023) (internal citation omitted). "The Fourth Circuit has held that '[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense and trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id*.

## ARGUMENT

### I. Counterclaimants Have Standing to Pursue Their Counterclaims.

Boeing argues that Counterclaimants lack standing to assert their Counterclaims. Doc. No. 73, at p. 8-10. To support this argument, Boeing characterizes the claims as "derivative", asserting

Doc No. 4873-6416-9645

that Counterclaimants have no direct claims against Boeing because the claims belong to Astech Buyer. But this ignores the allegations in the Counterclaims and misstates the law.

Boeing principally relies on *In re J.P. Morgan Chase & Co. Shareholder Litigation*, 906 A.2d 808 (Del. Ch. 2005) to advance its position. In that case, the court held that the plaintiff stockholders' claims were derivative, and not direct, and thus dismissed the complaint for failure to make a demand. That case is inapposite. There, two banks agreed to merge, and stockholders of the acquiring bank filed a class action against its directors, alleging breaches of fiduciary duties, claiming that the directors overpaid for the acquired bank. *J.P. Morgan*, 906 A.2d at 812-13. On the issue of standing, the *J.P. Morgan* court applied a two-part test adopted by the Delaware Supreme Court in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033-36 (Del. 2004), to distinguish direct from derivative claims. *J.P. Morgan*, 906 A.2d at 817. The court examined (1) who suffered the alleged harm (the corporation or the stockholders, individually), and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually). *Id*. The plaintiffs in *J.P. Morgan* argued that they were harmed because the payment of a premium prevented them from receiving their fair share of the resulting business combination, which was a dilution of their stockholder interests. *Id*. The court rejected this argument, citing Delaware case law, which provides that "if a board of directors authorizes the issuance of stock for no or grossly inadequate consideration, the corporation is directly injured and the shareholders are injured derivatively." *Id*. at 818 (internal citation omitted). Therefore, the court found that the plaintiffs' claim was derivative because it was the corporation that suffered the alleged harm, and the corporation – which would have been injured by any overpayment – would receive the benefit of any recovery. *J.P. Morgan*, 906 A.2d at 118-19.

6

The present case, in contrast, does not involve stockholders complaining about wrongs done to the company which they own, making *J.P. Morgan* distinguishable. Under the *Tooley* analysis, Counterclaimants' claims are direct. Counterclaimants individually (1) suffered the alleged harm and (2) would receive the benefit of any recovery. Counterclaimants allege that they were fraudulently induced to expend significant time, resources, and money to close the deal through the Astech Buyer, which was then nothing but a shell company wholly owned by AEP and managed by Ten Oaks Management. Indeed, the Counterclaims specifically allege that the Boeing Parties made false statements and material omissions directly to the Counterclaimants. ¶ 47. And the Counterclaims specifically allege that it was Counterclaimants, not Astech Buyer, that "expended significant resources in due diligence and incurred transaction costs in researching, pursuing, and executing this transaction." ¶ 51(b). Those expenditures are damages suffered by Counterclaimants individually and directly. And any recovery of those damages would go to Counterclaimants, not to Astech Buyer.

These are the types of claims that courts have found to be direct, rather than derivative. "Allegations that a defendant fraudulently induced a plaintiff to invest typically state a direct claim." *Starr Foundation v. American International Group, Inc.*, 76 A.D.3d 25, 38, 901 N.Y.S.2d 246, 256 (N.Y. App. Div. 2010) (internal citation omitted); *See also Alpvex, Inc. v. John Swan Ltd.*, No. 1:17-CV-388, 2019 U.S. Dist. LEXIS 205063, at *13-14 (N.D.N.Y. Nov. 26, 2019) (finding plaintiff's fraud in the inducement claim, where it alleged it joined joint venture only because of defendant's fraud, was direct and not derivative); *Seven Talents, LLC v. Neugebauer (In re With Purpose, Inc.)*, 654 B.R. 715, 724 (Bankr. N.D. Tex. 2023) ("by alleging that the negligent misrepresentations fraudulently induced the Plaintiffs' investment into the Debtor, the Plaintiffs have alleged a direct injury that is not derivative of the bankruptcy estate"); *ATT Sys. Co. v. Tylman*,

7

No. 03 C 50326, 2004 U.S. Dist. LEXIS 20857, at *13 (N.D. Ill. Oct. 14, 2004) (stating that plaintiffs' claims were based on the defendants' wrongful inducement of the plaintiffs' investment in the corporation in the first place, which were "direct and distinct injuries to [the plaintiffs] as investors"); *Sutter v. Gen. Petroleum Corp.*, 170 P.2d 898, 901 (Cal. 1946) (concluding plaintiff could state a direct claim where defendants' representations made directly to a plaintiff before the existence of the corporation and those representations induced plaintiff to form and invest in the corporation that was the instrument of the plaintiffs' losses); *Youyi Chen v. 215 Chrystie Venture, LLC*, 2023 NY Slip Op 50716(U), ¶ 4, 79 Misc. 3d 1224(A), 191 N.Y.S.3d 614 (Sup. Ct. 2023) (denying, under *Tooley*, motion to dismiss claims of allegedly fraudulent misrepresentations and omissions made by defendants without which plaintiffs would not have invested in a project).

The Boeing Parties' other cases are likewise distinguishable and do not support its standing argument. In *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021), cited by Boeing, the court re-affirmed the *Tooley* test and overruled *Gentile v. Rossette*, 906 A.2d 91, 99-100 (Del. 2006), which allowed direct standing to assert a corporate dilution/overpayment claim, which is not at issue here. And in *General Technology Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004), also cited by the Boeing Parties, the court – interpreting Virginia law – found that the counterclaimant lacked standing where its claims were all based on a patent license to which the counterclaimant had no rights, yet the counterclaimant sought to recover individually. *Exro*, 388 F.3d at 118-20.

Here, in contrast, Counterclaimants' claims are based on the Boeing Parties' fraudulent inducement of Counterclaimants to spend their *individual* time, resources, and money to close the transaction. The fact that Astech Buyer was the entity that ultimately assumed the Boeing Supply

Contract does not negate the time, resources, and money expended by, and harm to, the Counterclaimants. These are direct claims under *Tooley* and its progeny.

Finally, the Boeing Parties complain that "Counterclaimants do not allege any specific costs they incurred after February 10, 2022 in reliance on any statement by the Boeing Parties." Doc. No. 73, at p. 10. That is simply not true. The Counterclaimants allege that "In reasonable reliance on these false statements and material omissions by Boeing, Counterclaimants took affirmative steps including", for instance, "expended significant resources in due diligence and incurred transaction costs in researching, pursuing, and executing this transaction" and transaction costs, personnel costs, and attorneys' fees. ¶¶ 51, 63.

In sum, Counterclaimants have adequately alleged direct claims and the Boeing Parties' standing argument should be rejected. *See Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) ("a complaint is to be construed liberally so as to do substantial justice.") (internal quotations omitted); *Anderson v. Foundation for Advancement*, 155 F.3d 500, 505 (4th Cir. 1998) ("Federal 'notice' pleading standards require that the complaint be read liberally in favor of the plaintiff.").

## II.  Counterclaimants Plead Affirmative Misrepresentation.

The Boeing Parties next argue that Counterclaimants failed to satisfy the pleading requirements for their affirmative misrepresentation claims. In doing so, Boeing attempts to impose a pleading standard far beyond what is required under Rules 8 and 9(b). Under North Carolina law, the elements Counterclaimants must allege on the fraudulent misrepresentation claim are: (1) the Boeing Parties made a false representation of material fact, (2) the Boeing Parties knew that the representation was false (or made it with reckless disregard of its truth or falsity), (3) the Boeing Parties intended that Counterclaimants would rely upon the representation, and (4) Counterclaimants were injured by reasonably relying on the false representation. *Boeing Co. v.*

9

*Ten Oaks Mgmt., LLC,* 2023 U.S. Dist. LEXIS 111796, at *8 (W.D.N.C. June 28, 2023) (citing *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999)).

The Counterclaimants' allegations satisfy each of these elements. They specify, *inter alia*, that Zetterberg falsely represented to Richeson and Lovrovich that Boeing would provide Astech Buyer with the financial support that it needed to remain solvent or, if necessary, find a buyer for the business (¶ 47(a)); that Armstrong falsely told Richeson and Lovrovich that Boeing would contribute to the costs for necessary capital investments (¶ 47(b)); that these representations were false; and that the Boeing Parties knew the representations were false and did not intend to honor these commitments. ¶¶ 47, 54, 57, 63, 68. They further allege that the Boeing Parties intended Counterclaimants would rely on these representations (¶¶ 13, 48, 51, 70), upon which Counterclaimants reasonably relied. ¶ 71. Finally, Counterclaimants allege they suffered damages, including due diligence costs, transaction costs, and attorneys' fees. ¶¶ 65, 73.

The Counterclaimants also set forth with great specificity the details of these misrepresentations. Specifically, Counterclaimants identify:

- When the statements were made – during a meeting with representatives from Boeing, GKN, Ten Oaks Management and AEP on February, 10, 2022. ¶ 47.

- Where the statements were made – at Boeing's offices in Everett, Washington. *Id*.

- Who made the statements – Zetterberg and Armstrong, individually and on behalf of Boeing. *Id*.

- What was said – Boeing's promises to provide "necessary financial assistance and/or assistance in finding a buyer for the Astech Business" and "contributing to the costs of Astech Business's capital investments in its equipment." *Id*.

- Why the statements were made – "to induce Counterclaimants to purchase the Astech Business and assume the Supply Contract." ¶ 48.

Thus, Counterclaimants expressly and specifically alleged the "time, place, and contents of the false representations, as well as the identity of the person making the false representations and what was obtained thereby." *See Noble Bottling, LLC v. Sherman*, No. 3:22-CV-00083-KDB-DCK, 2023 U.S. Dist. LEXIS 120835, at \*12 (W.D.N.C. July 13, 2023) *quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). The Fourth Circuit has held that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Here, the specificity of the allegations clearly puts Boeing on notice of the "particular circumstances for which [Boeing] will have to prepare a defense and trial." Further, Counterclaimants have "substantial prediscovery evidence" to support their claims. Specifically, the Counterclaims detail the "who, what, when, where, and why" relating to Boeing's affirmative misrepresentations and material omissions. *See e.g.* Counterclaims, ¶ 13(a)-(b) (specifying each affirmative misrepresentation); ¶ 14(a)-(b) (specifying each material omission); ¶¶ 47, 54, 55, 57, 58 (further specifying the misrepresentations and omission related context). Thus, the allegations in the Counterclaims satisfy the pleading requirements under Rule 9(b).

## A.     Counterclaimants Plead Actionable Misrepresentations.

The Boeing Parties argue that the affirmative misrepresentations in the Counterclaims are too "vague and indefinite" to be "actionable as a matter of law". Doc. No. 73, at p. 12. They claim that the misrepresentations are not actionable because they "offer only indefinite, future-directed assurances without any concrete definition of specific financial obligations". Doc. No. 73, at p.

11

13. Tellingly, Boeing offers no case that sets this standard – including especially the requirement of a "specific financial obligation".

This argument misstates both the law and the Counterclaims. First, the authorities cited by the Boeing Parties do not support such a stringent standard, and address allegations very different from those here. Their principal reliance is on *Spivey v. Smith*, 2023 NCBC LEXIS 111 (N.C. Super. Ct. Sept. 18, 2023), a case from the New Hanover County, North Carolina Superior Court. That trial court held insufficient the Plaintiff's allegations that were "limited to an 'assurance' or 'indication' . . . that [defendant] 'would treat [Spivey] fairly and the business would continue with her and Plaintiff KS receiving the funds which they were due.'" *Id.* at \*59. The only other case that the Boeing Parties cite is *Global Hookah Distribs. v. Avior, Inc.*, 401 F. Supp. 3d 653 (W.D.N.C. 2019), a case which by its own terms is limited to the "carefully circumscribed circumstances" in which a Plaintiff seeks "to maintain a fraud action alongside a breach of contract" claim – which is not the case here. *Id.* at 658. And even in *Global Hookah*, the court focused not on the alleged statements' specificity; rather, the court's ruling hinged on the fact that the statements were of the Defendants' *beliefs* rather than any promised action. *Id*. at 658-59. Neither case requires a "concrete definition of specific financial obligations," as Boeing claims the standard to be.

Indeed, Boeing's *own* allegations in its amended complaint do not meet this imaginary standard. That complaint asserts, for example, that Defendants' fraud arose out of its general promises to "tap Ten Oaks' substantial family capital," (Doc. No. 5, ¶ 6), to "minimize customer disruption . . . to Boeing's production system," (Doc. No. 5, ¶ 57) and that "if needed, [Ten Oaks] would inject additional cash into Astech [Business]." Doc. No. 5, ¶ 48. These allegations – which the Court held to be sufficiently specific (Doc. No. 42, at p. 11) – are strikingly similar to the

Doc No. 4873-6416-9645

Counterclaims' allegations that the Boeing Parties lied when they promised, for example, that Boeing would "provide the Astech Business with necessary financial support to avoid bankruptcy;" that "Boeing would contribute to the costs of Astech Business's capital investments in its equipment;" and that if necessary, Boeing would assist "in finding a buyer for the Astech Business." ¶ 47. In sum, there is no doubt that the affirmative misrepresentations alleged in the Counterclaims are actionable.[2]

### B. Counterclaimants Plead Falsity and Scienter.

Boeing next argues that the Counterclaims are deficient because they "plead no specific facts contradicting the alleged promises, and no objective facts or circumstantial evidence from which the Court can infer that the Boeing Parties knew that the promises were false when made." This argument is simply baffling. The Counterclaims allege repeatedly that the Boeing Parties' misrepresentations were "false" and "not true". *See e.g.*, ¶¶ 47, 49, 51, and 54.

And as for "objective facts or circumstantial evidence from which the Court can infer" falsity, the sequence of events described in the Counterclaims does exactly that. Specifically, the Counterclaimants allege the following series of events:

- February 10, 2022: The meeting at which the misrepresentations are made (¶ 47);

- March 11, 2022: Astech Buyer closes on its purchase (¶ 15);

---

[2] Not surprisingly, like this Court, other courts similarly find allegations of this nature to be sufficiently specific for purposes of pleading a fraud claim. *See, e.g., Omaha v. Markowitz*, 434 F. Supp. 3d 303, 318-19 (E.D. Pa. 2020) (holding the plaintiff satisfied the Rule 9(b) standard by alleging, inter alia, the "what" of her fraud claim as "[f]alsely promised to provide financial support to Plaintiff to induce her consent to the terms of the Settlement Agreement") (dismissed on other grounds); *Collins v. Langmuir-Logan*, 2020 Cal. Super. LEXIS 14733, at *13-14 (Cal. Super. Ct. 2020) (noting that California requires a heightened pleading standard for fraud and overruling a demurrer of a fraud claim where plaintiff alleged "in or around February 2018, [Defendants] promised to provide additional financial assistance to Plaintiffs to make improvements to [the subject property] if the rent on the property was raised to $10,000 per month).

13

Doc No. 4873-6416-9645

Case 3:22-cv-00481-KDB-DCK    Document 84    Filed 04/01/24    Page 18 of 31

- Shortly after the closing of the acquisition of the Astech Business, two significant things were revealed: (a) the Astech Business is more troubled than Counterclaimants knew; and (b) Boeing refuses to live up to its promises (¶¶ 52-56); then

- July 15, 2022: Astech Buyer files for bankruptcy. ¶ 56.

The fact that Boeing abandoned its promises just a few short months after making them is strong circumstantial evidence of the falsity of those promises. As the Court noted in its Order sustaining Boeing's Amended Complaint, "This quick succession of events thus suggests that the statements could be found to be a knowing lie when they were made." Doc. No. 42, at p. 8.

Boeing's remaining arguments on this point are simply inapposite. First, it reverts to its argument about specificity. Counterclaimants address that argument in Section II.A, *supra*. Second, Boeing makes the first of its "implausibility" arguments – specifically, its claim that it would be contradictory for Boeing to con Counterclaimants into buying the Astech Business, and then to abandon its promises of financial support for that business. As Counterclaimants describe at p. 4, *supra*, there is no contradiction. There are any number of self-serving reasons why Boeing might abandon its promises of financial support, including: (1) it did not want to spend the money, or (2) it wanted to buy the Astech Business assets out of bankruptcy, at fire-sale prices. And Counterclaimants nowhere suggest that Boeing's motive was to "shutter" the Astech Business.

C.     **Counterclaimants Plead Reliance.**

"Whether each of the elements of actual fraud and reasonable reliance are met are ordinarily questions for the jury 'unless the facts are so clear that they support only one conclusion.'" *Head v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9, 812 S.E.2d 831, 837 (2018); *see also Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346-47, 511 S.E.2d 309, 313 (N.C. Ct. App. 1999) (holding a party's reliance on representations related to a subordination

agreement were unreasonable as a matter of law where the subject subordination agreement was publicly recorded prior to the alleged misrepresentations); *MacFadden v. Louf*, 182 N.C. 745, 748, 643 S.E.2d 432, 434-35 (N.C. Ct. App. 2007) (holding a purchaser of real property could not reasonably rely on alleged misrepresentations related to defects to the subject property where an inspection report obtained by the purchase subsequent to the alleged misrepresentations put purchaser on notice of the same defects).

Boeing argues that Counterclaimants have a "timing problem" because the false representations made at the February 10, 2022 meeting were made after the APA was executed in December 2021. Doc. No. 73, at p. 17. That argument is fundamentally flawed because it is based on a false premise. The argument assumes that the deal was done, with its terms fixed and its closing a certainty, when the APA was executed on December 22, 2021. This assumption is false and contrary to the allegations of the Counterclaims. The Counterclaimants allege that the APA was "essentially a placeholder that required the fulfillment of certain closing conditions before closing. Efforts to fulfill these closing conditions continued all the way through closing in March 2022." ¶ 15, n.1. In fact, negotiations over material terms between Ten Oaks and GKN continued right up to the closing in March 2022. And, of course, negotiations among Ten Oaks, GKN, and Boeing over whether Boeing would consent to the assignment (one of many conditions to closing) continued right up through that consent on March 3, 2022. *See, e.g.*, Doc. No. 64, ¶¶ 41-45, 50-52, 55. The bottom line is this: Boeing's arguments on this point must be limited to the Counterclaimants' allegations. Nowhere do Counterclaimants allege that Ten Oaks Management was obligated to close on the deal in December 2021 – because it was not so obligated.

Thus, Counterclaimants relied on the Boeing Parties' affirmative misrepresentations when they continued to negotiate the terms of the deal and expend resources on due diligence. Because

15

negotiations continued and material terms changed *after* the Boeing Parties made their affirmative misrepresentations, Counterclaimants adequately plead that they relied on the Boeing Parties' affirmative misrepresentations.

**III.     Counterclaimants Plead Fraudulent Omission.**

To comply with the pleading requirements of Rule 9(b) for fraud by omission, a plaintiff will usually be required to allege the following with reasonable particularity: (1) the relationship or situation giving rise to the duty to speak; (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what those defendant(s) gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance. *Breeden v. Richmond Community College*, 171 F.R.D. 189, 195 (M.D.N.C. 1997).

Courts recognize that fraud by omission "is by its very nature, difficult to plead with particularity.'" *Breeden*, 171 F.R.D. at 195. Therefore, courts apply a "relaxed" pleading standard to claims of fraud by omission. *See Corder v. Antero Res. Corp.*, 57 F.4th 384, 401-02 (4th Cir. 2023) (applying a relaxed Rule 9(b) standard and holding "[i]n cases involving alleged fraud by omission or concealment, it is well-nigh impossible for plaintiffs to plead all the facts necessary with particularity, given that those facts will often be in the sole possession of the defendant"). When alleging fraud by omission or concealment, it may suffice for a party to assert claims based upon information and belief if the party also states the factual allegations that make their belief plausible. *See id*. 57 F.4th at 402.

### A. Counterclaimants Plead A Duty To Disclose.

As a threshold issue, the Boeing Parties mischaracterize Counterclaimants' pleadings by incorrectly claiming that Counterclaimants fail to plead a duty to disclose when, in fact, Counterclaimants allege "Boeing had a duty to make full and fair disclosure in its negotiations with Counterclaimants . . . ." ¶ 50. Boeing's suggestion that the parties have no duty to disclose material facts runs counter to its own allegations within its pleadings, which concern the same underlying transaction, individuals, and parties. In relevant part, Boeing asserts:

> Ten Oaks, Lovrovich, and Richeson owed Boeing a duty of care in making representations about financial and operational improvements for Astech because they knew that Boeing would rely on those representations to enter into the CTA . . . . And, accordingly, Defendants' purpose for providing such information and commitments was to induce Boeing's consent.

Doc. No. 5, at ¶ 107. This Court found Boeing's allegations legally sufficient. Doc. No. 42, at 11-13. The Boeing Parties then argue that no duty to disclose can exist because Counterclaimants are not parties to the CTA. This argument is surprising, as Boeing predicates its own fraud claim entirely on its being induced by Ten Oaks Management to execute the CTA, a document to which no Defendant is a party. Doc No. 5, at ¶¶ 5, 18, 19, 107; Doc. No. 64, at ¶¶ 18, 19, 66, 70, 107. This did not stop Boeing from insisting that the Defendants owed it a duty to disclose.

Boeing next argues that it had no duty to disclose that it had "investigated" other suppliers. Doc. No. 73, at p. 20. This argument ignores the totality and context of the Counterclaim. Of the three cases cited by Boeing in support of this proposition, *Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 475-77 (E.D.N.C. 2013), is most illustrative of the weakness of Boeing's argument. *Rahamankhan* is distinguishable from the case at bar, as Boeing was not simply negotiating with another party to supply similar products in a one-off transaction. Boeing, unlike the counterclaimant in *Rahamankhan*, was actively negotiating

17

with eight to ten suppliers to replace GKN Astech at the same time it was making false representations to Counterclaimants about its desire for a long-term relationship, as well as the financial and other support it would give in order to maintain that long-term relationship.

The Boeing Parties' reliance on *Parker Excavating, Inc. v. Highlands at Cullowhee, LLC*, 2021 U.S. Dist. LEXIS 59137 (W.D.N.C. March 29, 2021) is similarly misplaced. Boeing cites *Parker* for the proposition that parties to a commercial contract cannot be in a relationship giving rise to a duty to disclose, which again is contrary to Boeing's own allegations. But this is a mischaracterization of the court's ruling in *Parker Excavating*. The court in *Parker Excavating* did quote *Rahamankhan* that "[c]ontracting parties in a commercial transaction are not in a relationship of trust and confidence." However, the court went on to hold, again citing to *Rahamankhan*, that "the *mere* fact that the parties contracted with one another is insufficient to establish a duty to disclose information." *Parker Excavating*, 2021 U.S. Dist. LEXIS 59137, at \*14 (emphasis added). The clear takeaway from *Parker Excavating* is that being a party to a contract alone does not, in and of itself, does not create a duty to disclose. *See also Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 671-72 (W.D.N.C. 2012) (holding the mere existence of a debtor-creditor relationship does not create a fiduciary relationship, but recognizing that a bank-customer relationship may give rise to a fiduciary relationship given the proper circumstances).

Boeing conspicuously fails to acknowledge grounds for a duty to disclose other than "a fiduciary or other special relationship." The *Breeden* court enumerated several such grounds:

> Outside a fiduciary relationship, a duty to disclose may also arise in situations where parties are dealing at arm's length and one party has taken affirmative steps to conceal material facts from the other, or where one party has knowledge of a latent defect in the subject matter of the dealings about which the other party is both ignorant and unable to discover through reasonable diligence . . . Finally, even if a party otherwise has no duty to disclose a particular matter, should that party speak about it, then a full and fair disclosure may be required.

18

*Id.* at 196.[3] The duty to disclose may also arise when one party has information material to the second party, but which the second party is unable to obtain. *Eli Research Inc. v. United Communs. Group, LLC*, 312 F. Supp. 2d 748, 759 (M.D.N.C. 2004); *Everts v. Parkinson*, 147 N.C. App. 315, 321, 555 S.E.2d 667, 672 (2001) ("A duty to disclose material facts arises where material facts are accessible to the vendor only, and he knows them not to be in reach of the diligent attention, observation and judgment of the purchaser.")

Counterclaimants allege the Boeing Parties owed them a duty to disclose that the Boeing Parties had repeatedly received, and repeatedly rejected, price increase requests from GKN Astech, that GKN had threatened to shut down GKN Astech, and that Boeing had actively undertaken to replace GKN as a supplier. The Boeing Parties "controlled" that information – and solely controlled the knowledge of its planning for an alternative supplier; and Counterclaimants were "unable to discover through reasonable diligence" the Boeing Parties' true intent and their communications with alternative suppliers. *See Eli Research*, 312 F. Supp. 2d at 759; *Everts*, 555 S.E.2d at 672.

The Boeing Parties' silence on these issues must be considered in the context of their affirmative misrepresentations at the February 10, 2022 meeting. "Even if there is no duty to disclose information, if a seller does speak then he must make a full and fair disclosure of the matters he discloses." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 417, 438, 617 S.E.2d 664, 671 (N.C. Ct. App. 2005); *see also Breeden*, 171 F.R.D. at 196. At the February 10, 2022 meeting, Boeing and its representatives, on their initiative, spoke of the financial assistance it would provide to Counterclaimants in the event financial issues arose. ¶ 13,

---

[3] Boeing notes and relies on these additional grounds for a duty to disclose in its own Memorandum in Opposition to Defendants' Motion to Dismiss, filed December 20, 2022. ECF No. 36, at 12-14.

47. Boeing stated that it would provide the Astech Business with financial support needed to continue the business, including required capital investments in equipment. ¶ 13, 47. Boeing further committed to the long-term growth and stability of the Astech Business as well as its commitment to either provide financial assistance or help in locating a buyer in the event Counterclaimants were forced to consider bankruptcy. ¶ 13, 47.

Once the Boeing Parties chose to make these affirmative representations, they incurred a duty to make a "full and fair disclosure" of Boeing's consistent refusal to provide financial support to GKN Astech, GKN's resulting threats of a shutdown, and Boeing's decision to consider alternate suppliers and redesign the Astech parts rather than provide the same financial assistance it promised to Counterclaimants.[4] The full and fair disclosure requirement ensures a party is not misled by one who states one thing but conceals other, relevant, information for its own benefit. Instead of disclosing these material facts, the Boeing Parties went out of their way to conceal them. The Boeing Parties did this to induce Counterclaimants to purchase the Astech Business. This is actionable fraud. Boeing's fraudulent intent is further revealed by its actions subsequent to Astech Buyer's bankruptcy filing, namely its scheme to assume Astech's lease to gain leverage. ¶¶ 58-64.

### B. Counterclaimants Plead Reasonable Reliance.

Boeing next argues that Counterclaimants have failed to plead reasonable reliance. This argument is inaccurate and misleading. Counterclaimants specifically plead that they "reasonably relied on [Boeing's] false statements and omissions," and took specific affirmative steps based on Boeing's misrepresentations and omissions. ¶ 51, 71. Counterclaimants also specifically plead that

---

[4] Boeing couches its ongoing efforts to replace Astech as a supplier as "investigat[ing] other suppliers." As alleged in the Counterclaims, Boeing's discussions with eight to ten alternative suppliers went beyond the "approach" stage, as its discussions with these alternative suppliers includes at least the period between June 2021 and March 2022, and continued through at least January 2023. ¶ 43-44.

"Boeing controlled [the subject] information, which Counterclaimants would be unable to discover through reasonable and customary diligence" as to Boeing's ongoing efforts to replace Astech as a supplier. ¶¶ 47, 50. Counterclaimants also allege that they conducted due diligence prior to entry of the CTA, including correspondence and meetings with both GKN and Boeing. ¶ 46-47.

The Boeing Parties' challenge to the adequacy of Counterclaimants' claim of reliance only refers to (1) GKN's threats to shut down the Astech plant, (2) Boeing's rejection of GKN's requested price increases, and (3) Astech's equipment issues. For obvious reasons, the Boeing Parties ignore entirely the allegation that they concealed their ongoing efforts to replace GKN Astech as a supplier. ¶ 47(f). In so doing, the Boeing Parties miss the crux of Counterclaimant's fraud claim – that the Boeing Parties were silent, and intentionally concealed these facts, *and* that they did so in the context of its affirmative promises of financial and other assistance. These allegations are distinguishable from those in *Hudson-Cole* or *MacFadden*, as Counterclaimants could not discover Boeing's concealments. Boeing fails to allege in any way that Counterclaimants could have learned of its scheme from any source other than Boeing.

But even the other omissions were not necessarily knowable to Counterclaimants. Boeing argues without any basis that Counterclaimants "could have" obtained this information from GKN. This is rank speculation without any basis in the Counterclaims, or indeed in the facts. And Boeing's argument that the Counterclaims are deficient because they do *not* plead that Counterclaimants could *not* have learned the information from GKN is baseless.

### C. Counterclaimants Plead Fraudulent Omission With Particularity.

Boeing next argues that Counterclaimants fail to plead the fraudulent omission claim with particularity. Under Rule 9(b), a fraud claim is sufficient if "the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial" and the "plaintiff

21

has substantial prediscovery evidence of those facts." *Noble Bottling*, 2023 U.S. Dist. LEXIS 120835, at *12.

Boeing alleges two specific deficiencies. First, Boeing argues that Counterclaimants fail to allege the identities of those under a duty who failed to make a disclosure. Second, Boeing argues Counterclaimants fail to allege what those defendant(s) gained by withholding information. Boeing does not expound on its argument as to any deficiency in pleading the identity of those making the required disclosure. However, Paragraph 47 of the Counterclaim details the February 10, 2022 meeting; its location at Boeing's offices in Everett, Washington; the Boeing participants – Zetterberg, Gionet, and Armstrong, and how these Boeing representatives "never told" and "intentionally withheld from" Counterclaimants the relevant information. Counterclaimants plead that Boeing, Zetterberg, Gionet, and Armstrong were under a duty to disclose GKN's demands for price increases, Boeing's rejection of those demands, GKN's threats to shut down the Astech plant, and Boeing's plans to replace Astech as a supplier. ¶ 50.

Boeing acknowledges that Counterclaimants pled what Boeing gained by their omissions, though it challenges the "plausibility" of these allegations. Boeing centers this argument on Paragraph 57 of the Counterclaim, in which Counterclaimants state that Boeing "denied [the promised] support after closing on the transaction, forcing the Astech Business into bankruptcy." Boeing argues again it is "implausible" that it would fraudulently induce Counterclaimants into buying Astech "only to drive Astech into bankruptcy . . . ." Doc. No. 73, at p. 22.

Boeing ignores the sum of Counterclaimants' allegations. Counterclaimants do not allege Boeing engaged in its scheme with the sole purpose of later driving Astech into bankruptcy, and a plain reading of the Counterclaim does not lead to that conclusion. Boeing engaged in this scheme because it was the beneficiary of the lopsided Boeing Supply Contract, and it wanted to reap those

benefits for as long as it could. ¶ 30-37. Boeing recognized the financial implications of a GKN Astech shutdown. In fact, Zetterberg acknowledged the same in sworn deposition testimony. ¶ 42. In order to preserve its favorable pricing under the Boeing Supply Contract, and avoid the pain of a GKN Astech shutdown, Boeing hoodwinked the Astech Buyer into closing on the purchase of the Astech Business and assuming the Boeing Supply Contract. The Counterclaimants do not allege that Boeing wanted the business "shuttered"; Boeing might have gone ahead with its fraud to save money or to push Astech Buyer into bankruptcy so Boeing could buy its assets – which it tried to do. *See In re Astech Engineered Products, Inc*., Docket No. 210, at p. 1.

The Boeing Parties last argue that the Counterclaimants fail to allege any specific, direct benefit to Zetterberg, Armstrong, or Gionet. This argument is specious, and the answer is obvious. They made material misrepresentations and omitted material facts because they are senior executives and it served the interests of their employer, Boeing.

**IV. Counterclaimants Plead Negligent Misrepresentation.**

Boeing and the Court have previously cited the elements of claims for negligent misrepresentation under North Carolina law. Doc. No. 42, at pp. 11-12; Doc. No. 73, at p. 23, n. 12. Boeing challenges two elements of Counterclaimants' action for negligent misrepresentation: (1) existence of a duty of care and (2) reasonable reliance. Counterclaimants adequately plead that The Boeing Parties owed a duty of care. *See supra* Section III.A; ¶ 75. The Boeing Parties had a pecuniary interest in inducing Counterclaimants to assume the Boeing Supply Contract. ¶¶ 5-8, 36, 42, 48. Counterclaimants adequately allege that the Boeing Parties breached their duty of care by supplying false information relating to the underlying transaction, including statements about post-acquisition financial assistance, financial and other assistance in the event of bankruptcy, and post-acquisition capital investments in equipment. ¶¶ 13, 47(a)-(c). Boeing also breached its duty

23

by concealing and omitting material facts related to the underlying transaction. ¶¶ 14, 47(d)-(g). For the reasons set forth in Sections II.B and III.B above, Counterclaimants adequately plead reasonable reliance, and the Boeing Parties' arguments fail.

## V.    Counterclaimants Plead Unfair And Deceptive Trade Practices.

Counterclaimants base their claim for unfair and deceptive trade practices upon the same misrepresentations and omissions as their fraud and negligent misrepresentation claims. Whether fraudulent or negligent, those misrepresentations and omissions satisfy the pleading requirements for a claim under N.C. Gen. Stat. 75-1.1. *See Topshelf Mgmt.*, 117 F. Supp. 3d at 729 ("[I]ntentional misrepresentations are *per se* violations of section 75-1.1 because fraud is, by definition, unfair and deceptive."); *See also Krebs v. Charlotte Sch. of Law, LLC* 2017 U.S. Dist. LEXIS 143060, at *28 (W.D.N.C. September 5, 2017) ("North Carolina courts have traditionally applied this statute liberally, including claims involving negligent misrepresentation and failure to disclose material information."). In light of the adequately pled fraud and negligent misrepresentation claims, as set forth above, Counterclaimants' unfair and deceptive trade practices claim stands.

## <u>CONCLUSION</u>

Counterclaimants respectfully request that the Court deny the Boeing Parties' Motion to Dismiss in its entirety.

**[Signature block on Following Page]**

Doc No. 4873-6416-9645

This the 1st day of April, 2024.

**JOHNSTON, ALLISON & HORD, P.A.**     **FORDE & O'MEARA LLP**

*s/ Michael J. Hoefling*
Patrick E. Kelly, NC State Bar No. 16703
pkelly@jahlaw.com
Michael J. Hoefling, NC State Bar No. 38246
mhoefling@jahlaw.com
J. Nathanial Pierce, NC State Bar No. 52344
npierce@jahlaw.com
1065 E. Morehead Street
Charlotte, NC 28204
Telephone No.: (704) 332-1181
Facsimile No.: (704) 376-1628
*Attorneys for Defendants, Counterclaimants,*
*and Third-Party Plaintiff*

*s/ Michael K. Forde*
Michael K. Forde (*pro hac vice*)
mforde@fordellp.com
Brian P. O'Meara (*pro hac vice*)
bomeara@fordellp.com
191 North Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone No.: (312) 641-1441
*Attorneys for Defendants, Counterclaimants,*
*and Third-Party Plaintiff*

25

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certified that the foregoing **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system which will send notifications of such filing to the following parties/persons that are registered for service electronically:

<table>
<tr>
<td>
Joseph A. Mahoney<br>
Mayer Brown LLP<br>
214 North Tryon St., Suite 3800<br>
Charlotte, NC 28202<br>
jamahoney@mayerbrown.com
</td>
<td>
J. Gregory Deis<br>
Andrew Spadafora<br>
Ethan Hastert<br>
Mayer Brown, LLP<br>
71 South Wacker Dr.<br>
Chicago, IL 60606<br>
gdeis@mayerbrown.com<br>
aspadafora@mayerbrown.com
</td>
</tr>
<tr>
<td>
Glenn K. Vanzura<br>
Mayer Brown, LLP<br>
350 South Grand Avenue, 25th Floor<br>
Los Angeles, CA 90071<br>
gvanzura@mayerbrown.com
</td>
<td></td>
</tr>
</table>

This the 1st day of April, 2024.

**JOHNSTON, ALLISON & HORD, P.A.**          **FORDE & O'MEARA LLP**

<table>
<tr>
<td>
<u>s/ Michael J. Hoefling</u><br>
Patrick E. Kelly, NC State Bar No. 16703<br>
pkelly@jahlaw.com<br>
Michael J. Hoefling, NC State Bar No. 38246<br>
mhoefling@jahlaw.com<br>
J. Nathanial Pierce, NC State Bar No. 52344<br>
npierce@jahlaw.com<br>
1065 E. Morehead Street<br>
Charlotte, NC 28204<br>
Telephone No.: (704) 332-1181<br>
Facsimile No.: (704) 376-1628<br>
<em>Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiff</em>
</td>
<td>
<u>s/ Michael K. Forde</u><br>
Michael K. Forde (<em>pro hac vice</em>)<br>
mforde@fordellp.com<br>
Brian P. O'Meara (<em>pro hac vice</em>)<br>
bomeara@fordellp.com<br>
191 North Wacker Drive, 31st Floor<br>
Chicago, IL 60606<br>
Telephone No.: (312) 641-1441<br>
<em>Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiff</em>
</td>
</tr>
</table>