# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

THE BOEING COMPANY,

        Plaintiff,

        v.

TEN OAKS MANAGEMENT, LLC, et al.

        Defendants

_____

TEN OAKS MANAGEMENT, LLC, and
DAVID RICHESON,

        Counter-Claimants

AEP LEGACY HOLDINGS, LLC,

        Third-Party Plaintiff

        v.

THE BOEING COMPANY,

        Counter-Defendant, and

BARBARA ZETTERBERG, CORY
GIONET, and RODNEY ARMSTRONG,

        Third-Party Defendants.

**Civil Action No. 22 CV 481-KDB-DCK**

**REPLY IN SUPPORT OF
MOTION TO DISMISS
THE COUNTERCLAIM AND
THIRD-PARTY COMPLAINT**

# TABLE OF CONTENTS

**Page**

Argument ........................................................................................................................... 1

I.  Counterclaimants Lack Standing To Assert The Counterclaims. ..................................... 1

II.  The Alleged Affirmative Misrepresentations Are Too Vague To Be Actionable. .......................... 5

III.  The Affirmative Misrepresentation Claims Do Not Plead Falsity Or Scienter............................... 7

IV.  The Affirmative Misrepresentation Claims Do Not Plead Reasonable Reliance. .......................... 8

V.  The Omission Claims Do Not Plead A Duty To Disclose. .............................................. 9

VI.  The Counterclaims Do Not Plead Negligent Misrepresentation Or A Violation of the North Carolina UDTPA. .......................................................................................... 11

Conclusion ....................................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anschutz Corp. v. Brown Robin Cap., LLC*,
    2020 WL 3096744 (Del. Ch. June 11, 2020) ................................................................... 4, 5

*Berg v. C&H Fin. Servs., Inc.*,
    2024 WL 1255504 (D. Del. Mar. 25, 2024) ...................................................................... 3

*Breeden v. Richmond Comm. Coll.*,
    171 F.R.D. 189 (M.D.N.C. 1997) .................................................................................. 9, 10

*Brookfield Asset Mgmt., Inc. v. Rosson*,
    261 A.3d 1251 (Del. 2021) ............................................................................................. 2, 3

*In re CD Liquidation Co.*,
    462 B.R. 124 (Bankr. D. Del. 2011) ................................................................................ 3

*Cent. Nat'l Gottesman Inc. v. Nakos Paper Prods., Inc.*,
    2019 WL 5420103 (W.D.N.C. Oct. 23, 2019) ................................................................ 2

*Click v. Leandro*,
    794 S.E.2d 346, 2016 WL 6695395 (N.C. Ct. App. 2016) .............................................. 8

*Clifford Paper, Inc. v. WPP Invs., LLC*,
    2021 WL 2211694 (Del. Ch. June 1, 2021) .................................................................... 3

*Culverhouse v. Paulson & Co.*,
    133 A.3d 195 (Del. 2016) ............................................................................................... 4, 5

*El Paso Pipeline GP Co. v. Brinckerhoff*,
    152 A.3d 1248 (Del. 2016) .............................................................................................. 3

*Eli Rsch., Inc. v. United Comm'cns Grp., LLC*,
    312 F. Supp. 2d 748 (M.D.N.C. 2004) ........................................................................... 10

*Elrod v. WakeMed*,
    561 F. Supp. 3d 592 (E.D.N.C. 2021) ............................................................................ 1

*Hantz v. Belyew*,
    194 F. App'x 897 (11th Cir. 2006) ................................................................................. 3

*Hardin v. KCS Int'l, Inc.*,
    682 S.E.2d 726 (N.C. Ct. App. 2009) ............................................................................. 6

Case 3:22-cv-00481-KDB-DCK    Document 85    Filed 04/18/24    Page 3 of 17

*HPS Techs., Inc. v. E.I. Du Pont De Nemours & Co.*,
  2009 WL 3434280 (M.D.N.C. Oct. 20, 2009) ......................................................................10

*Labovitz v. Wash. Times Corp.*,
  172 F.3d 897 (D.C. Cir. 1999) ..........................................................................................2

*Mann v. GTCR Golden Raunder, L.L.C.*,
  483 F. Supp. 2d 884 (D. Ariz. 2007) ..........................................................................2, 3, 5

*Ohama v. Markowitz*,
  434 F. Supp. 3d 303 (E.D. Pa. 2020) ................................................................................6

*Oliver v. Baity*,
  208 F. Supp. 3d 681 (M.D.N.C. 2016) ..............................................................................8

*Ragsdale v. Kennedy*,
  209 S.E.2d 494 (N.C. 1974)..............................................................................................11

*Rhone-Poulenc Agro S.A. v. Monsanto Co.*,
  73 F. Supp. 2d 540 (M.D.N.C. 1999) ........................................................................10, 11

*Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*,
  418 S.E.2d 648, 659 (N.C. 1992)......................................................................................5

*Spivey v. Smith*,
  2023 WL 6060885 (N.C. Super. Ct. Sep. 18, 2023).........................................................5

*Sutter v. Gen. Petrol. Corp.*,
  170 P.2d 898 (Cal. 1946) ..................................................................................................4

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) .............................................................................................1, 2

*Williamson v. Prime Sports Mktg., LLC*,
  2022 WL 2802611 (M.D.N.C. July 18, 2022)..................................................................10

*Xia Bi v. McAuliffe*,
  927 F.3d 177 (4th Cir. 2019) ............................................................................................2

**Other Authorities**

Fed. R. Civ. P. 9(b) ...............................................................................................................2, 11

Fed. R. Civ. P. 11..................................................................................................................9

iii

Counterclaimants' Opposition (the "Opposition") to the Boeing Parties' Motion to Dismiss (the "MTD") mistakes conclusory allegations for well-pleaded facts, creates false equivalences with Boeing's complaint, and ignores binding precedents.[1] None of these attempted maneuvers makes the Counterclaims' allegations any more plausible or adequately pled. For the reasons described in the MTD and herein, the Court should dismiss the Counterclaims with prejudice.

## Argument

### I.    Counterclaimants Lack Standing To Assert The Counterclaims.

Counterclaimants lack standing because their claims are derivative: it was Astech Buyer, not Counterclaimants, that acquired Astech. *See* Answer ¶ 37; Counterclaims ¶ 51(a); *see also* MTD at 5 n.3, 8-10. It was thus Astech Buyer, not Counterclaimants, that was supposedly harmed by Boeing's alleged failure to honor its alleged promises to "support" or "invest[] in" Astech. ¶ 13. The "benefit of the recovery" would flow to Astech Buyer and only indirectly benefit Counterclaimants as Astech Buyer's owners. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) (holding that a claim is derivative under Delaware law when a corporation suffered the harm and would receive the benefit of recovery).

Counterclaimants maintain they have direct claims because they were fraudulently induced to incur certain diligence, transaction, and personnel costs. Opp. at 7-9. They are wrong. *First*, Counterclaimants fail to plead with particularity how they relied on the representations to their personal detriment. *See Elrod v. WakeMed*, 561 F. Supp. 3d 592, 612 (E.D.N.C. 2021) ("reliance upon a misrepresentation . . . must be pled with particularity"). For example, Counterclaimants fail to specify the money they allegedly spent and which of them—Ten Oaks, AEP, or Richeson—

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in the MTD. Unless otherwise noted, all citations to paragraph numbers (¶) refer to the Counterclaims. For all quotations, emphasis is added and citations and internal quotation marks are omitted.

1

allegedly personally incurred which costs. *See* ¶¶ 51(b), 65. Rule 9(b) demands more, especially as to "allegations of reliance" that "rest on information within a plaintiff's possession." *Xia Bi v. McAuliffe*, 927 F.3d 177, 185-86 (4th Cir. 2019) (affirming dismissal because investors did not plead "who relied on each misstatement"). Further, Counterclaimants allege that they relied to their detriment on supposed misrepresentations made at a February 2022 meeting, near the end of Counterclaimants' diligence process that lasted from August 2021 to March 2022. *See* ¶¶ 46-47. Yet the Counterclaims make no specific factual allegations that Counterclaimants incurred any identifiable costs after that meeting. *Cent. Nat'l Gottesman Inc. v. Nakos Paper Prods., Inc.*, 2019 WL 5420103, at *4 (W.D.N.C. Oct. 23, 2019) ("a fraud claim is fatally defective unless it alleges detrimental reliance, and damages proximately flowing from such reliance, with particularity").

*Second*, even if they incurred such costs, any harm is derivative because Counterclaimants cannot "prevail without showing an injury to" Astech Buyer. *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1266 (Del. 2021) (claims arising from a "reduction in the value of the entire corporate entity" are derivative). They claim these expenses are recoverable because Boeing shortchanged Astech, causing Astech Buyer to fail. *See* ¶¶ 19, 56-57. It necessarily follows that Counterclaimants suffered no injury "independent of" harm to Astech Buyer. *Tooley*, 845 A.2d at 1039. It does not matter that they allegedly spent their own money on certain costs. The D.C. Circuit, for example, has rejected claims by shareholders who had executed "personal guarantees of loans to [a Delaware corporation]" based on the defendant's "promises to keep [it] afloat" because the corporation, not the shareholders, "suffered the direct injury." *Labovitz v. Wash. Times Corp.*, 172 F.3d 897, 898, 904 (D.C. Cir. 1999). Similarly, the court in *Mann v. GTCR Golden Raunder, L.L.C.* described the harm of "not receiving . . . severance payments" from a bankrupt company as derivative because it arose from defendants' "refus[al] to fully fund" the company.

483 F. Supp. 2d 884, 899 (D. Ariz. 2007).[2] So too here. The alleged due diligence, personnel, and transaction costs are recoverable, if at all, only as harm collateral to Astech Buyer. *See Berg v. C&H Fin. Servs., Inc.*, 2024 WL 1255504, at *3 (D. Del. Mar. 25, 2024) (claims that defendant made "it difficult or impossible for Plaintiff to operate and expand [a] business" were derivative).

*Third*, *Brookfield* makes clear that where, as here, "the gravamen of the Complaint" is that the company suffered harm, the claims are derivative. 261 A.3d at 1266; *see also El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016). Here, the Counterclaims focus on clearly derivative harms: alleged investment losses. *See* ¶¶ 19 (no "investment gains"), 20, 65 ("investment losses"), 51 (acquired "through a subsidiary"), 62 (Boeing "torpedoed…AEP's investment"), 73 ("investment proved disastrous"). The Opposition does not even mention those allegations and instead pivots to focus solely on supposedly personal diligence, transaction, and personnel costs. Tellingly, the Counterclaims' actual references to such alleged harms are scant (*see* ¶¶ 19-20, 51, 65). Counterclaimants cannot manufacture standing by "artful pleading" of collateral consequences. *Clifford Paper, Inc. v. WPP Invs., LLC*, 2021 WL 2211694, at *8 (Del. Ch. June 1, 2021). Because the alleged derivative harms are the gravamen of the Counterclaims, Counterclaimants lack standing. *See Hantz v. Belyew*, 194 F. App'x 897, 900 (11th Cir. 2006) (claim "that defendants encouraged [plaintiffs] to waste time and resources devising a restructuring plan" was derivative, as "nearly all of the allegations . . . refer to misbehavior detrimental to all of [the] shareholders").[3]

---

[2] *See also In re CD Liquidation Co.*, 462 B.R. 124, 133 (Bankr. D. Del. 2011) (holding that "a claim for 'harm' caused to [a company's guarantor] by a third party's wrongdoing" was derivative, and collecting cases).

[3] Even if Counterclaimants could raise direct claims predicated on diligence costs (and they cannot), they would have standing to, at most, recover only those alleged personal costs. It remains the case that they do not have standing to personally recover alleged investment losses derived from the alleged harm to Astech Buyer. The Opposition seems to acknowledge as much by going silent as to the alleged investment losses.

Counterclaimants assert (quoting a dissenting opinion) that claims that "a defendant fraudulently induced a plaintiff to invest" are direct. Opp. at 7 (quoting *Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 38 (N.Y. App. Div. 2010) (Moskowitz, J., dissenting)). But Counterclaimants do not allege that the Boeing Parties fraudulently induced *them* to invest in Astech.[4] Rather, they admit that *their subsidiary*, Astech Buyer, acquired Astech. *See* Answer ¶ 37; Counterclaims ¶ 51(a); *see also* Opp. at 13. Only Astech Buyer, then, can state direct claims. *See Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *7 (Del. Ch. June 11, 2020) (plaintiff whose "only claimed injury is that it helped fund [a subsidiary's] purchase of a company whose value was artificially inflated as a result of Sellers' misrepresentations . . . suffered no injury distinct from the [subsidiary's], and therefore lacks standing").

The Delaware Supreme Court squarely resolved this question against Counterclaimants' position in *Culverhouse v. Paulson & Co.*, 133 A.3d 195 (Del. 2016). There, a "Feeder Fund" invested in an "Investment Fund" that made a bad bet on a business. *Id.* at 196-97. The court held that a Feeder Fund member lacked standing because he "chose not to invest directly in the Investment Fund"; he instead "invested in the Feeder Fund, which in turn invested in the Investment Fund." *Id.* at 199 (emphasizing the need to respect the "separateness of the Feeder Fund and Investment Fund" even though "the Feeder Fund acts as a pass-through entity"). Counterclaimants likewise did not "invest directly" in Astech, *id.*, but rather acquired it "through

---

[4] Nor do Counterclaimants assert the alleged misrepresentations led them to create or fund Astech Buyer. Indeed, they admit Astech Buyer was created and had already agreed to acquire Astech *prior to* the alleged representations. *See* Answer ¶ 37; *Sutter v. Gen. Petrol. Corp.*, 170 P.2d 898, 901 (Cal. 1946) (emphasizing that the fraud had occurred "before th[e] company was formed").

4

a subsidiary," ¶ 51(a). They must accordingly "look to" Astech Buyer for redress. *Culverhouse*, 133 A.3d at 199; *Anschutz Corp.*, 2020 WL 3096744, at *7.[5]

## II.     The Alleged Affirmative Misrepresentations Are Too Vague To Be Actionable.

Counterclaimants do not contest that the alleged misstatements are vague and indefinite. Instead, their Opposition suggests that North Carolina law does not require them to allege a "specific financial obligation." Opp. at 12. The Opposition is wrong. Under North Carolina law, "there is a requirement of specificity as to the element of a representation made by the alleged defrauder: *The representation must be definite and specific*." *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648, 659 (N.C. 1992); *see* MTD at 12-13.

In ignoring this specificity requirement, the Opposition makes no effort to distinguish *Spivey v. Smith*, 2023 WL 6060885 (N.C. Super. Ct. Sep. 18, 2023). The alleged misrepresentation in *Spivey*—an "assurance" that plaintiff's company would "receiv[e] the funds which they were due"—is *more* definite than Boeing's alleged misrepresentations. Yet, applying the "definite and specific" standard, the court in *Spivey* found the allegation insufficient. MTD at 12. Unable to argue the law, Counterclaimants manufacture a false equivalency between the facts Boeing pleaded in its SAC and the "facts" in the Counterclaims. To do so, the Opposition cherry-picks certain summary allegations from the SAC, while ignoring the SAC's more detailed misrepresentation allegations—including specific allegations this Court relied upon in upholding the SAC's fraud claims. Opp. at 12. For example, the Opposition ignores the SAC's detailed allegations about Defendants' specific commitment to (a) tap an asset-based lending facility to secure a line of credit up to approximately $18 million (SAC ¶ 52), and (b) take specific steps

---

[5] Any other result risks inconsistent judgments or exposing Boeing to duplicative damages in this suit and Astech's bankruptcy. *See Mann*, 483 F. Supp. 2d at 898 (rejecting effort "to circumvent the bankruptcy process" by bringing disguised derivative claims in a separate suit).

5

within 30, 60, and 90 days post-Acquisition, including particular equipment upgrades the SAC identified by specific name and type (SAC ¶ 61); *see also* MTD at 16. In contrast to the SAC's allegations detailing Defendants' concrete commitments, the Counterclaims allege only vague assurances of unspecified "financial support." Neither this Court, nor others cited by Counterclaimants, have found such alleged statements sufficiently specific to be actionable.[6]

The Counterclaims' reliance on allegations of generalized "financial support" commitments illustrates the reason that such unspecific allegations are not actionable: a court cannot determine whether a defendant satisfied such indefinite commitments. *See* MTD Order at 9 (actionable statements include "specific factual allegations" that "can be proven true or false"); *Hardin v. KCS Int'l*, 682 S.E.2d 726, 737 (N.C. Ct. App. 2009) (specificity helps "distinguish[] mere puffing, guesses, or assertions of opinions from representations of material facts").

The Counterclaims' confusing mismatch of "financial support" allegations further illustrates the reason that such allegations cannot sustain a promissory fraud claim here. According to the Counterclaims, Astech Buyer allegedly requested "reasonable modifications to the Supply Contract." ¶ 55. But the Counterclaims *do not allege* that Boeing ever promised it would modify the Supply Contract. Similarly, according to the Counterclaims, Boeing allegedly committed to make contributions to equipment upgrades. ¶ 47(b). But the Counterclaims *do not allege* that Boeing was ever asked to make such contributions, let alone that Boeing refused. Counterclaimants essentially allege they had a blank check to demand any financial support from Boeing they may choose, and if Boeing refused, then it would have committed fraud. That is not the law.

---

[6] The authority cited in the Opposition, to the extent it is relevant at all, supports dismissal: a case under Pennsylvania law between two formerly cohabiting individuals, where the court held that even allegations of financial support with specific dollar amounts, including maintaining a $2.5 million life insurance policy, were *insufficient* to plead fraud. *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 308 (E.D. Pa. 2020) (cited in Opp. at 13 n.2).

6

## III. The Affirmative Misrepresentation Claims Do Not Plead Falsity Or Scienter.

The Counterclaims fail to plead falsity and scienter because they plead no specific facts showing the alleged promises were false, or were made with no intention at the time to honor them. MTD at 13-16. Instead of pointing to allegations from the Counterclaims, the Opposition relies on a misreading of the Court's MTD Order to suggest that a short period of time between an alleged promise and breach, alone, creates an inference of falsity. Opp. at 13-14. Counterclaimants conveniently omit the *rationale* on which the Court previously decided that timing of events could serve as evidence of falsity. That rationale does not apply to the Counterclaims' alleged facts.

As detailed in the SAC, Defendants represented that they had specific plans to recapitalize Astech and improve its operations with specific equipment upgrades. *See* MTD at 15-16. In upholding Boeing's claims, the Court noted the sequence of events in the immediate aftermath of Defendants' misrepresentations: "the brief period of time between the sale of Astech (shortly after March 3, 2022) and the request for a price increase (May 12, 2022), the soon following declaration of bankruptcy on July 15, 2022, and the failure to acquire an asset-backed loan." MTD Order at 8. Against that backdrop, the Court reasoned that, "[g]iven the extensive nature of the statements made by Defendants to Boeing in ensuring Boeing's consent to the sale of Astech, it is plausible to infer that any change to the plans would require equally extensive diligence and decision making. This quick succession of events thus suggests that the statements could be found to be a knowing lie when they were made." *Id.* Counterclaimants' allegations are readily distinguishable. The Counterclaims allege only that, during a single meeting, the Boeing Parties made generic commitments with no specific time horizons. ¶ 47; Opp. at 3. The mere allegation that Boeing did not provide financial assistance months after making the alleged misrepresentations comes nowhere close to creating a plausible inference that the Boeing Parties intended to renege on the alleged promises when they were made months earlier.

7

Indeed, in their Opposition, Counterclaimants now try to distance themselves from the incoherent motive the Counterclaims theorized—that Boeing tricked Counterclaimants into buying Astech only to force the company into bankruptcy within months. The Opposition pivots, arguing that Boeing perhaps had a change of heart and "abandoned" its purported promises. Opp. at 14. Not only does alleging that Boeing "abandoned" its promises "a few short months after making them," *id*. at 14, tell the factfinder *nothing* about Boeing's intentions "months" earlier, but a later change of heart cannot support an inference of fraud. *See, e.g.*, *Click v. Leandro*, 794 S.E.2d 346, 2016 WL 6695395, at *6 (N.C. Ct. App. 2016) (table) (holding allegations that, in summary, "defendants changed their minds," insufficient to plead fraud). Counterclaimants are left either with their original motive theory, which makes no sense, or their new change-of-heart theory, which admits that Boeing intended to honor its alleged promises when they were made (but later changed its mind). Either way, dismissal is required.

## IV. The Affirmative Misrepresentation Claims Do Not Plead Reasonable Reliance.

The Opposition does not dispute (or even address) that reliance on statements as vague as those alleged in the Counterclaims, without conducting due diligence, is unreasonable as a matter of law. *See* MTD at 17-18. This concession alone is grounds to dismiss the affirmative misrepresentation claims. *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) (collecting cases holding that "a party's failure to address an issue in its opposition brief concedes the issue").

Separately, the Opposition attempts to explain away the critical timing problem that undermines the Counterclaims: Astech Buyer cannot have acquired Astech because of Counterclaimants' reliance on the Boeing Parties' supposed statements, since those statements were allegedly made only *after* Astech Buyer had entered into the binding APA. In Counterclaimants' telling, there is no timing problem because the MTD supposedly assumes "that the deal was done, with its terms fixed and its closing a certainty, when the APA was executed on

8

December [2], 2021." Opp. at 15. The Opposition's argument is a red herring. The MTD accepts the allegation that the closing was subject to conditions. But that allegation does not save the Counterclaims, for two reasons. First, *the Counterclaims do not allege that any closing condition was not satisfied*. MTD at 17. Second, the Counterclaims do not allege that any of the closing conditions concerned Boeing's representations. *See* MTD at 17-18. Accordingly, Boeing's statements during CTA discussions could not have induced Astech Buyer to proceed with the acquisition, as it was contractually obligated to close irrespective of Boeing's statements. Most importantly, the Counterclaims do not allege otherwise.[7]

## V.        The Omission Claims Do Not Plead A Duty To Disclose.

Counterclaimants' duty-to-disclose argument relies on two contentions: Boeing "controlled" certain information, and it had a duty to make "full and fair disclosure" of the purported omissions. Both contentions misstate the facts and the law.[8]

The Opposition's contention (at 19) that Boeing "controlled" the allegedly omitted information fails on its face. The allegedly omitted "facts" concerned GKN's actions and its Astech plant. That information was plainly at least as accessible to GKN (Astech Buyer's counterparty) as to Boeing. Indeed, the Opposition acknowledges that the alleged facts were not "solely" in Boeing's control. *Id*. at 19. That is fatal under *Breeden v. Richmond Comm. Coll.*, 171 F.R.D. 189,

---

[7] Nor could Counterclaimants make any such allegation consistent with their Rule 11 obligations, because the APA does not include any closing conditions concerning Boeing's representations. Again, the Boeing Parties are happy to file a copy of the APA if it would assist the Court's review. MTD at 2, n.2. In any event, it does not matter whether the APA is before the Court, because the Counterclaims *do not allege* any facts to show that Astech Buyer could have terminated the APA based on Boeing's representations. Separately, the Counterclaims also fail to sufficiently plead reliance with respect to the omission claims for the additional reasons discussed in the MTD at 21.
[8] Counterclaimants incorrectly assert that the Boeing Parties argued there is no duty to disclose because Counterclaimants are not parties to the CTA. Opp. at 17. In fact, the Boeing Parties argued only that a contracting-parties relationship does not give rise, by itself, to a duty to disclose, and noted for emphasis that Boeing and Counterclaimants were not even contracting parties. MTD at 20. In any event, although this is an undisputed fact, it is not essential to the grounds for dismissal.

9

196 (M.D.N.C. 1997), which makes clear there is no duty to disclose because Counterclaimants fail to allege that Boeing "concealed information which [Counterclaimants] could not obtain upon exercising due diligence." As for the only purported omission alleged to be "solely" in Boeing's control—that Boeing was "investigating alternative suppliers," ¶ 47(f)—the law is clear that there is no duty to disclose such investigations or negotiations. MTD at 20-21 (collecting cases).[9]

Counterclaimants' alternative contention—that Boeing had a duty to disclose arising from the affirmative statements it allegedly made—is easily dispatched. *Breeden* did recognize that "even if a party otherwise has no duty to disclose a particular matter, should that party speak about it, then a full and fair disclosure may be required," 171 F.R.D. at 196. However, that duty to make a "full and fair disclosure" is limited and does not apply here. North Carolina courts restrict the scope of this duty to correcting misunderstandings created by a party's ambiguous statements. *See Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 540, 551 (M.D.N.C. 1999) ("a duty to disclose [arises] … if one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party," so that once a party with no duty to disclose field test results spoke about them, it "had a duty to be straightforward and direct *regarding the tests*"). In other words, there must both be some nexus between the alleged omission and a partial or

---

[9] The Opposition tries to distinguish one (and only one) case cited in the MTD, arguing that the case involved negotiations with one third party over a "one-off transaction," whereas Boeing supposedly failed to disclose negotiations with "eight to ten suppliers … at the time" of the February 2022 meeting. Opp. at 17-18, citing *Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.,* 989 F. Supp. 2d 471, 475-77 (E.D.N.C. 2013). A duty to disclose does not depend on the number of third parties or transactions involved. Moreover, the Counterclaims do not actually allege that Boeing was "actively negotiating with eight to ten suppliers" in February 2022. *See* ¶¶ 11-12, 43-44. In any case, the Opposition fails to address the overwhelming North Carolina authority making clear that no duty attaches here. S*ee also Williamson v. Prime Sports Mktg., LLC*, 2022 WL 2802611, at *4-5 (M.D.N.C. July 18, 2022) (applying principle that "a party to a commercial transaction has no duty to tell the other party that it is negotiating with a third party"); *Eli Rsch., Inc. v. United Comm'cns Grp., LLC*, 312 F. Supp. 2d 748, 759-60 (M.D.N.C. 2004) (same) (relied upon by Counterclaimants); *HPS Techs., Inc. v. E.I. Du Pont De Nemours & Co.*, 2009 WL 3434280, at *10 (M.D.N.C. Oct. 20, 2009) (same).

10

ambiguous affirmative statement, and the alleged omission must also render the affirmative statement misleading. *Ragsdale v. Kennedy*, 209 S.E.2d 494, 501 (N.C. 1974) ("When plaintiff undertook to describe the business as a 'gold mine' and a 'going concern' he incurred a concomitant duty to make a full disclosure of any extenuating financial circumstances *which counteracted his positive assertions concerning the condition of the corporation.*").

Here, the Counterclaims entirely fail to connect the alleged representations and alleged omissions, let alone describe how the latter rendered the former misleading. The alleged omissions that GKN had requested price increases or threatened to close the Astech plant, or that Astech's equipment was in disrepair, are not even tangentially related to the purported promises of "financial support" or "assistance in finding a buyer." ¶ 47. Nor do Counterclaimants explain how omission of such "facts" could render an alleged promise to assist misleading. Unlike the decision to mention the results of field tests in *Rhone-Poulenc*, which required accurate and full disclosures regarding those very tests, a purported generalized commitment to offer financial assistance in the future is not somehow made misleading by omitting information about GKN's supposed past threats to shutter Astech, for example. *Cf. Rhone-Poulenc*, 73 F. Supp. 2d at 551.

## VI. The Counterclaims Do Not Plead Negligent Misrepresentation Or A Violation of the North Carolina UDTPA.

The Opposition does not contest that Rule 9(b)'s heightened pleading standard applies to the negligent misrepresentation and UDTPA claims, or that those claims depend on the same allegations as the fraud claim. *See* MTD at 23-24. Accordingly, there is no dispute that, if the Court dismisses the fraud claim, it must also dismiss the remainder of the Counterclaims.

## Conclusion

For the foregoing reasons and those the MTD describes, the Boeing Parties respectfully request that the Court dismiss with prejudice the Counterclaims in their entirety.

11

Dated: April 18, 2024

Respectfully Submitted,

*/s/ Joseph A. Mahoney*
Joseph A. Mahoney
N.C. State Bar No. 55318
MAYER BROWN LLP
300 South Tryon Street, Suite 1800
Charlotte, NC 28202
(704) 444-3654
jamahoney@mayerbrown.com

J. Gregory Deis (*pro hac vice*)
Ethan Hastert *(pro hac vice)*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
gdeis@mayerbrown.com
ehastert@mayerbrown.com

Glenn K. Vanzura (*pro hac vice*)
MAYER BROWN LLP
333 South Grand Avenue, 47th Floor
Los Angeles, CA 90071
(213) 229-9500
gvanzura@mayerbrown.com

Andrew Spadafora (*pro hac vice*)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3043
aspadafora@mayerbrown.com

12

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, certifies that on April 18, 2024, a copy of the foregoing

was served on all parties of record in this case by CM/ECF to the following:

Patrick E. Kelly
Michael J. Hoefling
Katie Burchette
J. Nathanial Pierce
JOHNSTON, ALLISON & HORD, P.A.
1065 East Morehead Street
Charlotte, NC 28204
(704) 332-1181
pkelly@jahlaw.com
mhoefling@jahlaw.com
kburchette@jahlaw.com
npierce@jahlaw.com

Michael K. Forde
Brian P. O'Meara
Forde & O'Meara LLP
191 North Wacker Drive, 31st Floor
Chicago, Illinois 60606
(312) 641-1441
mforde@fordellp.com
bomeara@fordellp.com


*/s/ Joseph A. Mahoney*
Joseph A. Mahoney

13